# EXHIBIT A

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT
- - - - - - - - - - - - - - - - - -x
                                    :
JOSEPH ATTIAS and HAIM ATTIAS,      :
                                    :
           Plaintiffs,              :
                                    : Civil Action
    vs.                             : No. 3:03 CV 01009
PATRONS MUTUAL INSURANCE COMPANY    :      (SRU)
OF CONNECTICUT,                     :
                                    :
           Defendant.               :
- - - - - - - - - - - - - - - - - -x

          Deposition of SCOTT MICHAEL TERRA, taken
pursuant to the Federal Rules of Civil
Procedure, at the Law Office of Cheryl E.
Heffernan, 2842 Old Dixwell Avenue, Hamden,
Connecticut, before Bonita Cohen, a
Registered Merit Reporter and Notary Public
in and for the State of Connecticut, License
Number 00041, on Tuesday, October 21, 2003,
at 10:05 a.m.

SCRIBES, INC.

---

**APPEARANCES**

LAW OFFICE OF CHERYL E. HEFFERNAN
Attorneys for the Plaintiffs
2842 Old Dixwell Avenue
Hamden, Connecticut  06518
    By:  CHERYL E. HEFFERNAN, Esq.

SKELLEY ROTINER, P.C.
Attorneys for the Defendant
Suite 305
Corporate Center West
433 South Main Street
P.O. Box 340890
West Hartford, Connecticut  06134-0890
    By:  JOEL J. ROTINER, Esq.

SCRIBES, INC.

---

3

1            (Notice of deposition, dated
2       September 19, 2003, marked Plaintiffs'
3       Exhibit 1 for identification)
4
5            SCOTT MICHAEL TERRA,
6    called as a witness, having first been duly sworn
7    by Bonita Cohen, a Notary Public in and for the
8    State of Connecticut, was examined and testified
9    as follows:
10   DIRECT EXAMINATION
11   BY MS. HEFFERNAN:
12       Q.  Mr. Terra, my name is Cheryl Heffernan.  I
13   represent the Attiases in this matter against
14   Patrons Mutual Insurance Company.
15           Have you ever been deposed before?
16       A.  No.
17       Q.  I'm sure your attorney has gone through the
18   basic rules of the deposition process, but I'm going to
19   do that for the record.
20       A.  Okay.
21       Q.  One of the primary rules is that we have a
22   court reporter sitting down here, taking down
23   everything that's being said.
24       A.  Yes.
25       Q.  Because of that, it's extremely important

---

4

1    that, one, I get to finish my question and you get to
2    finish your answer and that we don't talk on top of
3    each other.
4            Do you understand that?
5        A.  Yes.
6        Q.  It's also important that your answers go in
7    the form of words.  Uh-huhs or uh-uhs are not able to
8    be followed.
9            Do you understand that?
10       A.  Yeah.
11       Q.  If at any time you do not understand a
12   question that I've asked, please feel free to ask me to
13   repeat it or rephrase it.
14           Do you understand that?
15       A.  Yes.
16       Q.  If you do answer the question that's asked, I
17   will assume that you understood the question and you
18   are answering that question posed.
19           Do you understand that?
20       A.  Yes.
21       Q.  Are you on any medication or do you have any
22   medical condition that would affect your ability to
23   answer my questions today?
24       A.  No.
25       Q.  If at any time you need a break to talk to

169

1  Q. After receipt of these forms, was there
2  anything further done in regards to reevaluating their
3  claims?
4  A. At that point, the bulk of the file was in
5  Blackburn's hands. They handled most of it from that
6  point forward.
7  Q. From what point forward?
8  A. From the deposition, they were -- forward --
9  they were quite involved with the file.
10 Q. So what action did you take after the sworn
11 statement under oath was -- sworn statement was taken?
12 A. We had talked about the misrepresentation and
13 the process of denying the claim, and that's what
14 happened.
15 Q. You had telephone conversations regarding
16 that?
17 A. I had a telephone conversation with Peggy
18 Ralphs, yes.
19 Q. And those are not documented anywhere?
20 A. No.
21 Q. Now, back to the policy manual.
22    At 10.1.1 on page 26 --
23 A. Okay.
24 Q. -- looking from 26 to -- let's see -- 29,
25 that talks about what you're to do as the handler in

SCRIBES, INC.

170

1  determining a loss value and replacement cost,
2  et cetera?
3  A. Correct.
4  Q. And did you follow this outline?
5  A. (No audible response)
6  Q. Take your time and look it over. I don't
7  want to rush you.
8  A. Okay.
9     (Pause in the proceedings)
10 A. Yes.
11    MS. HEFFERNAN: I'm done for now, but
12 until I receive the rest of the documents,
13 I'm not willing to conclude this deposition.
14 I don't know whether those documents would
15 lead to any further questions.
16    MR. ROTTNER: I have no problem with
17 continuing the deposition for the purpose of
18 any further questions that those documents
19 might lead to, but, as to anything else, I do
20 have a problem.
21    If you ask a question and want to come
22 back and you can state to me any rational
23 basis that that document leads to any other
24 question, I won't interfere with that. But
25 if it doesn't -- if the document suggests

SCRIBES, INC.

