FILED

2004 OCT -1  P 12: 18

U.S. DISTRICT COURT
BRIDGEPORT, CONN

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOSEPH ATTIAS & HAIM ATTIAS | : | CIVIL NO. 3:03 CV 01009 (SRU) |
| Plaintiffs | : | |
| | : | |
| PATRONS MUTUAL INSURANCE | : | |
| COMPANY OF CONNECTICUT | : | |
| Defendant | : | SEPTEMBER 29, 2004 |

### PLAINTIFFS' OBJECTION TO DEFENDANT'S

### MOTION TO COMPEL PAYMENT FOR DEPOSITION

### TESTIMONY OF DEFENDANT'S EXPERT, ROBERT NATTRASS

### DATED SEPTEMBER 9, 2004

The Plaintiffs Haim and Joseph Attias hereby object to the Defendant's Motion to Compel

Payment for the Deposition Testimony of Defendant's Expert, Robert Nattrass dated September 9, 2004 on

the basis that the testimony offered was not qualified expert testimony but testimony of a fact witness and

therefore payment is not required to be made by the plaintiffs.  It appears to be the defendant's position that

as the defendant disclosed Mr. Nattrass as an expert then he is one and his testimony should be paid for by

the plaintiffs. That is not the standard in our system.  As pointed out by the defendant it is the trial court's

role to determine whether a witness is offering expert testimony.  Fernandex v. Chios Shipping Co., Ltd

542 F.2d 145 (2nd Cir. 1976).  Additionally the substance of the witness' testimony can determine whether

he is in fact an expert witness and therefore entitled to be paid by the deposing party. Lamere v. New York

Office for the Aging, 2004 WL 1592669 (July 14,2004) copy attached to defendant's motion.

As the Court is aware this case arises  out of a fire loss, which occurred to property owned by the

plaintiffs and insured by the defendant located on New Britain Avenue, in Har5tford, Connecticut.  Mr.

Nattrass was the cause and origin person hired by the defendant at the time of the fire to determine whether arson had been involved in the loss. It is undisputed that arson was not the cause of the loss and therefore no expert testimony will be required at the time of the trial of this case on the cause of the fire. However, as Mr. Nattrass was present at the scene of the fire, interviewed various persons at the scene, and advised the defendant's claim representative that he, Mr. Nattrass, believed the plaintiffs might be committing fraud, undersigned counsel wanted to take his deposition regarding the information Mr. Nattrass obtained at the scene of the loss and explore the reasons behind his advising the claim representative to get a statement from the plaintiffs on the renovations performed on the property, as well as to appropriateness of making that recommendation. (See Transcript excerpt pages 29 – 32, Nattrass deposition attached hereto as Exhibit A). Therefore on June 22, 2004 the plaintiffs, through undersigned counsel, issued a subpoena for Mr. Nattrass to appear for a deposition. He received that deposition on June 23, 2004 at 8:30 a.m. (Please see subpoena with return of service attached hereto as Exhibit B) At that time Mr. Nattrass had not been disclosed as an expert witness by the defendant. Thereafter Mr. Nattrass was contacted by counsel for the defendant to whom he inquired who was going to pay him for his deposition time. Mr. Nattrass was then disclosed as an expert witness to testify that "the plaintiffs had overstated the extent of the improvements and the amount spent to improve the" subject property by way of a fax dated June 23, 2004 and received on said date at 1:15 p.m.. (Please see Exhibit C, fax from Attorney Adams- Beman and Defendant's expert witness disclosure dated June 23, 2004). Said fax further requested prepayment of Mr. Nattrass' witness fee, which was not agreed to by the plaintiffs.

Based on said discourse a renotice of deposition was sent out on June 23, 2004 (Exhibit D). As the issue about prepayment of Mr. Nattrass' testimony fee seemed to continue and the deposition date changed, a new subpoena was issued for Mr. Nattrass and he was properly subpoenaed for his deposition, which occurred on July 7, 2004 (see Exhibit E, renotice and subpoena of Mr. Nattrass). At the time no report regarding Mr. Nattrass' proposed deposition testimony had been disclosed on the issue of overvaluation of improvements to the subject property. Counsel was in possession of Mr. Nattrass' cause

2

and origin report from November 2002, however no expert report had been provided on the area of expert testimony Mr. Nattrass had been disclosed on. Additionally, a Curriculum Vitae was not disclosed until the time of the deposition. Thereafter, undersigned counsel, acting on good faith, proceeded with the deposition of Mr. Nattrass, assuming that he would in fact be qualified to render the expert testimony disclosed and would in fact offer such expert testimony. Additionally, the plaintiffs intended to question Mr. Nattrass on factual matters from the date of the fire including exploring the reasons for his advice to the defendant's claims representative, Scot Terra, to have statements taken of the insured. These are not expert areas, but factual inquires.

During the deposition it became clear that Mr. Nattrass has no expert qualifications to render expert testimony on the value of the renovations performed on the subject property. (See Transcript excerpt pages 59-63, Nattrass deposition attached hereto as Exhibit F and transcript excerpt pages 82-96, Nattrass deposition attached hereto as Exhibit G). It further became clear that his function as a cause and origin expert did not require him to inquire into the valuation of renovations in a case were it was clear arson was not involved.

The defendant in its motion contends that as undersigned counsel questioned Mr. Nattrass as to cause and origin issues, receiving the "benefit" of his expertise it that area, that the plaintiffs should pay the expert fees. The questions were not designed to elicit expert opinions within Mr. Nastrass' expertise as a cause and origin expert, but to establish that information regarding valuation of renovations is not pertinent to Mr. Nastrass' determination of cause and origin of the subject fire and to determine what Mr. Nattrass actually did while on the scene of the fire. Those are factual questions based on Mr. Nastrass' actual actions at the scene and did not involve asking him for expert opinions for which compensation would be appropriate.

Wherefore, for the forgoing reasons, the plaintiffs should not be compelled to pay for the testimony of Mr. Nattrass at his deposition of July 7, 2004, and the defendant should be sanctioned for

bringing the motion to compel without cause by being ordered to pay the costs for the filing and defense of this objection.

Alternatively if the Court finds that Mr. Nattrass is entitled to an expert fee; the amount requested to be paid is unreasonable as it includes time spent by Mr. Nattrass in traveling to and from Attorney Rottner's office and time spent with Attorney Rottner. Such time cannot be considered as time spent in responding to the discovery requests of the plaintiff. The deposition was commenced at 11:05 a.m on July 7, 2004 and finished at 1:46. pm that same day. Less than three hours were spent at the deposition and the witness testified that he did not prepare for the deposition (page 92, transcript of Nattrass deposition attached hereto as Exhibit G). Therefore if the Court finds that Mr. Nattrass is entitled to a an expert fee for his testimony, then said fee should not exceed $525.00 reflecting payment of three (3) hours at $175.00 per hour.

THE PLAINTIFFS,

BY
          Cheryl E. Heffernan
          Farver & Heffernan
          2842 Old Dixwell Avenue
          Hamden, Connecticut 06518
          Telephone: 203-288-8266
          Facsimile: 203-288-4702
          Fed Bar No.:CT 06473

4

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was sent by first class mail, postage prepaid this 29th

day of  September 2004, to:

Joel Rottner, Esq.
Skelley Rottner P.C.
PO Box 340890
Hartford, CT  06134-0890

Cheryl E. Heffernan

5

# EXHIBIT A

**Transcript excerpt pages 29 – 32, Nattrass deposition**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - x
                         :
JOSEPH ATTIAS & HAIM ATTIAS,
                         :
         Plaintiffs,
                         :  Civil Action
    vs.                 No.
                         :  3:03 CV01009
PATRONS MUTUAL INSURANCE COMPANY   (SRU)
OF CONNECTICUT,
                         :
         Defendant.
                         :
- - - - - - - - - - - - - - - - - - - x

Deposition of ROBERT R. NATTRASS, FCLS,

taken pursuant to the Federal Rules of Civil

Procedure, at the law offices of Farver &

Heffernan, 2842 Old Dixwell Avenue, Hamden,

Connecticut, before Janet C. Phillips,

License #00124, a Registered Professional

Reporter and Notary Public in and for the

State of Connecticut, on Wednesday, July 7,

2004, at 11:05 a.m.

SCRIBES, INC.

---

A P P E A R A N C E S

FARVER & HEFFERNAN
Attorneys for the Plaintiffs
2842 Old Dixwell Avenue
Hamden, Connecticut  06518
Phone:  (203) 288-8266
    By:  CHERYL E. HEFFERNAN, Esq.

SKELLEY ROTNER, P.C.
Attorneys for the Defendant
433 South Main Street
West Hartford, Connecticut  06110
    By:  JOEL J. ROTNER, Esq.

SCRIBES, INC.

---

         3

1         R O B E R T   R.   N A T T R A S S,

2     called as a witness, having first been duly sworn

3     by Janet C. Phillips, a Notary Public in and for

4     the State of Connecticut, was examined and

5     testified as follows:

6   DIRECT-EXAMINATION

7   BY MS. HEFFERNAN:

8      Q.   Mr. Nattrass, my name is Attorney Cheryl

9     Heffernan.  I represent Joseph and Haim Attias in an

10    action against Patrons Insurance Company.  Have you

11    ever been deposed before?

