UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOSEPH ATTIAS & HAIM ATTIAS | : | CIVIL ACTION NO. |
| | : | 3:03 CV 01009 (SRU) |
| VS. | : | |
| | : | |
| PATRONS MUTUAL INSURANCE | : | DECEMBER 14, 2004 |
| COMPANY OF CONNECTICUT | : | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant, Patrons Mutual Insurance Company of Connecticut, (hereinafter "Patrons Mutual"), submits that it is entitled to summary judgment in its favor as there exists no genuine issue of material fact in regards to the allegations of violations of CUTPA and CUIPA in the plaintiffs' complaint. The defendant further submits that the plaintiffs are barred from asserting any claim regarding "replacement cost value," as the plaintiffs have failed to repair and replace the subject property.

**FACTS:**

The Patrons Mutual Insurance Company of Connecticut issued a Fire Dwelling insurance policy number 61404218 to Joseph and Haim Attias for the property located at 475 New Britain Avenue in Hartford, Connecticut (see Declarations Page, Exhibit A). The inception date of the policy was July 29, 2002 (see copy of Declarations Page). The Attias' purchased

SR/226677/hab

the property as an investment property for $ 65,000 (see transcript of testimony by Joseph Attias at the examination under oath on December 11, 2002, p. 14, Exhibit B). A mortgage was obtained for the property through Ameriquest Mortgage on October 8, 2002 in the amount of $137,000 (see transcript of Joseph Attias, p. 15, Exhibit C). On or about November 13, 2002, a fire occurred at 6:12 a.m. at 475 New Britain Avenue, Hartford, Connecticut (see Hartford Fire Department report, Exhibit D). Said fire was reported to Patrons Mutual by the plaintiffs' insurance agent, the Charles Marcus Agency, on the date the fire occurred. At the time of said fire, the property was unoccupied and under renovation (see transcript of Joseph Attias, p. 70-71, Exhibit I). Patrons Mutual Insurance retained the services of Acacia Investigations through Robert Nattrass to determine the cause and origin of the subject fire. Upon investigation of the loss location, Mr. Nattrass determined that a furnace that was installed too close to the basement ceiling joists caused the fire (see report of Acacia Investigations, attached hereto as Exhibit J). The City of Hartford Fire Marshal determined the cause of the fire to be "accidental due to installation deficiency" (see Hartford Fire Marshal report, dated November 25, 2002, Exhibit F). Patrons Mutual undertook an investigation of the loss, including obtaining signed statements from the insureds as well as conducting examinations under oath of both Joseph Attias and Haim Attias. After completing its investigation, including conducting the examinations under oath of Joseph Attias and Haim

Attias and a review of records produced at the same, on January 16, 2003, Patrons Mutual Insurance Company through its property loss adjuster, Scott Terra, issued a letter of denial of the insureds' claim on the basis of material misrepresentations made by the insureds (see denial letter, dated January 16, 2003). To date, the insureds have not rebuilt or repaired said property.

**ARGUMENT:**

**I.   Standard for Granting a Motion for Summary Judgment**

Summary judgment will be granted if there is no genuine issue as to any material facts and the moving party is entitled to judgment as a matter of law. F.R.C.P. 56(c); Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256 (1986). A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for a non-moving party. Aldrich v. Landolf Cent. School District, 963 F.2d 520, 523 (2nd Cir. 1992), cert. denied, 506 U.S. 965, 113 S.Ct. 440 (1992). The initial burden is on the moving party to demonstrate the nonexistence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once this burden has been discharged, the non-moving party who bears the burden of proof at trial must go beyond the pleadings and isolate specific evidence that shows a genuine issue for trial. Id. at 324.

In Anderson v. Liberty Lobby, the Supreme Court explained that a genuine issue of fact is one about which the evidence is such that a reasonable jury could return a verdict for the non-moving party. The Court further stated that: there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. (internal citations omitted) 477 U.S. at 249-50. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to successfully oppose summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff." Id. at 252. If the non-moving party cannot identify such evidence, the Court must enter summary judgment in favor of the moving party." Celotex Corp., 477 U.S. at 322-323.