171

1  something you wouldn't otherwise have thought
2  of, that's fine.
3     MS. HEFFERNAN: The only caveat I have
4  to that is I did expect the attorney's file
5  as well.
6     MR. ROTTNER: That I don't think was
7  requested.
8     MS. HEFFERNAN: I don't want to argue
9  about it. My request was broad enough that I
10 felt it included that.
11    However, he's testified today that
12 there's conversations that he had with the
13 attorney that he doesn't have documented;
14 that he had input into putting together some
15 evaluation information that resulted in the
16 settlement of the mortgagee's claim, but he
17 doesn't have any document. Attorney Ralphs
18 has that.
19    So, you know, what I would suggest is
20 let's do Attorney Ralphs' deposition next and
21 then bring him back, and I can ask him any
22 questions -- I did expect to have those
23 documents here today, and I understand there
24 was a different interpretation. I'm not
25 claiming bad faith.

172

1     MR. ROTTNER: I won't agree to that.
2     You can ask Attorney Ralphs the
3  questions. You can request her to produce
4  her file. We'll get the file. We'll try to
5  get it in the same condition we've done with
6  this file, so we can go through it on an
7  orderly basis.
8     But I'm not conceding that whatever you
9  learn from Attorney Ralphs gives you the
10 right of the second bite of the apple of
11 Mr. Terra. Whatever you learn from the
12 documents that we didn't get from the
13 computer -- I have no problem with you asking
14 whatever you'd like to ask Mr. Terra about
15 those at any time.
16    MS. HEFFERNAN: I guess what we'll have
17 to do is, once we have the deposition, I'll
18 renotice Mr. Terra. We can only do that in
19 court, because I do think that the request
20 was broad enough to have included
21 Attorney Ralphs' file.
22    And I also don't think I'm prohibited
23 from coming back and renoticing someone's
24 deposition a second time if I've obtained new
25 information that leads to that being

173

```
 1   necessary.  So I'd rather not waste time
 2   dickering in the court, but I'm willing to do
 3   that.
 4          Do you want to start looking at dates,
 5   availability, for the next round of
 6   depositions?
 7          I'm going to want to speak --
 8          (Discussion off the record)
 9          MR. ROTTNER:  I have no questions.
10          (Time noted:  2:58 p.m.)
11          (Jurat follows on page 174, no omission)
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

SCRIBES, INC.

---

174

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT
- - - - - - - - - - - - - - - - - - x
JOSEPH ATTIAS and HAIM ATTIAS,      :
                 Plaintiffs,        :
                                    : Civil Action
         vs.                        : No. 3:03 CV 01009
PATRONS MUTUAL INSURANCE COMPANY    :       (SRU)
OF CONNECTICUT,                     :
                 Defendant.         :
- - - - - - - - - - - - - - - - - - x

       With the addition of the changes, if any, indicated on the attached errata sheet, the foregoing is a true and accurate transcript of my testimony given in the above-entitled action on October 21, 2003.

                           _____
                           SCOTT MICHAEL TERRA

       Subscribed and sworn to before me, the undersigned authority, on this the _____ day of _____, 2003.

                           _____
                           Notary Public

My commission expires:

SCRIBES, INC.

---

175

### I N D E X

#### EXAMINATION

| | Page |
|---|---|
| Direct examination by Ms. Heffernan | 3 |

#### PLAINTIFFS' EXHIBITS FOR IDENTIFICATION

| No. | Description | Page |
|---|---|---|
| 1 | Notice of deposition, dated September 19, 2003 | 3 |
| 2 | Cover page and copy of claims file, privilege log and e-mail, secured with a rubber band | 7 |
| 3 | Copy of sections 1 and 4 of claims file | 15 |

(Exhibits retained by Ms. Heffernan)

---

### C E R T I F I C A T E

       I hereby certify that I am a Notary Public, in and for the State of Connecticut, duly commissioned and qualified to administer oaths.

       I further certify that the deponent named in the foregoing deposition was by me duly sworn, and thereupon testified as appears in the foregoing deposition; that said deposition was taken by me stenographically in the presence of counsel and reduced to typewriting under my direction, and the foregoing is a true and accurate transcript of the testimony.

       I further certify that I am neither of counsel nor attorney to either of the parties to said suit, nor am I an employee of either party to said suit, nor of either counsel in said suit, nor am I interested in the outcome of said cause.

       Witness my hand and seal as Notary Public this _____ day of _____, 2003.

                           _____
                           Bonita Cohen
                           Notary Public

My Commission expires:
November 30, 2007