12     A.   Yes.

13     Q.   Okay.  On how many occasions?

14        MR. ROTNER:  Before we continue, we

15       will agree to the usual stipulations, but he

16       wants to reserve the right to read and sign.

17        MS. HEFFERNAN:  Okay.

18     Q.   Have you ever been deposed before?

19     A.   Yes, I have.

20     Q.   And how many times?

21     A.   More than 12.

22     Q.   And over what course of time was that?

23     A.   Would it be helpful if I gave you my CV?

24     Q.   That would be very helpful.

25     A.   Okay.

SCRIBES, INC.

---

         4

1        (Curriculum vitae marked Plaintiffs'

2       Exhibit 1 for identification.)

3     Q.   We've just marked Plaintiffs' Exhibit 1.  Is

4    this a current CV?

5     A.   Yes.

6     Q.   And does it list all of the depositions

7    you've taken or cases you've been involved in?

8     A.   No, just recent depositions.

9        MS. HEFFERNAN:  Let me mark this next.

10       (Subpoena and Notice of Deposition

11       marked Plaintiffs' Exhibit 2 for

12       identification.)

13     Q.   I'm going to show you what's been marked as

14    Plaintiffs' Exhibit 2.  And this is the subpoena that

15    you were served that I pulled out of your file,

16    correct?

17     A.   Yes.

18     Q.   And that's for today's deposition?

19     A.   Yes.

20     Q.   And it requires you to bring your file, as

21    well as a current CV.  You have produced your CV, which

22    is marked as Plaintiffs' Exhibit 1, and your current

23    file is in front of me, correct?

24     A.   That's correct.

25        MS. HEFFERNAN:  And I'd like to have the

SCRIBES, INC.

29

1 attempting to embellish the amount of work."

2     A.   Okay.

3     Q.   Okay.

4     A.   Yes.

5     Q.   And then after that, you spoke to Mr. Lopez,

6 Detective Lopez and Juan Ramos --

7     A.   Right.

8     Q.   -- which is referenced in the last paragraph.

9     So your suspicions regarding Mr. Attias'

10 representations had nothing to do with any

11 conversations you had with Mr. Ramos because you had

12 not had any conversations with Ramos then, correct?

13     A.   His conversation confirmed my suspicion that

14 something was not right here.

15     Q.   Okay.

16     A.   That I had looked at the building -- my

17 conversation with Joseph Attias about the work being

18 done and the contractors had licensing and all this

19 information was given to me.  And he made the comment

20 to me that he had invested about $150,000 into this

21 property.

22     Q.   Where is that reflected in your written

23 notes?

24     A.   It's not.

25     Q.   It's just something you remembered?

SCRIBES, INC.

30

1     A.   I remember that clearly because I live in a

2 three-family home, and when he made that -- and I paid

3 for renovation to my apartment, an extensive

4 renovation.  And when he said he put 150,000, I

5 expected to see heating systems changed, major

6 plumbing, and items like that.

7     And then when I went in and saw that the

8 apartment didn't have that kind of work done in it, I

9 said where is he coming up with 150,000?  That just

10 doesn't make sense to me.

11     Q.   How is that significant in your function as

12 the cause and origin investigator?

13     A.   It's not significant, except that if it was a

14 set fire, it would be significant.

15     Q.   Okay.

16     A.   And I'm falling back on previous -- I was a

17 fraud investigator for two insurance companies.  I was

18 an SIU investigator.  They don't like the word "fraud."

19 We're not supposed to use that word when we do

20 investigation, but that's basically it.  So I know what

21 inflating a claim is.

22     And in his claim, I said to myself, there's

23 something wrong here.  This just doesn't jive with what

24 I'm seeing.  I brought that to Mr. Terra's attention

25 and told him you should get somebody to look at this,

SCRIBES, INC.

31

1 SIU person, attorney, whatever.  It turns out that they

2 don't have an SIU, per se.

3     Q.   So you talked to Mr. Terra.  Tell me about

4 that conversation with Mr. Terra that you just

5 mentioned about, you know, believing that Mr. Attias

6 was inflating the claim.  Tell me what you remember

7 about that conversation.

8          MR. ROTTNER:  What he remembers about

9          the substance of the conversation?

10          MS. HEFFERNAN:  What he remembers,

11          period, every aspect of the conversation.

12     Q.   Where were you?

13     A.   We were standing outside a burned-out

14 building, and I said your insured is telling me things

15 that aren't adding up, something to that effect, that,

16 you know, having to do with contractors' licensing,

17 it's just not adding up.  You should get somebody out

18 here to sit down and get what he has to say documented,

19 because that was not my job.  My job was origin and

20 cause.

21     Q.   All right.

22     A.   But I have an obligation to tell him that.

23     Q.   Why?

24     A.   Why?

25     Q.   Yes.

SCRIBES, INC.

32

1     A.   I'm a good citizen.  I was a police officer.

2 I was a fraud investigator.  I think I have an

3 obligation.  This man is hiring me to do a job.  You

4 know, if I was hired to paint his house and somebody

5 came in and robbed it, I think I'd have an obligation

6 to tell him about it.

7     Q.   So is it fair to say that you told Mr. Terra

8 that you believed that Mr. Attias was inflating the

9 value of the claim and that he should get someone out

10 here for that purpose?

11     A.   To get documentation on some of the

12 statements that Attias made to me.

13     Q.   Okay.  And you particularly suggested an

14 attorney or investigator?

15     A.   I think I said to him, "Do you have an SIU,"

16 and he said, "We don't."  And I said, "Well, you better

17 get an attorney or somebody out there, somebody who can

18 conduct an interview."

19     Q.   Now, you're a licensed private investigator?

20     A.   Yes, I am.

21     Q.   And couldn't you conduct that interview?

22     A.   Not and conduct an origin and cause at the

23 same time.  You can only do so much at these scenes.

24     Q.   Why can't you?

25     A.   Why can't I?

SCRIBES, INC.

97

```
 1    IN THE UNITED STATES DISTRICT COURT
 2    FOR THE DISTRICT OF CONNECTICUT
 3    - - - - - - - - - - - - - - - - - x
                                        :
 4    JOSEPH ATTIAS & HAIM ATTIAS,
                                        :
 5                Plaintiffs,
                                        :
 6          vs.                         : Civil Action
                                          No.
 7    PATRONS MUTUAL INSURANCE COMPANY  : 3:03 CV01009
      OF CONNECTICUT,                     (SRU)
 8                                      :
                  Defendant.            :
 9
      - - - - - - - - - - - - - - - - - x
10
11           With the addition of the changes, if any,
12    indicated on the attached errata sheet, the foregoing
      is a true and accurate transcript of my testimony given
13    in the above-entitled action on July 7, 2004.
14
15                     ───────────────────
                         ROBERT R. NATTRASS
16
17           Subscribed and sworn to before me, the
18    undersigned authority, on this the _____ day of
19    _____, 2004.
20
21
22                     ───────────────────
                            Notary Public
23    My commission expires:
24
25
```

SCRIBES, INC.

98

```
 1              INDEX OF EXAMINATIONS
 2    ROBERT R. NATTRASS                       Page
 3    Direct-examination by Ms. Heffernan ............. 3
 4    Cross-examination by Mr. Rottner ............... 93
 5
 6           PLAINTIFFS' EXHIBITS FOR IDENTIFICATION
 7    No.   Description                          Page
 8    1   Curriculum vitae .......................... 4
 9    2   Subpoena and Notice of Deposition .......... 4
10    3   File ...................................... 5
11    4   Videotape ................................. 51
12    5   Disclosure of Expert Witness ............. 77
13
14              (Exhibit 1, 2, 4 and 5 retained by
15          Ms. Heffernan.  Exhibit 3 retained by the
16          Witness.)
17
18
19
20
21
22
23
24
25
```

           C E R T I F I C A T E

          I hereby certify that I am a Notary Public,
    in and for the State of Connecticut, duly commissioned
    and qualified to administer oaths.

          I further certify that the deponent named in
    the foregoing deposition was by me duly sworn, and
    thereupon testified as appears in the foregoing
    deposition; that said deposition was taken by me
    stenographically in the presence of counsel and reduced
    to typewriting under my direction, and the foregoing is
    a true and accurate transcript of the testimony.

          I further certify that I am neither of
    counsel nor attorney to either of the parties to said
    suit, nor am I an employee of either party to said
    suit, nor of either counsel in said suit, nor am I
    interested in the outcome of said cause.

          Witness my hand and seal as Notary Public
    this _____ day of _____, 2004.