II.  **Connecticut Unfair Insurance Practices Act**

  A.  **The Defendant's Motion for Summary Judgment on portions of the plaintiffs' complaint, which allege violations of Connecticut General Statutes § 38a-815, the Connecticut Unfair Insurance Practices Act, should be granted because under the statute there is no private right of action.**

The plaintiffs' complaint alleges a violation of Connecticut General Statutes § 38a-816, the Connecticut Unfair Insurance Practices Act, (hereinafter "CUIPA"), stating, "The defendant's conduct in its investigation and denial of the plaintiffs' fire loss claim constitutes the use of unfair methods of competition and unfair and deceptive practices in the business of

insurance." Such allegation is insufficient as a matter of law because there exists no private right of action under CUIPA. Although the Connecticut Supreme Court has not yet held that CUIPA does not allow for a private cause of action, the better reasoned, and the majority of, Connecticut Superior Court decisions that have addressed this issue have concluded that there is no private right of action under CUIPA. M&J's Southern Style Restaurant, Inc. v. The Front Street Group, 2003 WL 22245579 (Conn. Super. Sept. 18, 2003); American Progressive Life & Health Ins. Co. of New York v. Better Benefits, LLC, 2003 WL 22205977 (Conn. Super Sept. 10, 2003); Odd Fellows Home of CT Inc. v. The Hartford Fidelity and Bonding Co. 2003 WL 1484319 (Conn. Super. March 12, 2003); Liquore v. Assurance Co. of America, 2002 WL 521334 (Conn. Super. March 19, 2002); Kaminiski ex. rel. Garonia v. Reed, 2001 WL 1682732 (Conn. Super. Dec. 12, 2001); Delpier v. Conn. Interlocal Risk Mgt. Agency, 2001 WL 1681912 (Conn. Super. Nov. 28, 2001); Chapell v. Larosa, 2001 WL 58057 (Conn. Super. Jan. 5, 2001); Thompson & Peck, Inc. v. Reliance Ins. Co., 2001 WL 1178596 (Conn. Super. Aug. 30, 2001); Conway v. Travelers Cas. & Sur. Co. of America, 2000 WL 1918051 (Conn. Super. Dec. 15, 2000); Braca v. Cigna Ins. Co., 2000 WL 1207292 (Conn. Super. Aug. 11, 2000); Perrelli v. Strathmore Farms, 2000 WL 277189 (Conn. Super. March 2, 2000).

There are several reasons why the majority of courts have found that there is no private right of action under CUIPA. First, the CUIPA statute itself does not expressly provide for a

- 5 -

private right of action. <u>Povroznik v. Rivercliff Fuel, Inc.</u>, 2001 WL 1356291 (Conn. Super. Oct. 22, 2001); <u>King v. Ehorn</u>, 1993 WL 489649 (Conn. Super. Nov. 17, 1993); <u>Warner v. Sanford Hall Agency</u>, 1993 WL 45044 (Conn. Super. Feb. 9, 1993); <u>Langlais v. Guardian Life Ins. Co.</u>, 1992 WL 161446 (Conn. Super. July 7, 1992). In contrast, Connecticut General Statutes § 42-110a et seq., the Connecticut Unfair Trade Practices Act, (hereinafter "CUTPA"), does provide for a private right of action. If the legislature had intended to provide a private right of action under CUIPA, it could and would have done so expressly as it did in CUPTA. <u>Liquore</u>, 2002 WL 521334 at *3 (noting that because "the Connecticut Unfair Trade Practices Act (CUTPA) expressly provides for a private cause of action under the act; the legislature certainly could have provided such authority under CUIPA if it had so intended").