                     ───────────────────
                         Janet C. Phillips
                         Notary Public
                         CSR License #00124
    My Commission expires:
    October 31, 2006

# EXHIBIT B

**Nattrass subpoena with return of service**

# United States District Court

## DISTRICT OF CONNECTICUT

JOSEPH ATIAS & HAIM ATIAS

## SUBPOENA IN A CIVIL CASE

v

PATRONS MUTUAL INSURANCE COMPANY      3:03 CV 01009 (SRU)
OF
CONNECTICUT

TO:     **MR. ROBERT R. NATTRASS, FCLS**
  **ACACIA INVESTIGATIONS**
  **91 SHUTTLE MEADOW AVENUE**
  **NEW BRITAIN, CONNECTICUT 06051**
  **860-224-4841**

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| LAW OFFICES OF SKELLEY ROTTNER, 433 SOUTH MAIN STREET, SUITE 305, WEST HARTFORD, CONNECTICUT | MONDAY JUNE 28, 2004 1:30 PM |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): **YOUR ENTIRE FILE ON PATRON'S INSURANCE POLICY# DCT 0023909, FOR PROPERTY AT 475 NEW BRITAIN AVENUE, HARTFORD, CT.**

| PLACE | DATE AND TIME |
|---|---|
| | |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure. 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for Plaintiffs | JUNE 22, 2004 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Cheryl E. Heffernan, FARVER & HEFFERNAN, 2842 Old Dixwell Avenue, Hamden, Connecticut 06518

203-230-2500

(See Rule 45, Federal Rules of Civil Procedure Parts C & D on Reverse)

# United States District Court

### DISTRICT OF CONNECTICUT

JOSEPH ATIAS & HAIM ATIAS

## SUBPOENA IN A CIVIL CASE

v

PATRONS MUTUAL INSURANCE COMPANY    3:03 CV 01009 (SRU)
OF
CONNECTICUT

TO:    MR. ROBERT R. NATTRASS, FCLS
       ACACIA INVESTIGATIONS
       91 SHUTTLE MEADOW AVENUE
       NEW BRITAIN, CONNECTICUT 06051
       860-224-4841

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| LAW OFFICES OF SKELLEY ROTTNER, 433 SOUTH MAIN STREET, SUITE 305, WEST HARTFORD, CONNECTICUT | MONDAY JUNE 28, 2004 1:30 PM |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): **YOUR ENTIRE FILE ON PATRON'S INSURANCE POLICY# DCT 0023909, FOR PROPERTY AT 475 NEW BRITAIN AVENUE, HARTFORD, CT.**

| PLACE | DATE AND TIME |
|---|---|
|  |  |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for Plaintiffs | JUNE 22, 2004 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Cheryl E. Heffernan, FARVER & HEFFERNAN, 2842 Old Dixwell Avenue, Hamden, Connecticut 06518
203-230-2500

(See Rule 45, Federal Rules of Civil Procedure Parts C & D on Reverse)

# United States District Court

### DISTRICT OF CONNECTICUT

JOSEPH ATIAS & HAIM ATIAS

## SUBPOENA IN A CIVIL CASE

v

PATRONS MUTUAL INSURANCE COMPANY    3:03 CV 01009 (SRU)
OF
CONNECTICUT

TO:    **MR. ROBERT R. NATTRASS, FCLS**
**ACACIA INVESTIGATIONS**
**91 SHUTTLE MEADOW AVENUE**
**NEW BRITAIN, CONNECTICUT 06051**
**860-224-4841**

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☒ YOU ARE COMMANDED to appear at the place, date and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| LAW OFFICES OF SKELLEY ROTTNER, 433 SOUTH MAIN STREET, SUITE 305, WEST HARTFORD, CONNECTICUT | MONDAY JUNE 28, 2004 1:30 PM |

☒ YOU ARE COMMANDED  to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):  **YOUR ENTIRE FILE ON PATRON'S INSURANCE POLICY# DCT 0023909, FOR PROPERTY AT 475 NEW BRITAIN AVENUE, HARTFORD, CT.**

| PLACE | DATE AND TIME |
|---|---|
| | |

☐ YOU ARE COMMANDED  to permit inspection of the following premises at the date and time  specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify   Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) Attorney for Plaintiffs | DATE JUNE 22, 2004 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Cheryl E. Heffernan, FARVER & HEFFERNAN, 2842 Old Dixwell Avenue, Hamden, Connecticut 06518

203-230-2500

(See Rule 45, Federal Rules of Civil Procedure Parts C & D on Reverse)

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **JOSEPH ATAIS & HAIM ATAIS** | **CLIENT:** Cheryl E. Heffernan, Esquire |
| Plaintiff(s), Petitioner(s) | **INDEX NO.:** 3:03 CV 01009 (SRU) |
| against | **RETURN DATE:** 6/28/2004 |
| **PATRONS MUTUAL INS. CO OF CONNECTICUT** | |
| Defendant(s), Respondent(s) | **RETURN OF SERVICE** |

STATE OF CONNECTICUT: COUNTY OF HARTFORD

I, Rich Zechiel, attest and say, that I am not a party to this action. I am over 18 years of age and reside in Manchester, CT.

By and at the direction of the attorney, on **June 23, 2004 at 8:30 AM at Acacia Investigations, 91 Shuttle Meadow Avenue, New Britain, CT 06051,** I served the within **Subpoena In A Civil Case** upon **Robert R. Nattrass, FCLS,** (Defendant/Witness) herein known as Recipient.

Said service was effected in the following manner:

I made due and legal service of the within **Subpoena In A Civil Case** by delivering thereat a true and attested copy *of each* to **Robert R. Nattrass, FCLS,** personally. I knew said person so served to be the person mentioned and described as said recipient therein because they identified themselves as such.

I describe the individual served to the best of my ability at the time and circumstances of service as follows:

Sex: **Male** Skin: **White** Hair: **Blonde/Gray** Age(Approx): **51-65** Height(Approx): **5'9" - 6'** Weight(Approx): **161-200 lbs** Other: **Mustache and Glasses**

ATTEST:

Rich Zechiel, Private Process Server

Service $50.00
Total Fees: $50.00

CONNECTICUT PROCESS SERVING, LLC
9 Beaumont Street
East Hartford, CT, 06108-1533
(860) 528-2920 , (860) 528-2720 Fax
lglprocess@aol.com http://www.legalprocess.com

# EXHIBIT C

**Fax from Attorney Adams- Beman and
Defendant's expert witness disclosure dated June 23, 2004**

SHELLEY ROTTNER P.C.

Law Offices
Corporate Center West
Suite 305
433 South Main Street
West Hartford, CT 06110

Reply to
P.O. Box 340890
Hartford, CT 06134-0890
Phone: (860) 561-7077
Fax: (860) 561-7088

Joseph F. Skelley, Jr.
1927-1998

Heather J. Adams-Beman
James G. Geanuracos
Matthew Dallas Gordon
Randall M. Hoyos
Susan L. Miller
Joel J. Rottner
Geri F. Yelch
Counsel-
Susan E. Mulhet

# TELECOPY COVER SHEET

| | | | |
|---|---|---|---|
| **NAME:** | Cheryl Heffernan | **FROM:** | Heather J. Adams-Beman |
| **COMPANY:** | Farver & Heffernan | **SR FILE NUMBER:** | 7373-03002 |
| **FAX NUMBER:** | 203-288-4702 | **SR FILE NAME:** | Patrons/Attias |
| **DATE:** | June 23, 2004 | | |

**SUBJECT:** Joseph Attias, et al. v. Patrons Mutual Insurance Company

**NUMBER OF PAGES:** 7 **(including cover sheet)**

**If any page of this transmission is not legible, please call (860) 561-7077 and ask for Barbara Willis as soon as possible.**

****************************************************************************************

**SUPPLEMENTAL MESSAGE:**

****************************************************************************************

This Facsimile contains PRIVILEGED AND CONFIDENTIAL INFORMATION intended only for the use of the addressee(s) named above. If you are not the intended recipient of this Facsimile, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this Facsimile is strictly prohibited. If you have received this Facsimile in error, please immediately notify us by telephone and return the original Facsimile to us at the above address via the U.S. Postal Service. Thank you.

SR/16450

**SKELLEY ROTTNER** P.C.

Law Offices
Corporate Center West
Suite 306
433 South Main Street
West Hartford, CT 06110

Reply to
P.O. Box 340890
Hartford, CT 06134-0890
Phone: (860) 561-7077
Fax: (860) 561-7088

Joseph F. Skelley, Jr.
1927-1995

Heather J. Adams-Bernon
James G. Gosmuraces
Matthew Dallas Gordon
Randall M. Hayes
Suvan L. Miner
Joel J. Rottner
Counsel:-
Susan E. Mailat

June 23, 2004

**VIA FACSIMILE: 203-288-4702**

Attorney Cheryl E. Heffernan
Farver & Heffernan
2842 Old Dixwell Avenue
Hamden, Connecticut  06518

Re:  Insured         :    **Joseph and Halm Atias**
     Policy          :    **DCT 0023909**
     Date of Loss  :    **November 13, 2002**
     Our File No. :    **7373-03002**

Dear Ms. Heffernan:

     Please be advised that despite the improper service of subpoena upon
Mr. Nattrass, we are available and prepared to go forward with his deposition
on Monday June 28, 2004 in our office. As you are aware, according to F. R.
Civ. Pro 45 (b) service of a subpoena upon a person whose attendance is
required shall include the tendering that person the witness fee of $40 and the
mileage pursuant to 28 USCA 1821. According to Mr. Nattrass he was not
provided with either.