Second, CUIPA is a regulatory statute to be administered by the state, and the enforcement powers were given to the Office of the Insurance Commissioner with no allowance for a private cause of action. <u>Povroznik</u>, 2001 WL 1356291; <u>Stabile v. Southern Connecticut Hospital Systems</u>, 1006 WL 651633 (Conn. Super. Oct. 31, 1996); <u>see also</u> <u>Warner</u>, 1993 WL 45044 at *1, (noting that, "<u>Mead</u> determined . . . that it was possible to state a cause of action under CUTPA for a violation of CUIPA but characterized CUIPA as a penal statute requiring a construction 'limiting rather than expanding civil liability'"); <u>see also</u>

Langlais, 1992 WL 161446, (noting that it is unlikely that the legislature intended two statutory causes of action to redress the same conduct). In Warner and in Langlais, as in this case, the plaintiffs alleged violations of CUTPA and CUIPA in separate statements. Nevertheless, those courts found that doing so was not enough to save the CUIPA count.

    **B.**    **The defendant should be granted summary judgment on allegations of CIUPA violations of the plaintiffs' complaint because the plaintiffs produce no evidence that the defendant's actions constitute a general business practice as required by CUIPA.**

The plaintiffs have not disclosed any evidence that the defendant's conduct constituted engagement in unfair methods of competition or unfair and deceptive acts and practices in the business of insurance. The plaintiffs have not alleged a general practice of refusal to pay claims without a reasonable investigation. The defendant now moves for summary judgment on such allegations of the plaintiffs' complaint. The law in Connecticut is well settled that in order to support a CUTPA claim based on the violation of CUIPA, the plaintiff must allege the existence of a general business practice regarding the complained-of conduct. Mead v. Burns, 199 Conn. 651, 659, 509 A.2d 11 (1986). "Looking to the statute as a whole, we contend that claims of unfair settlement practices under CUIPA require a showing of more than a single act of insurance misconduct." Id. at 659. Mead has been consistently followed. The language of the statute itself specifically prohibits insurers from "committing or performing with such frequency as to indicate a general business practice" a variety of enumerated unfair or

Law Offices of SKELLEY ROTTNER P.C. ▫ P.O. Box 340890, Hartford, CT 06134-0890 ▫ Phone: (860) 561-7077 Fax: (860) 561-7088
Juris No. 58693

deceptive advertising and claims settlement practices. See C.G.S. § 28a-816. Moreover, it is also well-established principle that a plaintiff's allegation of unfairness in connection with the single insurance claim, which is the subject of dispute, does not establish a "general business practice." Quimby v. Kimberly Clark Corp., 28 Conn. App. 660, 671-72, 613 A.2d 838 (1992). As the Connecticut Supreme Court observed in Lees v. Middlesex Ins. Co., 229 Conn. 842, 849, 634 A.2d 1282 (1994), ". . . the legislature has manifested a clear intent to exempt from coverage under CUIPA isolated instances of insurer misconduct." According to the Court, "the defendant's alleged improper conduct in the handling of a single insurance claim, without any evidence of misconduct by the defendant in the processing of any other claim, does not rise to the level of a general business practice as required by § 38a-316(6)." Id.

More recently in Craig v. Colonial Penn Insurance Co., 225 F.Supp.2d 296, the Court held that in "the absence of any evidence in the record of a pattern of unfair claims settlement practices by [the defendant], the plaintiffs' CUIPA and CUTPA claims fail." Craig at 309.

The plaintiffs alleged improper conduct in the handling of their insurance claim, stating, "During the defendant's investigation of the plaintiffs' claim, the defendant by its agents, servants, and/or employees, acted in a deceptive, unfair or improper manner." Neither the discovery, nor depositions in this matter, nor any testimony at the Examinations Under Oath of the plaintiffs have disclosed any evidence that any alleged misconduct of the

Law Offices of SKELLEY ROTTNER P.C. □ P.O. Box 340890, Hartford, CT 06134-0890 □ Phone: (860) 561-7077 Fax: (860) 561-7088
Juris No. 58693

defendant constituted a general business practice. Even if the court were to find that the plaintiffs' claim was mishandled, the discovery in this matter has revealed no evidence of a general pattern of practice as required under CUIPA.