     As indicated, however, we are willing to proceed under the following
conditions. Please find attached a disclosure of expert for Mr. Nattrass as well
as Mr. Leighton. Should you wish to question Mr. Nattrass solely based on
his factual observations during his investigation then we are willing to waive
the statutorily required witness fee. If however, you wish to question Mr.
Nattrass regarding his expert opinions in accordance with our disclosure then
his fee is $175 per hour for his testimony, to be paid in advance of the
deposition. In such case, Mr. Nattrass is willing to appear without the need
for a subpoena and therefore the $40 is not necessary.

     With regard to the deposition of a designated representative of
Imagineers, LLC, noticed by our office, I have notified them of your
unavailability on Friday June 25, 2004 and have asked them to confirm their
availability on June 28th. I have not yet received their response to the same
but will advise you of the same upon receipt.

Attorney Cheryl E. Heffernan
June 15, 2004
Page 2

Should you have any questions or concerns, please feel free to contact
me, otherwise we will see you in our office on June 28th.

Very truly yours,

Heather J. Adams-Beman

HAB:bsw
SR/222311

cc:     Mr. Scott Terra
        Property Adjuster
        Patrons Mutual Insurance Company
        P.O. Box 6517
        Glastonbury, Connecticut 06033

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOSEPH ATTIAS & HAIM ATTIAS　　　　:　　CIVIL ACTION NO.
　　　　　　　　　　　　　　　　　　　　:　　3:03 CV 01009 (SRU)
VS.　　　　　　　　　　　　　　　　　:

PATRONS MUTUAL INSURANCE　　　　　:
COMPANY OF CONNECTICUT　　　　　　:　　JUNE 23, 2004

### DEFENDANT'S, PATRONS MUTUAL INSURANCE COMPANY OF CONNECTICUT, DISCLOSURE OF EXPERT WITNESS

Pursuant to Rule 26(2) of the Federal Rules of Civil Procedure, the defendant, Patrons

Mutual Insurance Company of Connecticut, hereby provides the disclosure of the following

experts:

> **Mr. Robert Nattrass**
> **Acacia Investigations**
> **91 Shuttle Meadow Avenue**
> **New Britain, CT 06051**

Mr. Nattrass is expected to testify in accordance with his education, knowledge and

experience, and training and inspection of the premises on the date of the fire. Mr. Nattrass is

expected to testify that based on his investigation that it is his opinion that the plaintiff's over

stated the extent of the improvements and the amount spent to improve the property located at

475 New Britain Avenue, Hartford, Connecticut prior to the fire on November 13, 2002.

SR/219155/hab

Law Offices of SKELLEY ROTTNER P.C. ☐ P.O. Box 340890, Hartford, CT 06134-0890 ☐ Phone: (860) 561-7077 Fax: (860) 561-7088
Juris No. 28663



**PLAINTIFF'S EXHIBIT**
5
7/7/04

A copy of Mr. Nattrass' has been previously disclosed through the Patron's Insurance

Company claim file Bates numbers 000205- 000157.

>**Mr. Terrill Leighton**
>**Leighton Appraisal Service**
>**P.O. Box 2136**
>**Vernon, CT 06066**

Mr. Leighton is expected to testify in accordance with his education, knowledge and

experience as a real estate appraiser. Mr. Leighton is expected to testify as to the fair market

value of the real estate including the fair market value of the structure and the fair market value

of the land. In accordance with his report dated August 15, 2002 Mr. Leighton is expected to

testify that the estimated value of the land was $ 35000.00 as of the date of inspection was and

the estimated value of the improvements to the land was $138,495.00 as of the date of the

inspection.

The plaintiffs previously disclosed Mr. Leighton's report.

- 2 -

Law Offices of SKELLEY ROTTNER P.C. □ P.O. Box 340890, Hartford, CT 06134-0890 □ Phone: (860) 561-7077 Fax: (860) 561-7088

Juris No. 58898

DEFENDANT, PATRONS MUTUAL
INSURANCE COMPANY

By _____

Heather J. Adams-Beman
Skelley Rottner P.C.
P.O. Box 340890
Hartford, CT  06134-0890
Tel. (860) 561-7077
Fax (860) 561-7088
Federal Bar No. ct24091

- 3 -

## CERTIFICATION

I hereby certify that a copy of the above was mailed via U.S. Mail, postage prepaid, on June 23, 2004, to the following counsel of record:

Attorney Cheryl E. Heffernan
Law Office of Cheryl E. Heffernan
2842 Old Dixwell Avenue
Hamden, CT 06518

_____
Heather J. Adams-Beman

- 4 -

Law Offices of SKELLEY ROTTNER P.C. ☐ P.O. Box 340890, Hartford, CT 06134-0890 ☐ Phone: (860) 561-7077 Fax: (860) 561-7088

Juris No. 58893

# EXHIBIT D

**Renotice of Nattrass deposition dated June 23, 2004**

## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

JOSEPH ATTIAS & HAIM ATTIAS       :      CIVIL NO. 3:03 CV 01009 (SRU)

       Plaintiffs            :

                                :

PATRONS MUTUAL INSURANCE      :

COMPANY OF CONNECTICUT       :

       Defendant           :      June 23, 2004

### NOTICE OF DEPOSITION

The Plaintiffs, Joseph and Haim Attias, in the above-captioned matter will take the deposition of the Defendant's expert, ROBERT R. NATTRASS, FCLS, on **MONDAY JUNE 28, 2004, at 1:30 P.M.**, at the **LAW OFFICE OF FARVER & HEFFERNAN, 2842 Old Dixwell Avenue, Hamden, Connecticut**, before a Court Reporter or other competent authority. The deposition will continue from day to day until completed.

The deponent is hereby instructed to produce at the time of his deposition, the following:

1.      His entire file on Attias v. Patrons Insurance, including but not limited to documentation received by him or written by him relating to this matter,

2.      His current curriculum vitae,

3.      Copies of any professional certificates and licenses he holds,

4.      A current list of any/all legal matters/cases that he has been asked to testify for as an expert in his field.

You are invited to attend and cross-examine.

THE PLAINTIFF,

BY _____

Cheryl E. Heffernan
Farver & Heffernan
2842 Old Dixwell Avenue
Hamden, Connecticut 06518
Telephone: 203-288-8266
Facsimile: 203-288-4702
Fed Bar No.:CT 06473

## CERTIFICATION

I hereby certify that a copy of the foregoing was sent via facsimile and first class mail,

postage prepaid this 23rd  day of June 2004, to:

Heather Adams-Beman, Esq.
Skelley Rottner P.C.
PO Box 340890
Hartford, CT  06134-0890

Scribes, Inc.
445 George Street
New Haven, CT  06511

_____
Cheryl E. Heffernan

# EXHIBIT E

**Renotice of Nattrass deposition dated June 28, 2004**

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOSEPH ATTIAS & HAIM ATTIAS | : | CIVIL NO. 3:03 CV 01009 (SRU) |
| Plaintiffs | : | |
| | : | |
| PATRONS MUTUAL INSURANCE | : | |
| COMPANY OF CONNECTICUT | : | |
| Defendant | : | June 28, 2004 |

### NOTICE OF DEPOSITION

The Plaintiffs, Joseph and Haim Attias, in the above-captioned matter will take the

deposition of the Defendant's expert, ROBERT R. NATTRASS, FCLS, on **WEDNESDAY**

**JULY 7, 2004, at 10:30 A.M.**, at the **LAW OFFICE OF FARVER & HEFFERNAN, 2842 Old**

**Dixwell Avenue, Hamden, Connecticut**, before a Court Reporter or other competent authority.

The deposition will continue from day to day until completed.


You are invited to attend and cross-examine.


THE PLAINTIFF,

BY _____
Cheryl E. Heffernan
Farver & Heffernan
2842 Old Dixwell Avenue
Hamden, Connecticut 06518
Telephone: 203-288-8266
Facsimile: 203-288-4702
Fed Bar No.:CT 06473

## CERTIFICATION

I hereby certify that a copy of the foregoing was sent via facsimile and first class mail,

postage prepaid this 28TH day of June 2004, to:

Heather Adams-Beman, Esq.
Skelley Rottner P.C.
PO Box 340890
Hartford, CT  06134-0890

Scribes, Inc.
445 George Street
New Haven, CT  06511
(Facsimile only)

Cheryl E. Heffernan

# United States District Court

## DISTRICT OF CONNECTICUT

JOSEPH ATIAS & HAIM ATIAS

### SUBPOENA IN A CIVIL CASE

PATRONS MUTUAL INSURANCE COMPANY      3:03 CV 01009 (SRU)
OF
CONNECTICUT

TO:    **MR. ROBERT R. NATTRASS, FCLS**
**ACACIA INVESTIGATIONS**
**91 SHUTTLE MEADOW AVENUE**
**NEW BRITAIN, CONNECTICUT 06051**
**860-224-4841**

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☒ YOU ARE COMMANDED to appear at the place, date and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| OFFICES OF FARVER & HEFFERNAN, 2842 OLD DIXWELL AVENUE, HAMDEN, CONNECTICUT 06518, 203-230-2500 | WEDNESDAY, JULY 7, 2004 10:30 AM |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): **YOUR ENTIRE FILE ON PATRON'S INSURANCE POLICY# DCT 0023909, FOR PROPERTY AT 475 NEW BRITAIN AVENUE, HARTFORD, CT., and CURRENT Curriculum vita**

| PLACE | DATE AND TIME |
|---|---|
| | |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for Plaintiffs | JUNE 28, 2004 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
**Cheryl E. Heffernan, FARVER & HEFFERNAN, 2842 Old Dixwell Avenue, Hamden, Connecticut 06518**
203-230-2500

## PROOF OF SERVICE

| DATE | PLACE |
|------|-------|
|      |       |

SERVED

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|------------------------|-------------------|
|                        |                   |

| SERVED BY (PRINT NAME) | TITLE |
|------------------------|-------|
|                        |       |

## DECLARATION OF SERVICE

    I declare under penalty of perjury under the laws of the United States of America that the foregoing information cotained in the Proof of Service is true and correct.