Because the documents produced during discovery by the plaintiffs in support of their CUIPA claim fail to establish directly or by inference any general business practice or other CUIPA violations; and because the testimony of the witnesses disclosed by the plaintiffs in support of their CUIPA claim is similarly devoid of any such evidence, the defendant contends that there is no evidence offered by the plaintiffs which will in any way substantiate any general business practice, in violation of CUIPA, of the defendants and therefore the defendant's motion for summary judgment should be granted.

### III. The defendant's motion for summary judgment should be granted because the plaintiffs' CUTPA claim is based on violation of CUIPA, and absent a viable CUIPA claim, the CUTPA claim is insufficient as a matter of law.

The plaintiffs' complaint alleges a violation of the Connecticut Unfair Trade Practices Act ("CUTPA") arising out of the alleged CUIPA violations set forth in the plaintiffs' complaint.

It is well settled in Connecticut that in order to allege and prove a violation of CUTPA, based on a violation of CUIPA in the context of an insurance claim, a plaintiff must allege and

- 9 -

prove the allegations necessary to satisfy a violation of CUIPA. Heyman Assoc. No. 1 v. Ins. Co., 231 Conn. 756, 767, 653 A.2d 122 (1996); Lees v. Middlesex Ins. Co., 229 Conn. at 847; Mead v. Burns, 199 Conn. at 663-666. To support a claim based on the violation of CUIPA, the plaintiff must allege the existence of a general business practice regarding the complained-of conduct. Mead v. Burns, 199 Conn. at 659. For the reasons articulated in Section II B above, the plaintiffs have provided no evidence that would support a claim regarding the business practices of Patrons Mutual Insurance Company. The defendant therefore contends that there is insufficient evidence to establish any business practice by the defendant in violation of CUIPA. Therefore, the plaintiffs cannot recover on a claim of CUTPA based on CUIPA, and the defendant's motion for summary judgment should be granted.

IV.  **The plaintiffs are barred from setting forth a claim for replacement cost, as the plaintiffs have not undertaken to make repairs or replacement of the subject property.**

The plaintiffs' complaint sets forth an allegation that under the terms and conditions of the insurance policy, the plaintiffs obtained coverage for "replacement cost" and "actual cash value." The plaintiffs have produced a damages analysis in the present action, which seeks to recover replacement cost value of the property. To date, however, the plaintiffs have not repaired or replaced said property and are thereby not entitled to recover, if at all, more than

- 10 -

the actual cash value of the property. If the plaintiffs are adjudged to be entitled to any recovery, then it must be awarded on an actual cash value basis.

Under the terms and conditions of the Patrons Mutual Dwelling Fire Insurance policy which was issued in the present action:

### HOW MUCH WE PAY FOR LOSS OR CLAIM

**Loss Settlement Terms** - Subject to the deductible or other limitation that applies, we pay the lesser of:
    (a)    the limit that applies;
    (b)    your interest in the property; or
    (c)    the amount determined under the Actual Cash Value Terms.

    1.    **Actual Cash Value Terms** - Actual cash value includes a deduction for depreciation, however caused. The smallest of the following terms is used in applying the Loss Settlement Terms:
        **(a)** the cost to repair or replace the property with materials of like kind and quality to the extent practical;
        **(b)** the actual cash value of the property at the time of the loss; or
        **(c)** (applies only to mobile homes) the difference in the actual cash value just before the loss and the actual cash value just after the loss.