Executed on _____

                DATE                                   SIGNATURE OF SERVER

                                                  ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

    (1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

    (2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

    (B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

    (3)(A) On timely motion, the court by which a subpoena was issued shall squash or modify the subpoena if it

        (i) fails to allow reasonable time for compliance;
        (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of

clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or,

        (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

    (B) If a subpoena

        (i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
        (ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
        (iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(D) DUTIES IN RESPONDING TO SUBPOENA

    (1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

    (2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

July 7, 2004

**CONNECTICUT PROCESS SERVING, LLC**
9 Beaumont Street
East Hartford, CT, 06108-1533
(860) 528-2920 , (860) 528-2720 Fax

**RETURN SERVICE REQUESTED**
    Our EIN # 06-1445325

**Invoice**



CHERYL E. HEFFERNAN, ESQUIRE
2842 OLD DIXWELL AVENUE
HAMDEN CT 06518

203-288-8266 Business
203-288-4702 Fax

Reference Job #71905 when remitting.
## Originally billed on July 1, 2004

Joseph Atais & Haim Atais vs Patrons Mutual Ins. Co
of Connecticut,

Witness Fees $55.00

Docket/Case Number: 3:03 CV 01009 (SRU)
**Subpoena in A Civil Case**
**Robert R. Nattrass, FCLS**

Witness Fees: $55.00

Completed Personal Service to Robert R. Nattrass,
FCLS on
June 29, 2004 at 1:30 PM,
at: Acacia Investigations, 91 Shuttle Meadow
Avenue, New Britain, CT 06051
by Rich Zechiel, Process Server
Action/Hearing Date July 7, 2004, @ 10:30 AM.

Work Tel: (860) 224-4841 Sex: Male Skin: White Hair: Blonde/Gray Height: 5'9" - 6' Weight: 161-200 lbs Age:
51-65 Other: Mustache and Glasses

**Job Notations: RESERVE-DO NOT CHARGE ATTORNEY BAD SERVICE ON FIRST NO**
**FEDERAL FEE WAS ATTACHED, ATTORNEY WOULD NOT ALLOW TO GO FORWARD**
**BECAUSE OF THIS- DELETE FEES ON THE INVOICE**

**BALANCE DUE: $55.00**

## Thank You!
### We Appreciate Your Business.

## THE SIGNED ORIGINAL IS IN THE MAIL.

# EXHIBIT F

**Transcript excerpt pages 59-63, Nattrass deposition**

2

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - x
                 :
JOSEPH ATTIAS & HAIM ATTIAS,
                 :
      Plaintiffs,
                 :  Civil Action
     vs.           :  No.
                 :  3:03 CV01009
PATRONS MUTUAL INSURANCE COMPANY  (SRU)
OF CONNECTICUT,
                 :
      Defendant.
                 :
- - - - - - - - - - - - - - - - - - - - - x

Deposition of ROBERT R. NATTRASS, FCLS,

taken pursuant to the Federal Rules of Civil

Procedure, at the law offices of Farver &

Heffernan, 2842 Old Dixwell Avenue, Hamden,

Connecticut, before Janet C. Phillips,

License #00124, a Registered Professional

Reporter and Notary Public in and for the

State of Connecticut, on Wednesday, July 7,

2004, at 11:05 a.m.

SCRIBES, INC.

---

A P P E A R A N C E S

FARVER & HEFFERNAN
Attorneys for the Plaintiffs
2842 Old Dixwell Avenue
Hamden, Connecticut  06518
Phone:  (203) 288-8266
   By:  CHERYL E. HEFFERNAN, Esq.

SKELLEY ROTTNER, P.C.
Attorneys for the Defendant
433 South Main Street
West Hartford, Connecticut  06110
   By:  JOEL J. ROTTNER, Esq.

SCRIBES, INC.

---

3

```
 1          R O B E R T   R.   N A T T R A S S,
 2    called as a witness, having first been duly sworn
 3    by Janet C. Phillips, a Notary Public in and for
 4    the State of Connecticut, was examined and
 5    testified as follows:
 6  DIRECT-EXAMINATION
 7  BY MS. HEFFERNAN:
 8      Q.    Mr. Nattrass, my name is Attorney Cheryl
 9    Heffernan.  I represent Joseph and Haim Attias in an
10    action against Patrons Insurance Company.  Have you
11    ever been deposed before?
12      A.    Yes.
13      Q.    Okay.  On how many occasions?
14            MR. ROTTNER:  Before we continue, we
15         will agree to the usual stipulations, but he
16         wants to reserve the right to read and sign.
17            MS. HEFFERNAN:  Okay.
18      Q.    Have you ever been deposed before?
19      A.    Yes, I have.
20      Q.    And how many times?
21      A.    More than 12.
22      Q.    And over what course of time was that?
23      A.    Would it be helpful if I gave you my CV?
24      Q.    That would be very helpful.
25      A.    Okay.
```

SCRIBES, INC.

---

4

```
 1            (Curriculum vitae marked Plaintiffs'
 2         Exhibit 1 for identification.)
 3      Q.    We've just marked Plaintiffs' Exhibit 1.  Is
 4    this a current CV?
 5      A.    Yes.
 6      Q.    And does it list all of the depositions
 7    you've taken or cases you've been involved in?
 8      A.    No, just recent depositions.
 9            MS. HEFFERNAN:  Let me mark this next.
10         (Subpoena and Notice of Deposition
11         marked Plaintiffs' Exhibit 2 for
12         identification.)
13      Q.    I'm going to show you what's been marked as
14    Plaintiffs' Exhibit 2.  And this is the subpoena that
15    you were served that I pulled out of your file,
16    correct?
17      A.    Yes.
18      Q.    And that's for today's deposition?
19      A.    Yes.
20      Q.    And it requires you to bring your file, as
21    well as a current CV.  You have produced your CV, which
22    is marked as Plaintiffs' Exhibit 1, and your current
23    file is in front of me, correct?
24      A.    That's correct.
25            MS. HEFFERNAN:  And I'd like to have the
```

SCRIBES, INC.

58

1    parties. I briefed her on what I -- we've discussed
2    already as to my notes.
3        Q.  Well, specifically tell me what you told her
4    to the best of your recollection.
5        A.  That he -- best of my recollection would be
6    that I would tell her that he --
7            MR. ROTTNER:  Don't speculate.  If you
8            remember.  You said you would tell her.  Do
9            you remember what you told her?
10       A.  I don't remember specifically.
11       Q.  Do you have any specific recollection --
12   well, give me the sum of substance of that --
13       A.  I know specifically I told her I thought it
14   was important that a statement be taken from him and
15   documents gathered that he had said that he had.
16       Q.  Did you tell her why you thought it was
17   important?
18       A.  I don't recall.  I would think --
19       Q.  Did you tell her your suspicions?
20       A.  I don't recall.
21       Q.  Is that something you would have done is tell
22   her your suspicions?
23            MR. ROTTNER:  Object to the form.
24       Q.  -- or explain to her why you thought it was
25   important to document this --

SCRIBES, INC.

58

1            MR. ROTTNER:  Object to the form of the
2            question.
3        A.  I just don't recall what I said at this
4    point, other than I know that -- I know for sure that I
5    told her that I thought a statement should be taken
6    from him and all his documents that he had, indicated
7    he had retained.
8        Q.  Did you think it was important to document
9    the information from the contractors on the scene as
10   well?
11            MR. ROTTNER:  I object to the form.  You
12            can answer it.
13       A.  Do I think it was important?
14       Q.  Yes.
15       A.  Yes.
16       Q.  Did you relay that to Mr. Terra or to
17   Attorney Ralphs at any point?
18       A.  I don't recall at this point.
19       Q.  Okay.  Did you recommend any statements other
20   than a statement of the insured?
21       A.  Not that I recall.
22       Q.  You've testified in court before --
23       A.  Yes.
24       Q.  -- as an expert witness?
25       A.  Yes.

SCRIBES, INC.