In Northrop v. Allstate Insurance Co., 247 Conn. 242 (1998), the Connecticut Supreme Court analyzed the policy considerations requiring an insured to repair or replace the damaged property prior to obtaining a recovery for the same. The Court looked to its decision in Steiner v. Middlesex Mutual Assurance Co., 44 Conn. App. 415 (1997), indicating that the "moral

hazard" must be considered when enforcing the payment provisions of the contract. To allow the insured to recover the full replacement cost of the property without incurring the obligations to complete the same places the insured in a better than whole position as a result of a loss. The <u>Steiner</u> Court held that the moral hazard could not be defeated, and the intent of the replacement cost provisions of the policy are complied with if the insured has entered into a legally binding contract for repairs. The plaintiffs in the present action have neither repaired nor replaced the property, nor have they entered into a binding contract for the same.

In <u>Higginbotham v. American Family Ins. Co.</u>, 493 N.E.2d 373 (Ill. App. 3d Dist. 1986), an Illinois Appellate Court found no ambiguity in policy language which provided that ". . . replacement cost settlement will not be made unless actual repairs or replacement are completed," and reduced the amount of a judgment to actual cash value. The jury has awarded a sum between the repair estimates of the plaintiff's contractor and the defendant's contractor. The defendant's post-trial motion urged that the award was in excess of the amount allowable, i.e., actual cash value, where repairs or replacement had not been made. The Appellate Court held that the judge properly reduced the amount of the judgment to actual cash value.

In <u>Smith v. Michigan Basic Prop. Ins. Assoc.</u>, 490 N.W.2d 864 (Mich. 1992), the Michigan Supreme Court reversed a judgment for the plaintiffs of an award of the policy limits under the replacement cost coverage where the dwelling had not been repaired or replaced.

The court remanded the case to the trial court for entry of judgment in the amount of the actual cash value with additional directions that the balance of the replacement cost limits be paid when actual repairs or replacement were done. As in the case at hand, because the replacement cost value was the policy limits, the court's entry of a conditional award for replacement cost value is not surprising.

The defendant, Patrons Mutual Insurance Company, contends that this Court would follow Steiner, supra, and Northrop, supra, to reach the same conclusion as the Michigan Supreme Court in Smith, supra. Indeed, there is nothing preventing these plaintiffs from entering into a binding contract as suggested in Northrop, supra, which contract could be contingent on the plaintiffs' successful prosecution of their lawsuit against Patrons Mutual Insurance Company. Accordingly, the defendant, Patrons Mutual Insurance Company, contends that the plaintiffs are barred from presenting any evidence regarding the replacement cost value of the subject property in the absence of an executed legally binding contract to make repairs.

Law Offices of SKELLEY ROTTNER P.C. ☐ P.O. Box 340890, Hartford, CT 06134-0890 ☐ Phone: (860) 561-7077 Fax: (860) 561-7088
Juris No. 58693

## CONCLUSION:

For all of the foregoing reasons, defendant respectfully submits that it is entitled to the entry of summary judgment in its favor as to the plaintiffs' complaint on the allegations as set forth above. The defendant further contends that the plaintiffs are precluded from setting forth a claim for recovery on a replacement cost basis.

DEFENDANT, PATRONS MUTUAL
INSURANCE COMPANY

By_____
Heather J. Adams-Beman
Skelley Rottner P.C.
P.O. Box 340890
Hartford, CT 06134-0890
Tel. (860) 561-7077
Fax (860) 561-7088
Federal Bar No. ct24091

- 14 -

CERTIFICATION

I hereby certify that a copy of the above was mailed via U.S. Mail, postage prepaid, on December 14, 2004, to the following counsel of record:

Attorney Cheryl E. Heffernan
Farver & Heffernan
2842 Old Dixwell Avenue
Hamden, CT 06518
*Tel. (203) 288-8266*

Heather J. Adams-Beman

- 15 -

Law Offices of SKELLEY ROTTNER P.C. □ P.O. Box 340890, Hartford, CT 06134-0890 □ Phone: (860) 561-7077 Fax: (860) 561-7088
Juris No. 58693