59

1        Q.  And in what areas have you testified as an
2    expert witness in court?
3        A.  I testified for origin and cause and as a
4    fraud investigator.
5        Q.  Okay.  As a -- when is the last time you
6    testified as an expert as a fraud investigator, in
7    court, that is?
8        A.  I've got to look.  Okay, it's not listed
9    here.  Many.  The case that I most recall was when I
10   was with Allstate Insurance Company, which was June '94
11   through April '96.  And it was a case -- I'm trying to
12   recall the fellow's name, but it was in Waterbury,
13   Connecticut, in Waterbury Superior Court.  And I just
14   can't recall the name --
15       Q.  Do you know --
16       A.  -- the name of the case.
17       Q.  Do you know what the facts are at all?
18       A.  The facts are that the gentleman had an arson
19   fire in his -- it was a multi-family.  He had Section 8
20   tenants.  And he claimed there were trailers -- it was
21   a device setup, a lantern was set up in the basement
22   with trailers up the staircases with the intent of
23   burning the place to the ground.
24            And there were problems with the case because
25   the local police detective, it was ruled that he seized

SCRIBES, INC.

60

1    evidence illegally without warrant and was on the
2    property without justification and all kinds of things.
3            And ultimately, I testified because I had
4    interviewed the property owner.  And the thing I
5    remember most about the case was him saying that he had
6    never had the property for sale on the market, and I
7    had a picture of the house with a for sale sign on it,
8    and it was his home phone number.
9        Q.  You testified in the criminal trial or civil
10   trial?
11       A.  I testified in a civil trial.  He was never
12   arrested, and he sued Allstate for not paying the
13   claim.  And I testified as a defense witness for
14   Allstate.
15       Q.  You were an employee of Allstate at the time?
16       A.  At the time, yes.
17       Q.  Were you the adjustor -- the investigator on
18   that file?
19       A.  I was the fraud SIU investigator.
20       Q.  Okay.  And your testimony was focused on
21   whether or not fraud has committed or what you had
22   observed?
23       A.  I had taken a recorded statement from him and
24   he had given me facts as to where he was and what had
25   transpired.  He was -- he had an alibi for not being in

SCRIBES, INC.

61

1    state at the time of the fire, and I had interviewed

2    his witness that alibi'd him, along with a lot of other

3    investigations.  So I testified to all of that.

4        Q.    To what you had done and received?

5        A.    Yes.

6        Q.    So you weren't asked to give opinion

7    testimony in that trial?

8        A.    Actually, it was unique because I was asked

9    to give opinion as to the origin and cause because of

10   my background.

11       Q.    Okay.

12       A.    And I was surprised that that happened,

13   because I didn't intend to be used as an origin and

14   cause witness.

15       Q.    So essentially, your expert qualifications

16   were in the origin and cause as far as that case?

17       A.    In addition to the fact witness for all the

18   information, because they had the local police officer

19   who was also a fire origin and cause guy admitted that

20   he illegally seized evidence.

21       Q.    Okay.  So that's a case where you were

22   qualified as an expert for cause and origin.  Was there

23   any case at trial where you were qualified as an expert

24   for fraud?

25            MR. ROTTNER:  I object to the form.

SCRIBES, INC.

62

1        A.    No, I don't recall --

2        Q.    Okay.

3        A.    -- ever being --

4        Q.    Have you ever testified as an expert on

5    fraud --

6            MR. ROTTNER:  Same objection.

7        Q.    -- beyond being a fact witness, I mean, where

8    you were asked, you know, expert opinion testimony?

9            MR. ROTTNER:  I don't understand the

10           question.  I object to the form.

11       Q.    Okay.

12       A.    I actually don't understand the question.

13       Q.    You understood when you're asked as an

14   expert, you're asked to give an opinion based on your

15   expertise, correct?

16       A.    Yes.

17       Q.    And you've operated as an expert witness in

18   the past as cause and origin, correct?

19       A.    Yes.

20       Q.    And my question is were you ever asked to

21   give expert opinion in a fraud case?

22            MR. ROTTNER:  Other than cause and

23           origin?

24            MS. HEFFERNAN:  Yes.

25       Q.    I'm sorry, other than cause and origin?

SCRIBES, INC.

63

1        A.    I don't recall anyone ever coming out and

2    saying are you an expert on fraud.

3        Q.    All right.

4        A.    If that's -- or a judge, nothing -- you know,

5    now we have Daubert and that, but I don't ever recall

6    anybody drawing a line and saying -- but I've, as I

7    said, I testified on fraudulent claims.

8        Q.    Yes, I understand that.  In your file,

9    there's what appears to be, I think it's on the inside

10   cover, the time sheet.  Do you have that?

11       A.    Yes.

12       Q.    Can you turn to that?  There's actually two

13   pages stapled.  It seems the bottom page is the

14   original page and then there's a new page stapled to

15   the top, correct?

16       A.    Yes.

17       Q.    Okay.  Referring to the bottom page, it has a

18   case number, correct?  To start with, it has a case

19   number, correct?

20       A.    Yes.

21       Q.    And where does that number come from?

22       A.    That number is generated by me.

23       Q.    Okay.  That's your company's case number?

24       A.    That's correct.

25       Q.    All right.  And then it shows the client as

SCRIBES, INC.

64

1    being Patrons Mutual, and in parentheses it says,

2    "Scott Terra"?

3        A.    Correct.

4        Q.    And it shows the first date of billing as

5    being November 13th, 2002?

6        A.    Yes.

7        Q.    Okay.  And it shows 7.5 hours done on that

8    day?

9        A.    Correct.

10       Q.    And then you have the column that shows

11   assignment, and it shows what you did for that time

12   period, essentially, a summary?

13       A.    Yes.

14       Q.    Okay.  Where you received the assignment, you

15   did an immediate response, you did a site inspection

16   and interviews?

17       A.    Correct.

18       Q.    And that was during that 7.5 hours?

19       A.    Correct.

20       Q.    There's also a notation of 38 under MI, is

21   that miles traveled?

22       A.    Miles, yes, I charge strictly hours and

23   miles.

24       Q.    You charge strictly hours and miles?  And

25   what do you get reimbursed on miles?

SCRIBES, INC.

97

```
 1    IN THE UNITED STATES DISTRICT COURT

 2    FOR THE DISTRICT OF CONNECTICUT

 3    - - - - - - - - - - - - - - - - - - x
                                          :
 4    JOSEPH ATTIAS & HAIM ATTIAS,
                                          :
 5              Plaintiffs,
                                          :
 6         vs.                            :  Civil Action
                                             No.
 7    PATRONS MUTUAL INSURANCE COMPANY    :  3:03 CV01009
      OF CONNECTICUT,                        (SRU)
 8                                        :
                Defendant.
 9                                        :
      - - - - - - - - - - - - - - - - - - x
10

11
              With the addition of the changes, if any,
12    indicated on the attached errata sheet, the foregoing
      is a true and accurate transcript of my testimony given
13    in the above-entitled action on July 7, 2004.

14

15                    _____
                          ROBERT R. NATTRASS
16

17         Subscribed and sworn to before me, the

18    undersigned authority, on this the _____ day of

19    _____, 2004.

20

21
                      _____
22                          Notary Public

23    My commission expires:

24

25
```

SCRIBES, INC.

98

```
 1                  INDEX OF EXAMINATIONS

 2    ROBERT R. NATTRASS                            Page

 3    Direct-examination by Ms. Heffernan ............ 3

 4    Cross-examination by Mr. Rottner ............... 93

 5

 6         PLAINTIFFS' EXHIBITS FOR IDENTIFICATION

 7    No.  Description                              Page

 8    1    Curriculum vitae ........................ 4

 9    2    Subpoena and Notice of Deposition ......... 4

10    3    File .................................... 5

11    4    Videotape ............................... 51

12    5    Disclosure of Expert Witness ............. 77

13

14              (Exhibit 1, 2, 4 and 5 retained by

15         Ms. Heffernan.  Exhibit 3 retained by the

16         Witness.)

17

18

19

20

21

22

23

24

25
```

## C E R T I F I C A T E

I hereby certify that I am a Notary Public,
in and for the State of Connecticut, duly commissioned
and qualified to administer oaths.

I further certify that the deponent named in
the foregoing deposition was by me duly sworn, and
thereupon testified as appears in the foregoing
deposition; that said deposition was taken by me
stenographically in the presence of counsel and reduced
to typewriting under my direction, and the foregoing is
a true and accurate transcript of the testimony.

I further certify that I am neither of
counsel nor attorney to either of the parties to said
suit, nor am I an employee of either party to said
suit, nor of either counsel in said suit, nor am I
interested in the outcome of said cause.

Witness my hand and seal as Notary Public
this _____ day of _____, 2004.

                      _____
                          Janet C. Phillips
                          Notary Public
                          CSR License #00124
My Commission expires:
October 31, 2006

# EXHIBIT G

**Transcript excerpt pages 82-96, Nattrass deposition**

2

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - x

JOSEPH ATTIAS & HAIM ATTIAS,                    :

        Plaintiffs,                             :

      vs.                                       : Civil Action
                            No,
PATRONS MUTUAL INSURANCE COMPANY                : 3:03 CV01009
OF CONNECTICUT,                                 (SRU)

        Defendant.                              :

- - - - - - - - - - - - - - - - - - - - - - x

           Deposition of ROBERT R. NATTRASS, PCLS,

taken pursuant to the Federal Rules of Civil

Procedure, at the law offices of Farver &

Heffernan, 2842 Old Dixwell Avenue, Hamden,

Connecticut, before Janet C. Phillips,

License #00124, a Registered Professional

Reporter and Notary Public in and for the

State of Connecticut, on Wednesday, July 7,

2004, at 11:05 a.m.

SCRIBES, INC.

A P P E A R A N C E S

FARVER & HEFFERNAN
Attorneys for the Plaintiffs
2842 Old Dixwell Avenue
Hamden, Connecticut  06518
Phone:  (203) 288-8266
   By:  CHERYL E. HEFFERNAN, Esq.

SKELLEY ROTTNER, P.C.
Attorneys for the Defendant
433 South Main Street
West Hartford, Connecticut  06110
   By:  JOEL J. ROTTNER, Esq.

SCRIBES, INC.

3

```
1              R O B E R T   R.   N A T T R A S S,
2       called as a witness, having first been duly sworn
3       by Janet C. Phillips, a Notary Public in and for
4       the State of Connecticut, was examined and
5       testified as follows:
6   DIRECT-EXAMINATION
7   BY MS. HEFFERNAN:
8       Q.   Mr. Nattrass, my name is Attorney Cheryl
9   Heffernan.  I represent Joseph and Haim Attias in an
10  action against Patrons Insurance Company.  Have you
11  ever been deposed before?
12      A.   Yes.
13      Q.   Okay.  On how many occasions?
14           MR. ROTTNER:  Before we continue, we
15           will agree to the usual stipulations, but he
16           wants to reserve the right to read and sign.
17           MS. HEFFERNAN:  Okay.
18      Q.   Have you ever been deposed before?
19      A.   Yes, I have.
20      Q.   And how many times?
21      A.   More than 12.
22      Q.   And over what course of time was that?
23      A.   Would it be helpful if I gave you my CV?
24      Q.   That would be very helpful.
25      A.   Okay.
```

SCRIBES, INC.

4

```
1            (Curriculum vitae marked Plaintiffs'
2            Exhibit 1 for identification.)
3       Q.   We've just marked Plaintiffs' Exhibit 1.  Is
4   this a current CV?
5       A.   Yes.
6       Q.   And does it list all of the depositions
7   you've taken or cases you've been involved in?
8       A.   No, just recent depositions.
9            MS. HEFFERNAN:  Let me mark this next.
10           (Subpoena and Notice of Deposition
11           marked Plaintiffs' Exhibit 2 for
12           identification.)
13      Q.   I'm going to show you what's been marked as
14  Plaintiffs' Exhibit 2.  And this is the subpoena that
15  you were served that I pulled out of your file,
16  correct?
17      A.   Yes.
18      Q.   And that's for today's deposition?
19      A.   Yes.
20      Q.   And it requires you to bring your file, as
21  well as a current CV.  You have produced your CV, which
22  is marked as Plaintiffs' Exhibit 1, and your current
23  file in front of me, correct?
24      A.   That's correct.
25           MS. HEFFERNAN:  And I'd like to have the
```

SCRIBES, INC.

81

1  person and that I should be billing for more of these
2  things that I think are inconsequential, but I can see
3  they're adding up so that I probably should bill for
4  those. I have not in the past.
5       Q.   You can feel free to bill Patrons for that.
6  Did you bill for that?
7       A.   For your subpoena, ma'am?
8       Q.   Yes. Did you bill for that at all? You note
9  that you received the subpoenas on the day that you
10  received them. Did you note that you billed for those
11  in your records?
12      A.   Ask the question again?
13           MS. HEFFERNAN:  Can you repeat the
14           question?
15           (Record read.)
16      A.   I did not put any hours -- I did not attach
17  any hours to the amount of time spent for receiving
18  subpoenas, no.
19      Q.   Okay. And your second subpoena, you do have
20  a notation regarding the hours, your 6/29/04 entry,
21  what does that say?
22      A.   That says 12:50.
23      Q.   What does that mean?
24      A.   That's the time that he showed up at the
25  house with the subpoena.

SCRIBES, INC.

82

1       Q.   All right. But there's no notation anywhere
2  of any discussion you had with Attorney Rottner
3  regarding acting as an expert witness for Patrons in
4  this case?
5       A.   No.
6       Q.   And that's not something that's significant
7  for you to document as to when you're retained as an
8  expert witness?
9       A.   I think it has to do with what I document and
10  what you're asking me. I wouldn't document -- Attorney
11  Rottner normally would not call me up and say I'm
12  retaining you as an expert witness. He would call me
13  or write me as he did on 2/11/04. That was the first
14  indication that I knew that Attorney Rottner was
15  involved in this.
16      Q.   Tell me about the conversation you had with
17  Attorney Rottner where it was discussed that you would
18  be disclosed as an expert witness for Patrons in this
19  case.
20      A.   I don't recall.
21      Q.   You don't recall the conversation?
22      A.   I just don't recall.
23      Q.   What's your understanding of what you're
24  being asked to be an expert witness in this case?
25      A.   My understanding -- first of all, when I was

SCRIBES, INC.

83

1  served the subpoena, the first subpoena, just before --
2  I was about to call Attorney Rottner's office and say
3  what's going on with this, because it was at his
4  office, the first one, and I didn't even know -- I
5  don't think at that point he was involved in this.
6           No, I take that back, I did know he was
7  involved in this because he wanted me to find those
8  people. I was surprised because I was going to call
9  him and say -- to explain to him that I don't go to
10  depositions without prepayment.
11          Before I had the opportunity to do that, one
12  of his staff attorneys called me and told me that they
13  were going to -- and I said, "Well, you beat me to the
14  punch, I was just getting ready to dial you up because
15  I've got this subpoena. Is it from you?" You know, I
16  was having difficulty. And she said, "No, no, no, it's
17  from the attorney for Attias'." And I said, "Well, our
18  policy is we don't go to depositions for non-customers
19  that have no track record because we've had difficulty
20  in the past being paid." And she said well, I will
21  discuss that with, you know, you.
22          And I think the next conversation -- and it
23  was a question -- it wasn't really of I'm being
24  retained as an expert. It was I was subpoenaed by you
25  versus well, we'll call you as an expert. And it had

SCRIBES, INC.

84

1  to do with the pay issue.
2       Q.   Okay. So prior to receiving my subpoena, it
3  had never been discussed with you that you would be
4  disclosed as an expert witness on behalf of Patrons in
5  this litigation?
6       A.   I think it was considered because it almost
7  happened contemporaneously. I got the subpoena, went
8  to call her, and she's telling me we want to use you.
9       Q.   Okay. So it was --
10      A.   It was kind of at the same time.
11      Q.   So you called her -- well, she called you --
12      A.   As I recall, as I recall.
13      Q.   You were going to call them because you got
14  the subpoena?
15      A.   Right, I was concerned about getting paid.
16      Q.   You've done enough of these depositions, so
17  you've got to let me get my whole question out, okay?
18          You got a subpoena, you didn't recognize who
19  I was, but recognized Attorney Rottner's name, and so
20  you were going to contact him about how you were going
21  to get paid, when another attorney from the office
22  called you about the same -- about your deposition,
23  correct?
24      A.   Correct.
25      Q.   Okay. During that conversation, there was

SCRIBES, INC.

85

```
 1   some discussion for the first time about your acting as
 2   an expert witness for Patrons in this litigation?
 3       A.   All I recall of that conversation, to be
 4   honest with you, was I was infuriated because Rich that
 5   served me was rude to my mother-in-law on the first
 6   floor, basically threw the subpoena at me.  I was upset
 7   about that.
 8            I was upset about the idea that I was being
 9   told that, well, you have to go, you know.  So I don't
10   recall as much about expert witness anything.  I was
11   ripped.
12       Q.   Okay.  But fair to say --
13       A.   And still am.
14       Q.   Well, I apologize that the server was rude.
15   There were no instructions for him to be that way and I
16   will talk to the company.
17            But there was no discussion between you and
18   Attorney Rottner's office prior to receipt of the
19   subpoena that you would be used as an expert witness,
20   is that correct?
21       A.   Not that I recall at this time.
22       Q.   All right.  And you've been disclosed as an
23   expert now by way of a notice dated June 23rd, 2004
24   which we've marked as Plaintiffs' Exhibit 5, that
25   "Mr. Nattrass is expected to testify that based on his
```

87

```
 1   a little bit more about fraud than the average person,
 2   which I believe is --
 3            MR. ROTTNER:  Mr. Nattrass, the question
 4        is what qualifies you to be an expert on
 5        value.
 6            THE WITNESS:  On value?
 7            MR. ROTTNER:  Yes, on the opinion that
 8        they overstated the loss -- on the opinion
 9        that what was the -- on the opinion that they
10        overstated the extent of the improvements and
11        the amount spent to improve the property.
12       A.   I have investigated numerous fraudulent
13   claims involving overstated claims.  I did that for
14   Allstate, I did that for USF&G Insurance.
15       Q.   So because of your investigative background,
16   you're qualified to render an opinion in this case that
17   the plaintiffs overstated their loss; is that your
18   testimony?
19       A.   Yes.
20       Q.   Okay.  Do you have any training in evaluating
21   losses?
22       A.   When I went to adjusting school for Allstate
23   Insurance Company.
24       Q.   Was that back in 1994?
25       A.   Whatever my CV says.
```

86

```
 1   investigation that it is his opinion that the
 2   plaintiffs overstated the extent of the improvements,
 3   the amount spent to improve the property."  Is that
 4   what you're going to testify as an expert about?
 5       A.   Yes.
 6       Q.   And what expertise do you have to give that
 7   type of an opinion?
 8       A.   As I said, I was an SIU investigator for two
 9   insurance companies, Allstate Insurance and USF&G
10   Insurance Company.
11            When I worked for Allstate insurance, they
12   had a requirement that you -- in order to be an SIU
13   investigator, you had to be a claim representative.  So
14   I was sent to claim representative school.  I've been
15   to claim representative school.  I've been to SIU
16   school.  I have copies of those licenses if you want to
17   see them that I was licensed by the State of
18   Connecticut as an adjustor.
19            I was also required by Allstate to take a
20   fraud law course, correspondence course that took over
21   a year, and was tested and received the designation.  I
22   have a copy of the certificate for that if you need to
23   see that.
24            I was a state police officer for 20 years and
25   investigated fraud on a routine basis.  I think I know
```

88

```
 1       Q.   Okay.  Do you have any expertise on the costs
 2   of construction?
 3       A.   I have knowledge in the renovation that I saw
 4   take place, and I have receipts documenting, and I
 5   have -- and I've talked to the contractors that
 6   allegedly installed these items, and they told me what
 7   they were owed for installing the items.
 8       Q.   Okay.
 9            MS. HEFFERNAN:  Can you read the
10        question back, please?
11            (Record read.)
12       Q.   In general, I wasn't talking specific to this
13   case, but as part of your expertise and your ability to
14   render opinions on the value of improvements?
15       A.   Just experience and training.
16       Q.   Just the experience and your training in
17   1994?
18       A.   Well, my experience for 30 years as an
19   investigator.
20       Q.   Okay.  Do you have -- well, I guess I'm
21   trying to find out what knowledge do you have regardin
22   the cost of home improvements in general, as of now?
23       A.   I have owned a home, I've done improvements
24   on homes.
25       Q.   What specialized expert knowledge do you have
```

93

```
1    fact.  And we can bring it up with the court.
2          MR. ROTTNER:  That's fine.
3          MS. HEFFERNAN:  I think that the
4    disclosure is a complete sham in order to
5    avoid having to pay Mr. Nattrass for his time
6    as a fact witness.
7          MR. ROTTNER:  For the record, if that
8    was your position, then you shouldn't have
9    asked him about the cause and origin of the
10   fire.
11         MS. HEFFERNAN:  That was one of the --
12         MR. ROTTNER:  He's entitled to his time
13   for the cause and origin of the fire.  The
14   only reason I let you inquire as to the cause
15   and origin of the fire is because you're
16   paying for that time.
17         He is not obligated to testify as a fact
18   witness as to the cause and origin of the
19   fire and you owe him that money.  As to
20   whether or not he's qualified as an expert
21   and meets that qualification, that's up to
22   the court.
23         I believe for the record that this
24   witness has adequate qualifications to
25   testify as to the value of the work that was
```

SCRIBES, INC.

94

```
1    put in there.  And that makes him an expert
2    witness.
3          Are you through with your questions?
4          MS. HEFFERNAN:  I am through with my
5    questions.
6  CROSS-EXAMINATION
7  BY MR. ROTTNER:
8      Q.   I have a couple of questions.
9          How much do you charge for your time,
10   Mr. Nattrass?
11     A.   Investigation is $115 an hour.  Testimonial
12   services are $175 an hour.
13     Q.   And with respect to either subpoena that was
14   served on you, did you receive the fee?
15     A.   The second subpoena, Rich gave me $5 dollars.
16     Q.   And for the first subpoena, you received no
17   fee?
18     A.   No, nothing at all, other than his rudeness.
19     Q.   And would your opinion change if the amount
20   that you had been told had been put in the property was
21   $75,000 than $150,000, would that have changed your
22   opinion?
23     A.   No.
24     Q.   And tell me about the work, what kind -- do
25   you own a three-family house?
```

SCRIBES, INC.

95

```
1      A.   I'm a tenant in a house that's owned by my
2    in-laws.
3      Q.   And have you renovated the house?
4      A.   Yes, I have.
5      Q.   What renovations did you do?
6      A.   I did a total renovation of a third floor
7    apartment.
8      Q.   And what did that include?
9      A.   That included custom cabinets throughout the
10   whole kitchen, not just over the sink, installation of
11   appliances, upgrading electrical for the purposes of
12   using 220 air conditioning, adding branch circuits for
13   wiring, replacing a bathroom toilet, carpeting
14   throughout and flooring in the kitchen, and it's the
15   wood type, it's not linoleum or --
16     Q.   Parquet type floor?
17     A.   Yes, not parquet.  It's the -- I'm having
18   trouble thinking of the name right now.  It looks like
19   wall -- tongue-in-groove, but it's -- there's a brand
20   name that it's most associated with.
21     Q.   Laminate?
22     A.   Laminate, yes.  Laminate flooring.  Corian in
23   the bathroom, Corian around the sink and a new sink and
24   new cabinetry, totally painting, redoing some ceilings
25   and installing all new receptacles, electrical
```

SCRIBES, INC.

96

```
1    receptacles and lighting.
2      Q.   And how much cabinets were -- how many
3    cabinets did you put in, how would you describe how
4    many cabinets were in the kitchen?
5      A.   Cabinets are two walls, the length of two
6    walls.
7      Q.   And how did that compare to the cabinets that
8    you saw on the third floor of this house?
9      A.   The cabinets I used are solid wood cabinets.
10   The cabinets that are in the -- that were in the loss
11   were over-the-counter particle board low-end Home
12   Depot, Lowe's type cabinets that you can walk in and
13   buy.
14     Q.   And in quantity, how did they compare, the
15   quantity of cabinets in your kitchen, versus the
16   quantity of the cabinets --
17     A.   The cabinets that I saw were just over the
18   kitchen sink.
19     Q.   What about the cabinets in your house?
20     A.   I have them the whole length of the wall on
21   both sides of the --
22     Q.   I have no further questions.
23         MS. HEFFERNAN:  No questions.
24         (Time noted: 1:46 p.m.)
25         (Jurat follows on page 97, no omission.)
```

SCRIBES, INC.

97

```
 1   IN THE UNITED STATES DISTRICT COURT
 2   FOR THE DISTRICT OF CONNECTICUT
 3   - - - - - - - - - - - - - - - - - - x
 4   JOSEPH ATTIAS & HAIM ATTIAS,           :
 5                    Plaintiffs,           :
 6            vs.                           : Civil Action
                                              No.
 7   PATRONS MUTUAL INSURANCE COMPANY      : 3:03 CV01009
     OF CONNECTICUT,                          (SRU)
 8                                          :
                     Defendant.             :
 9                                          :
10   - - - - - - - - - - - - - - - - - - x
11
12           With the addition of the changes, if any,
     indicated on the attached errata sheet, the foregoing
13   is a true and accurate transcript of my testimony given
     in the above-entitled action on July 7, 2004.
14
15                    _____
16                        ROBERT R. NATTRASS
17           Subscribed and sworn to before me, the
18   undersigned authority, on this the _____ day of
19   _____, 2004.
20
21                    _____
22                           Notary Public
23   My commission expires:
24
25
```

SCRIBES, INC.

98

```
 1              INDEX OF EXAMINATIONS
 2   ROBERT R. NATTRASS                              Page
 3   Direct-examination by Ms. Heffernan ............ 3
 4   Cross-examination by Mr. Rottner .............. 93
 5
 6       PLAINTIFFS' EXHIBITS FOR IDENTIFICATION
 7   No.  Description                               Page
 8    1   Curriculum vitae ......................... 4
 9    2   Subpoena and Notice of Deposition ......... 4
10    3   File ..................................... 5
11    4   Videotape ............................... 51
12    5   Disclosure of Expert Witness ............. 77
13
14             (Exhibit 1, 2, 4 and 5 retained by
15          Ms. Heffernan.  Exhibit 3 retained by the
16          Witness.)
17
18
19
20
21
22
23
24
25
```

C E R T I F I C A T E

I hereby certify that I am a Notary Public,
in and for the State of Connecticut, duly commissioned
and qualified to administer oaths.

I further certify that the deponent named in
the foregoing deposition was by me duly sworn, and
thereupon testified as appears in the foregoing
deposition; that said deposition was taken by me
stenographically in the presence of counsel and reduced
to typewriting under my direction, and the foregoing is
a true and accurate transcript of the testimony.

I further certify that I am neither of
counsel nor attorney to either of the parties to said
suit, nor am I an employee of either party to said
suit, nor of either counsel in said suit, nor am I
interested in the outcome of said cause.

Witness my hand and seal as Notary Public
this _____ day of _____, 2004.

                    _____
                         Janet C. Phillips
                         Notary Public
                         CSR License #00124
My Commission expires:
October 31, 2006