# EXHIBIT A

Law Offices of **SKELLEY ROTTNER P.C.** ☐ P.O. Box 340890, Hartford, CT 06134-0890 ☐ Phone: (860) 561-7077 Fax: (860) 561-7088

**Juris No. 58693**



# Patrons Mutual Insurance Company of Connecticut

**PO Box 6517 Glastonbury, CT 06033-6517** *A member of the Patrons Group*



## Dwelling Fire Declarations      Policy Continuous Until Cancelled

| Policy No. DCT0023909 | NEW | Effective Date: 07/29/02 |
|---|---|---|

### NAME AND MAILING ADDRESS

| NAMED INSURED | AGENT 7910 |
|---|---|
| JOSEPH ATIAS<br>984 EDGEWOOD DRIVE<br>WESTBURY, NY 11590 | CHARLES G MARCUS AGCY<br>842 SILAS DEANE HGWY<br>PO BOX 290756<br>WETHERSFIELD, CT 06129-0756<br>(860) 563-9353 |

### POLICY TERM

**From:** 07/29/02  **To:** 07/29/03     At 12:01 a.m. Standard Time at the Residence Premises

### PROPERTY LOCATION, DESCRIPTION AND RATING INFORMATION

475 NEW BRITAIN AVE  HARTFORD, CT 06106
3  FAMILY, FRAME, TENANT-OCCUPIED DWELLING, BUILT IN 1925, TERR 35
WITHIN 1000 FT OF HYDRANT, WITHIN 5 MILES OF FIRE STATION, PROTECTED

Insurance is provided only with respect to the following coverages for which a limit of liability is specified or a premium is shown.

### COVERAGES AND LIMITS OF LIABILITY

| | | | | |
|---|---|---|---|---|
| A. Residence | $200,000 | L. Premises Liability | $300,000 |
| B. Related Private Structures | $20,000 | M. Medical Payments | $1,000 |
| C. Personal Property | NIL | O. Fire Legal Liability | NIL |
| D. Add'l Expense & Loss of Rent | $20,000 | Per Occurrence $300,000 Annual Aggregate $600,000 | |

**DEDUCTIBLE $2,500**  Applies to all perils. In case of a loss, we cover only that part of the loss over the deductible stated.

### SUBJECT TO THE FOLLOWING FORMS AND ENDORSEMENTS

| | | | | | |
|---|---|---|---|---|---|
| FL-2 | (1.0) | $754 | DEDUCTIBLE CR | | INCL |
| - FIRE | | INCL | LOSS FREE CR | | $117CR |
| - EC | | INCL | GL-600 | (6-88) | $414 |
| - VMM | | INCL | | | |
| FL-10 | (1.0) | INCL | | | |
| FL-82 | (2.0) | INCL | | | |
| FL-216 | (1.0) | INCL | | | |

*189.*

### RELATED PRIVATE STRUCTURES LIMIT, DESCRIPTION & PREMIUM

NO SCHEDULED COVERAGE B

### PREMIUM AND BILLING INFORMATION

Annual Premium: $1,051       **Bill To:** INSURED

### MORTGAGEES

NONE

### POLICY INFORMATION

THIS IS YOUR NEW POLICY.

DATE ISSUED: 08/07/02              AGENT COPY              THIS IS NOT A BILL



PLAINTIFF'S EXHIBIT
8
u/10/0




# Patrons Mutual Insurance Company of Connecticut
### PO Box 6517 Glastonbury, CT 06033-6517 *A member of the Patrons Group*

| **Dwelling Fire Declarations** | **Policy Continuous Until Cancelled** |
|---|---|

| Policy No. DCT0023909 | ENDORSEMENT | **Effective Date:** 10/08/02 |
|---|---|---|

## NAME AND MAILING ADDRESS

| **NAMED INSURED** | **AGENT 2910** |
|---|---|
| JOSEPH & HAIM ATIAS<br>884 EDGEWOOD DRIVE<br>WESTBURY, NY 11590 | CHARLES G MARCUS AGCY<br>842 SILAS DEANE HGWY<br>PO BOX 290756<br>WETHERSFIELD, CT 06129-0756<br>(860)563-9353 |

## POLICY TERM

| From: 07/29/02 To: 07/29/03 | At 12:01 a.m. Standard Time at the Residence Premises |
|---|---|

## PROPERTY LOCATION, DESCRIPTION AND RATING INFORMATION

475 NEW BRITAIN AVE  HARTFORD, CT 06106
3  FAMILY, FRAME, TENANT-OCCUPIED DWELLING, BUILT IN 1925, ZONE 2
WITHIN 1000 FT OF HYDRANT, WITHIN 5 MILES OF FIRE STATION, PROTECTED

Insurance is provided only with respect to the following coverages for which a limit of liability is specified or a premium is shown.

## COVERAGES AND LIMITS OF LIABILITY

| A. Residence | $200,000 | L. Premises Liability | $300,000 |
|---|---|---|---|
| B. Related Private Structures | $20,000 | M. Medical Payments | $1,000 |
| C. Personal Property | NIL | O. Fire Legal Liability | NIL |
| D. Add'l Expense & Loss of Rent | $20,000 | Per Occurrence $300,000 Annual Aggregate $600,000 | |

**DEDUCTIBLE $2,500** Applies to all perils. In case of a loss, we cover only that part of the loss over the deductible stated.

## SUBJECT TO THE FOLLOWING FORMS AND ENDORSEMENTS

| | | | | | |
|---|---|---|---|---|---|
| FL-2 | (1.0) | $754 | DEDUCTIBLE CR | | INCL |
| - FIRE | | INCL | LOSS FREE CR | | $117CR |
| - EC | | INCL | GL-600 | (6-88) | $414 |
| - VMM | | INCL | | | |
| FL-10 | (1.0) | INCL | | | |
| FL-82 | (2.0) | INCL | | | |
| FL-216 | (1.0) | INCL | | | |

## RELATED PRIVATE STRUCTURES LIMIT, DESCRIPTION & PREMIUM

NO SCHEDULED COVERAGE B

## PREMIUM AND BILLING INFORMATION

| **Annual Premium:** $1,051 | **Bill To:** INSURED | No Premium Change |
|---|---|---|

## MORTGAGEES

AMERIQUEST MTG CORP
ISAQA ATIMA
PO BOX 57064
IRVINE, CA 92619-7064

## POLICY INFORMATION

YOUR POLICY IS CHANGED EFFECTIVE 10/08/02
NAME CHANGED                    MORTGAGEE ADDED

| DATE ISSUED: 10/13/02 | AGENT COPY | THIS IS NOT A BILL |
|---|---|---|

PLAINTIFF'S
EXHIBIT
9 fo 10

APR-16-2004  09:25          .G. MARCUS AGENCY                    860 257 8404    P.02



# Patrons Mutual Insurance Company of Connecticut
## PO Box 6517 Glastonbury, CT 06033-6517 *A member of the Patrons Group*

**Dwelling Fire Declarations**      Policy Continuous Until Cancelled

ENDORSEMENT                                    Effective Date: 10/08/02

Policy No. DCT0023909

## NAME AND MAILING ADDRESS

**NAMED INSURED**
JOSEPH & HAIM  ATLAS
884 EDGEWOOD DRIVE
WESTBURY, NY 11590

**AGENT 2910**
CHARLES G MARCUS AGCY
842 SILAS DEANE HGWY
PO BOX 290756
WETHERSFIELD, CT 06129-0756
(860)563-9353

## POLICY TERM

At 12:01 a.m. Standard Time at the Residence Premises

From: 07/29/02  To: 07/29/03

## PROPERTY LOCATION, DESCRIPTION AND RATING INFORMATION

475 NEW BRITAIN AVE  HARTFORD, CT 06106
3  FAMILY, FRAME, TENANT-OCCUPIED DWELLING, BUILT IN 1925, ZONE 2
WITHIN 1000 FT OF HYDRANT, WITHIN 5 MILES OF FIRE STATION, PROTECTED

Insurance is provided only with respect to the following coverages for which a limit of liability is specified or a premium is shown.

## COVERAGES AND LIMITS OF LIABILITY

| | | | |
|---|---|---|---|
| A. Residence | $200,000 | L. Premises Liability | $300,000 |
| B. Related Private Structures | $20,000 | M. Medical Payments | $1,000 |
| C. Personal Property | NIL | O. Fire Legal Liability | NIL |
| D. Add'l Expense & Loss of Rent | $20,000 | Per Occurrence $300,000 Annual Aggregate $600,000 | |

**DEDUCTIBLE  $2,500   Applies to all perils. In case of a loss, we cover only that part of the loss over the deductible stated.**

## SUBJECT TO THE FOLLOWING FORMS AND ENDORSEMENTS

| | | | | | |
|---|---|---|---|---|---|
| FL-2 | (1.0) | $754 | DEDUCTIBLE CR | INCL | |
| - FIRE | | INCL | LOSS FREE CR | $117CR | |
| - EC | | INCL | GL-600 | (6-88) | $414 |
| - VMM | | INCL | | | |
| FL-10 | (1.0) | INCL | | | |
| FL-82 | (2.0) | INCL | | | |
| FL-216 | (1.0) | INCL | | | |

## RELATED PRIVATE STRUCTURES LIMIT, DESCRIPTION & PREMIUM

PLAINTIFF'S
EXHIBIT
7 ꜰˡ ID
4/19/04  JLH

# EXHIBIT B

Law Offices of **SKELLEY ROTTNER P.C.** ⌐ P.O. Box 340890, Hartford, CT 06134-0890 ☐ Phone: (860) 561-7077 Fax: (860) 561-7088

**Juris No. 58693**

1

STATE OF CONNECTICUT

EXAMINATION UNDER OATH

OF

JOSEPH ATIAS

DECEMBER 11, 2002

APPEARANCES:

    LAW OFFICES OF STUART GLENN BLACKBURN
      Two Concorde Way
      P.O. Box 608
      Windsor Locks, Connecticut 06096
      (860) 292-1116
    BY: MARGARET RALPHS, ESQUIRE

Also Present:  Scott Terra

                Wendy J. Leard
          Registered Merit Reporter
              CSR # 00039

    NIZIANKIEWICZ & MILLER REPORTING SERVICES
              972 Tolland Street
        East Hartford, Connecticut 06108-1533
                (860) 291-9191

14

1       Q    And it shows the policy period as from

2    7-29-02 to 7-29-03.

3            Do you remember when you purchased the

4    property?

5       A    We purchased it, I believe, the day or

6    close to the day of the closing.

7       Q    And when was the closing?

8       A    I'll tell you in just a minute.   7-29.

9       Q    July 29 of 2002.

10      A    Yes.

11      Q    And how much did you pay for the property?

12      A    65,000.

13      Q    Right now we're talking about the property

14   that's--

15      A    Which one?

16      Q    --located at 475 New Britain Avenue--

17      A    Yes.

18      Q    --in Hartford--

19      A    Yes.

20      Q    --Connecticut?

21      A    Yes.

22      Q    Okay.  You paid 65,000.

23      A    Yes.

24      Q    And what was the form of payment?

25      A    That was a bank check, CitiBank check.

185

## CERTIFICATE OF REPORTER

1

2

3

4

5

6      I, Wendy J. Leard, Registered Merit Reporter,

7    do hereby certify that the foregoing pages are a

8    true and accurate transcription of my shorthand

9    notes taken in the aforementioned matter to the

10   best of my skill and ability.

11

12

13

14    *Wendy J Leard*

15       Wendy J. Leard

16       Registered Merit Reporter

17

18

19

20

21

22

23

24

25

# EXHIBIT C

Law Offices of SKELLEY ROTTNER P.C. □ P.O. Box 340890, Hartford, CT 06134-0890 □ Phone: (860) 561-7077 Fax: (860) 561-7088

Juris No. 58693

1

1     STATE OF CONNECTICUT

2

3

4     EXAMINATION UNDER OATH

5     OF

6     JOSEPH ATIAS

7

8     DECEMBER 11, 2002

9

10

11

12   APPEARANCES:

13

14     LAW OFFICES OF STUART GLENN BLACKBURN
         Two Concorde Way
15       P.O. Box 608
         Windsor Locks, Connecticut 06096
16       (860) 292-1116
       BY: MARGARET RALPHS, ESQUIRE

17

18

19   Also Present:   Scott Terra

20

21

22              Wendy J. Leard
         Registered Merit Reporter
23             CSR # 00039

24   NIZIANKIEWICZ & MILLER REPORTING SERVICES
              972 Tolland Street
25     East Hartford, Connecticut 06108-1533
              (860) 291-9191

15

1      Q    And did you take the property subject to

2    any liens?

3      A    No, it was free and clear.  We bought it

4    from Green Point Bank.  It was an REO, real estate

5    owned.

6      Q    When you say real estate only, what

7    exactly does that term mean?

8      A    That means that the bank owned that

9    property.  We bought it directly from the bank.

10      Q    And down at the bottom of Exhibit 2 it

11    shows your policy has changed effective 10-8-80.

12    Mortgagee added; is that correct?

13      A    Yes.

14      Q    And is that the date that you obtained a

15    mortgage?

16      A    Yes.

17      Q    So on October 8, 2002?

18      A    Yes.

19      Q    Who did you obtain the mortgage from?

20      A    Ameriquest.

21      Q    What was the amount of the mortgage?

22      A    We--the amount of the mortgage was 137,

23    137,000.

24      Q    And you and your brother are mortgagors on

25    that?

185

1           **CERTIFICATE OF REPORTER**

2

3

4

5

6           I, Wendy J. Leard, Registered Merit Reporter,

7    do hereby certify that the foregoing pages are a

8    true and accurate transcription of my shorthand

9    notes taken in the aforementioned matter to the

10   best of my skill and ability.

11

12

13

14                   *Wendy J Leard*

15                Wendy J. Leard

16                Registered Merit Reporter

17

18

19

20

21

22

23

24

25

# EXHIBIT D

Law Offices of SKELLEY ROTTNER P.C. ☐ P.O. Box 340890, Hartford, CT 06134-0890 ☐ Phone: (860) 561-7077 Fax: (860) 561-7088

Juris No. 58693

## City of Hartford Fire Dept.

**A**
| 02140 | CT | 11/13/2002 | 09 | 0000005 | | 000 |
|---|---|---|---|---|---|---|
| FDID | State | Incident Date | Station | Incident Number | | Exposure |

☐ Delete
☐ Change
☐ No Activity

**NFIRS-1 Basic**

**B** Location                    ☐ Address on Wildland Form          Census Tract

☑ Street Address    475 ____    NEW BRITAIN ____    AVE ____    Suffix ____
☐ Intersection       Number   Prefix   Street              Type
☐ In front of
☐ Rear of           Hartford ____    CT    06106
☐ Adjacent to        Apt/Suite   City              State  Zip Code
☐ Directions        Cross Street or Directions, as applicable

**C** Incident Type
**111**  Building fire

**D** Aid Given or Received
| 1 | ☐ Received | Their FDID |
| 2 | ☐ Automatic Rec'vd | |
| 3 | ☐ Given | Their State |
| 4 | ☐ Automatic Given | |
| 5 | ☐ Other Aid Given | 0000000 |
| N | ☑ None | Their Incident |

**E1** Dates & Times

| | Mon. | Day | Year | Time |
|---|---|---|---|---|
| Alarm | | 11/13/02 | | 06:12 |
| Arrival | ☑ Arrival | 11/13/02 | | 06:15 |
| Control | ☑ Control | 11/13/02 | | 11:13 |
| Last Unit Clear | ☑ Last Unit Clear | 11/13/02 | | 11:13 |

**E2** Shifts / Alarms
| G1 | 2 | |
| SHR | Alarms | Dist. |

**E3** Special Studies
ID#     Value

**F** Actions Taken
**11**   Extinguish
Primary Action Taken (1)
**12**   Salvage & overhaul
Additional Action Taken (2)
Additional Action Taken (3)

**G1** Resources
| | Apparatus | Personnel |
|---|---|---|
| Suppression | 13 | 70 |
| EMS | 0 | 0 |
| Other | 2 | 5 |

☐ Check if counts include mutual aid resources

**G2** Dollar Loss & Values
LOSSES:                    NONE
Property ____ 0 ☑
Contents ____ 0 ☑
PRE-INCIDENT VALUE
Property ____ 0 ☑
Contents ____ 0 ☑

**Completed Modules**
☑ Fire-2
☑ Structure-3
☐ Civ. Casualty-4
☐ Fire Casualty-5
☐ EMS-6
☐ Hazmat-7
☐ Wildland-8
☑ Apparatus-9
☐ Personnel-10
☐ Arson-11

**H1** Casualties
☑ None
| | Deaths | Inj. |
|---|---|---|
| Fire Service | 0 | 0 |
| Civilian | 0 | 0 |

**H2** Detector Alerted Occupants
1 ☐ Yes
2 ☐ No
U ☐ Unknown

**H3** Hazmat Release
| N | ☑ None |
| 1 | ☐ Natural Gas |
| 2 | ☐ Propane Gas |
| 3 | ☐ Gasoline |
| 4 | ☐ Kerosene |
| 5 | ☐ Diesel Fuel/Fuel Oil |
| 6 | ☐ Household Solvents |
| 7 | ☐ Motor Oil |
| 8 | ☐ Paint |
| 0 | ☐ Other |

**I** Mixed Use Property
| NN | ☐ Not Mixed |
| 10 | ☐ Assembly Use |
| 20 | ☐ Education Use |
| 33 | ☐ Medical Use |
| 40 | ☑ Residential Use |
| 51 | ☐ Row of Stores |
| 53 | ☐ Enclosed Mall |
| 58 | ☐ Business & Resid. |
| 59 | ☐ Office Use |
| 60 | ☐ Industrial Use |
| 63 | ☐ Military Use |
| 65 | ☐ Farm Use |
| 00 | ☐ Other Mixed Use |

1st Company to Arrive
**E9** ____

**J**  Property Use                    **429**
Multifamily dwellings

000034



11/26/2002  15:58     8                          FIRE MARSHALS OFFICE                    PAGE   04
                 **City of Hartford Fire Dept.**            11/13/2002              0000006      0

---

**K1**  Person / Entity Involved

|  | Business name (if applicable) | | Phone |
|---|---|---|---|

JOSEPH          ATLAS
Check if
same          Prefix    First Name          MI    Last Name          Suffix

884          EDGEWOOD          DR
address as    Number    Prefix    Street or Highway          Street Type    Suffix
incident

                                        WESTBURY
          Post Office Box    Apt./Suite/Room    City
NY
          State          Zip

---

**K2**  Owner    ☐ Same as Person Involved

|  | Business name (if applicable) | | Phone |
|---|---|---|---|

JOSEPH          ATLAS
Check if    Prefix    First Name          MI    Last Name          Suffix
same
884          EDGEWOOD          DR
address as    Number    Prefix    Street or Highway          Street Type    Suffix
incident

                                        WESTBURY
          Post Office Box    Apt./Suite/Room    City
NY
          State          Zip

---

**L**    Remarks

GROUP 1 ESTABLISHED WATER SUPPLY. TWO TWO AND A HALF ATTACK LINES WERE USED IN A
DEFENSIVE ATTACK METHOD. GROUP 3 RESPONDED AT 0600 AND ASSUMED THE POSITIONS OF NIGHT
CREW.

---

**M**    Authorization

| 518 | X ANIBAL LOPEZ | Lt. | Suppressio | 11/13/2002 |
|---|---|---|---|---|
| Officer in charge ID | | Position or Rank | Assignment | Date |
| 518 | X ANIBAL LOPEZ | Lt. | Suppressio | 11/13/2002 |
| Member Making Report | | Position or Rank | Assignment | Date |

000033

# EXHIBIT E

Law Offices of SKELLEY ROTTNER P.C. □ P.O. Box 340890, Hartford, CT 06134-0890 □ Phone: (860) 561-7077 Fax: (860) 561-7088

Juris No. 58693

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOSEPH ATTIAS & HAIM ATTIAS | : | CIVIL ACTION NO. |
| | : | 3:03 CV 01009 (SRU) |
| VS. | : | |
| | : | |
| PATRONS MUTUAL INSURANCE | : | DECEMBER 13, 2004 |
| COMPANY OF CONNECTICUT | : | |

**AFFIDAVIT OF SCOTT TERRA**

The undersigned, being duly sworn, hereby deposes and says:

1.      I, Scott Terra, am over the age of 18 years and I believe in the obligations

of an oath.

2.      I have personal knowledge of the facts contained in this affidavit.

3.      I am a Property Loss Claims Adjuster employed by Patrons Mutual Insurance

Company.

4.      I was assigned to adjust the loss that occurred on November 13, 2002 at the

property located at 475 New Britain Avenue, Hartford, Connecticut.

5.      Said fire caused substantial damage to the structure resulting in a determination

that the property was a total loss.

SR/227144/hab

6.     I was present at the scene of the fire on the date of the loss and was advised by Joseph Attias that the property had been renovated at the time the loss occurred.

7.     In December 2002, I issued an advance to the Attias' in the amount of $20,000.

8.     I was present Examinations Under Oath of Joseph Attias and Haim Attias.

9.     My investigation of the November 13, 2002 fire revealed that the Attias' were claiming that substantially more renovations and improvements had been completed on the property than could be verified.

10.     The Patrons Mutual investigation of the November 13, 2002 fire loss revealed that the insureds overstated the amounts paid to contractors for services performed on the property and the extent of the work performed on the property.

11.     On July 16, 2003, I issued payment to Ameriquest Mortgage Company in the amount of One Hundred Fourteen Thousand Dollars ($114,000) in satisfaction of their mortgage lien on the property. Said payment represented the balance due on the actual cash value of the property which was agreed on with Ameriquest to be $134,000, after deduction of the $20,000 previous advance.

12.     As of the date of this affidavit, it is my understanding that the property is still owned by Joseph and Haim Attias and has not been demolished or rebuilt.

- 2 -

Law Offices of **SKELLEY ROTTNER P.C.** ❑ P.O. Box 340890, Hartford, CT 06134-0890 ❑ Phone: (860) 561-7077 Fax: (860) 561-7088

**Juris No. 58693**

13.    The Examinations Under Oath of Joseph Attias and Haim Attias did not disclose any evidence that Patrons Mutual Insurance Company violated any insurance practices in the investigation or adjustment of the Attias' claim.

Further, the affiant sayeth not.

_____
Scott Terra

Subscribed and sworn to, before me,
this 13th day of December 2004.

_____
Commissioner of the Superior Court

- 3 -

# EXHIBIT F

Law Offices of SKELLEY ROTTNER P.C. ☐ P.O. Box 340890, Hartford, CT 06134-0890 ☐ Phone: (860) 561-7077 Fax: (860) 561-7088

Juris No. 58693

 

11/26/2002  15:58    8                 FIRE MARSHALS OFFICE                PAGE  02



# CITY OF HARTFORD
## Council — Manager Government

**Charles A. Teale, Sr.**
**Fire Chief**

FIRE DEPARTMENT
275 PEARL STREET
HARTFORD, CT 06103
TELEPHONE: (860) 722-8200
FAX: (860) 722-8205

DATE:    November 25, 2002

Joseph Atias
85-14 Bell Boulevard
Hollis Hills, New York  11427

Sir and/or Madam,

THANK YOU for your payment of $ __3.00__ for a copy of the attached Fire Investigation Report.

Fire Investigation Reports in some instances are many and voluminous. Some reports contain information and material NOT AVAILABLE FOR PUBLIC REVIEW.

The Fire Prevention Bureau/Fire Marshal's Office provides the following fire information and can state that the Hartford Fire Department DID RESPOND to:

1.  (X) STRUCTURE FIRE        ( ) VEHICLE FIRE    .        ( ) HFD INCIDENT RESPONSE

2.  LOCATION   475-477 New Britain Avenue        .           Hartford, Connecticut

3.  DATE   November 13, 2002        .      TIME:   0612   Hrs =    6:12 a.m.

4.  INCIDENT NO:      317-006

5.  CAUSE     ACCIDENTAL due to installation deficiency

6.  INVESTIGATED BY    Lieut. Edward Casares         (860) 722-8250 OR 722-  9257

*William offt*
Fire Marshal

---

**OFFICE USE ONLY**

Check # _____        Dated _____

Check Addressee _____

FMO Researcher    Eleanor A. Lamb, Adm. Clerk

*"Smoke Detectors + Working Batteries = Saved Lives"*        000035

# EXHIBIT G

Law Offices of **SKELLEY ROTTNER P.C.** □ P.O. Box 340890, Hartford, CT 06134-0890 □ Phone: (860) 561-7077 Fax: (860) 561-7088

**Juris No. 58693**

 

# THE PATRON GROUP

**Patrons Mutual Insurance Company of Connecticut**
**Patrons Fire Insurance Company of Rhode Island**
**Litchfield Mutual Fire Insurance Company**
**Provision State Insurance Company**

<u>PERSONAL AND CONFIDENTIAL</u>

January 16, 2003

Mr. Joseph Atias
884 Edgewood Drive
Westbury, NY 11590

Re:    Patrons Mutual Insurance Company of Connecticut Insured:  Joseph Atias
       and Haim Atias
Policy no.:    DCT 0023909

Dear Mr. Atias:

You have submitted a claim for fire damage to the three family house located at 475-77 New Britain Avenue, Hartford, Connecticut that occurred on November 13, 2002. After careful consideration of the claim that was submitted, I write to inform you that the claim is being denied. This letter is being sent to you in furtherance of our obligation to provide you with the basis of any denial. It is not meant for publication to others.

Our investigation included taking your signed statement and conducting examinations under oath of you and Haim Atias by our counsel. As a result of our investigation we have concluded that you made material misrepresentations during the course of our claim investigation. Specifically, you have misrepresented the amount of money paid to contractor, Sebastian Lentini for repairs to the property. Furthermore, you submitted a false "Certificate of Occupany" in furtherance of your claim. You also have made conflicting statements as to the condition of the property as certain specific times, such as the time of appraisal by Terry Leighton and the time the "Certificate of Occupancy" was "issued".

Based on the above stated misrepresentations and presentation of a false document, Patrons Mutual Insurance Company of Connecticut denies your claim. By setting forth the bases of the denial, the Patrons Mutual Insurance Company of Connecticut reserves the right to raise any other defense that may be applicable to the claim. Should you feel that you have any information that you

000219



feel would have a bearing on the decision reached, please forward that information to Attorney Margaret Ralphs or me.

Sincerely,


Scott Terra

000218

# EXHIBIT H

Law Offices of SKELLEY ROTTNER P.C. ☐ P.O. Box 340890, Hartford, CT 06134-0890 ☐ Phone: (860) 561-7077 Fax: (860) 561-7088

Juris No. 58693

 

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

FILED

JOSEPH ATTIAS & HAIM ATTIAS        :        CIVIL ACTION
                      Plaintiffs           :        NO.
JUN 3   11 42 AM '03                                  **303CV01009**        SRU
U.S. DIS.
PATRONS MUTUAL INSURANCE           :
COMPANY OF CONNECTICUT             :
                      Defendant            :        **June 3, 2003**

## COMPLAINT

I.      **JURISDICTIONAL ALLEGATIONS:**

1.      The plaintiffs, Joseph Attias and Haim Attias, are private persons, who at all times herein
referred were and continued to be residents of the State of New York.

2.      The defendant, Patrons Mutual Insurance Company of Connecticut, is a Connecticut
Corporation with a principal place of business in Glastonbury, Connecticut, and licensed
in the State of Connecticut.

3.      This is an action seeking enforcement of an insurance policy between the arties in regards
to a loss occurring on or about November 13, 2002 and thereafter, including claims of
breach of contract, breach of good faith and fair dealing, unjust enrichment and violation
of the Connecticut Unfair Insurance Practices Act, (C.G.S. §38a-816) and the
Connecticut Unfair Trade Practices Act (C.G.S.§42-110a).

4.      The amount in controversy, exclusive of interest and costs, exceeds seventy-five
thousand ($75,000.00) Dollars.

II.     **CLAIM FOR RELIEF:**

1.      On or about July 25, 2002, the defendant issued a homeowner's insurance policy, bearing
policy no. DCT0023909 (hereinafter referred to as "the policy") to the plaintiffs for
investment property they owned located at 475 New Britain Avenue, Hartford,
Connecticut.  The policy was in effect on November 13, 2002.

2.      On or about November 13, 2002, there was a fire at the plaintiffs' property located at 475
New Britain Avenue, Hartford, Connecticut, which caused extensive damage to the

000305



interior and exterior of the house. As a result of this fire, the house was a total loss and rendered uninhabitable and unrepairable

3. The plaintiffs' policy with the defendant included fire loss coverage for dwelling, loss of personal property, loss of use, loss of rents, debris removal, loss of trees, plants, shrubs or lawns, and additional coverage for "replacement cost" and "actual cash value".

4. The plaintiffs satisfied all their obligations under the policy, including making all premium payments due under the policy.

5. Despite repeated demand, the defendant has failed and/or refused to honor the policy and pay the plaintiffs for the fire loss and resultant damages arising from the fire of November 13, 2002.

6. By failing to fulfill its obligations under the policy the defendant has breached is contract with the plaintiffs as set forth in said policy.

7. During the defendant's investigation of the plaintiffs' claim, the defendant by it agents, servants, and/or employees, acted in a deceptive, unfair and improper manner.

8. The ultimate denial of the plaintiffs' claim for the fire loss of November 13, 2002 is without merit, the claimed basis of which is manufactured, with the sole purpose of defrauding the plaintiffs from payment of their valid fire loss claim.

9. The defendant's conduct in its investigation and denial of the plaintiffs' fire loss claim, constitutes the use of unfair methods of competition and unfair and deceptive acts and practices in the business of insurance as defined in Connecticut General Statutes §38a-816.

10. At all times mentioned herein the defendant was engaged in the conduct of trade or business as defined in §42-110a of the Connecticut General Statutes.

11. The acts, omissions and conduct of the defendant as set forth above are and were unfair and deceptive acts and practice in the conduct of the trade or commerce in violation of §42-110b of the Connecticut General Statutes.

2

000304

 

12.    As a result of the defendant's conduct and violations as aforesaid the plaintiffs have

suffered ascertainable economic losses and other damages.

000303



WHEREFORE, the Plaintiffs claim:

1.      Money Damages;

2.      Interest;

3.      Costs of litigation;

4.       Attorney's fees;

5.      Punitive Damages;

6.      Damages pursuant to Connecticut General Statutes, § 42-110g, including prejudgment

        interest, costs of suit, attorney fees and punitive damages.

7.      Any other such equitable and/or legal relief that the Court deems appropriate.


                        RESPECTFULLY SUBMITTED ON BEHALF OF
                        THE PLAINTIFFS,
                        JOSEPH ATTIAS and HAIM ATTIAS


                        BY _____
                        CHERYL E. HEFFERNAN
                        LAW OFFICES OF CHERYL E. HEFFERNAN
                        2842 Old Dixwell Avenue
                        Hamden, Connecticut 06518
                        Telephone:      203-288-8266
                        Facsimile:      203-288-4702
                        Fed. Bar #:     CT 06473


PURSUANT TO LOCAL RULE 7 (b)
PLEASE ENTER THE APPEARANCE
OF THE AFORESAID COUNSEL ON
BEHALF OF THE PLAINTIFFS.


000302

4

# EXHIBIT I

Law Offices of **SKELLEY ROTTNER P.C.** ▢ P.O. Box 340890, Hartford, CT 06134-0890 ▢ Phone: (860) 561-7077 Fax: (860) 561-7088

**Juris No. 58693**

1

1          STATE OF CONNECTICUT

2

3

4          EXAMINATION UNDER OATH

5                  OF

6              JOSEPH ATIAS

7

8          DECEMBER 11, 2002

9

10

11

12   APPEARANCES:

13

14     LAW OFFICES OF STUART GLENN BLACKBURN
         Two Concorde Way
15       P.O. Box 608
         Windsor Locks, Connecticut 06096
16       (860) 292-1116
       BY: MARGARET RALPHS, ESQUIRE

17

18

19   Also Present:  Scott Terra

20

21

22              Wendy J. Leard
           Registered Merit Reporter
23              CSR # 00039

24     NIZIANKIEWICZ & MILLER REPORTING SERVICES
              972 Tolland Street
25       East Hartford, Connecticut 06108-1533
              (860) 291-9191

70

1    A    That depends on the deal.  Depends on the

2    deal.  You know, we--if it's a--if it's a large

3    property and if it's--it depends on the deal.

4         I mean, sometimes--sometimes we do--on

5    property in Waterbury, we had a full inspection,

6    but this one it was a cash deal, people were

7    living in the house.  We got a lot of information

8    from the bank, we got a lot of information from

9    the broker.  We just made a decision that we, you

10   know, wanted to move forward with the property.

11   Q    And you never intended to live in this

12   property, correct?

13   A    My brother, you know, probably was

14   planning on moving to Hartford, yes.

15   Q    And he was going to live--

16   A    Yes.

17   Q    --in one of the units?

18   A    Yes.  He's still, you know, in college

19   there, you know; finish renovating it and fixing

20   it and probably, you know, take one of the units,

21   you know, as a place for him to stay while we are

22   doing business here.  So this was our original

23   intention.

24   Q    Now, your only business in Connecticut--

25   A    Yes.

71

1      Q    --is the ownership of property; is that

2    correct?

3      A    Yes.

4      Q    So you expected that your--when did you

5    expect that your brother would start to occupy one

6    of the units?

7      A    Maybe a month or two, three months, you

8    know.  As soon as he's available from college, he

9    will, you know, move in.

10     Q    Okay.  So he was going to live in one of

11   the units.  Were you going to try to rent that

12   unit--

13     A    Yes.

14     Q    --in the meantime?

15     A    The plan was as soon as they finish it, to

16   occupy it, which is pretty much put tenants and

17   put in on the market for sale.

18     Q    Were you going to try to get tenants for

19   all three units or just two, because your brother

20   was planning on living in one?

21     A    Yes.  We can put even if it's going to be

22   for six months, it doesn't matter.  There was a

23   lot of tenants will take it month to month, so

24   that's okay, month to month, it's still money.

25     Q    Did you have any idea as to what you were

185

## CERTIFICATE OF REPORTER

    I, Wendy J. Leard, Registered Merit Reporter, do hereby certify that the foregoing pages are a true and accurate transcription of my shorthand notes taken in the aforementioned matter to the best of my skill and ability.


*Wendy J. Leard*

Wendy J. Leard

Registered Merit Reporter

# EXHIBIT J

Law Offices of **SKELLEY ROTTNER P.C.** □ P.O. Box 340890, Hartford, CT 06134-0890 □ Phone: (860) 561-7077 Fax: (860) 561-7088

**Juris No. 58693**

## ACACIA INVESTIGATIONS

## PERSONAL AND CONFIDENTIAL

## FIRE INVESTIGATION

**475 New Britain Avenue**
**Hartford, Connecticut**

**Prepared for**
**Scott Terra**
**Patrons Mutual Insurance Company**

**Date of Loss: 11/13/02**
**Insured: Joseph Atias**
**No Claim Number Provided**

**Acacia Investigations Case Number AC-02-0309**

000205

# DESCRIPTION OF ASSIGNMENT

On 11/13/02, you contacted us and requested that an origin and cause fire investigation be conducted at 475 New Britain Avenue, Hartford, Connecticut, a multi-family residential structure where a fire had occurred earlier in the day. You advised us that your company insured the property owner, Joseph Atias, who had just allegedly completed a renovation to the property. You further advised us that the Hartford Fire Department was still at the loss investigating the fire and requested an immediate response from us for a site inspection.

# ACTIVITIES

After receiving the assignment, I immediately responded to the loss location and arrived at approximately 11:30 a.m. You were at the scene upon my arrival. I met with Deputy Fire Chief Michael Chicarelli, who was directing the fire suppression. He advised me that the fire was fully involved upon the arrival of the fire apparatus and necessitated a second alarm. He told me that the three family residence was not occupied and that fire was coming through the roof when the Fire Department arrived. He further told me that Fire Marshal William Abbott was at the scene and the scene was being turned over to him for investigation.

I met with Fire Marshal Abbott, who advised me that the time of alarm was 6:12 a.m. and the second alarm was called at 6:18 a.m. He told me that Lt. Ed Casares would be conducting the origin and cause investigation and that Detective Michael Lopez of the Hartford Police Department was conducting interviews. He also told me that Detective Roger Baxter of the Office of State Fire Marshal was at the scene with his accelerant detection canine to conduct a search.

The insured, Joseph Atias, arrived at the loss with his brother, Haim Atias, and was interviewed in your presence. Mr. Atias indicated that his home address is 884 Edgewood Drive, Westbury, New York, home phone # 646-235-2285 and business phone # 516-526-8283. He said that he had purchased the property from "Greenpoint" and that John Oliveri of Century 21 Realty had provided him with the names of local contractors, who could renovate the property. He said that either he or his brother were at the loss everyday to supervise the work being done, because they had problems getting the renovation done and were currently using a third contractor. He said that he has copies of all of the contractors' licenses. Mr. Atias said that the first contractor he hired did a clean up at the property and approximately two months prior took off with a large deposit he had given him to complete additional work. This contractor, who he didn't name, didn't even tell his workers that he had abandoned the job. One of the first contractor's workers was Sebastian Lentini, who agreed to take over the job. Mr. Atias said that Mr. Lentini

000204

was not working fast enough and that there were inconsistencies in what Lentini said he was accomplishing at the site. A decision was made to terminate Mr. Lentini and Juan "Ricky" Ramos was chosen to do the work. Mr. Atias said that Lentini was at the property on 11/08/02 looking for money from Haim Atias. Joseph Atias said that he had a contract with Mr. Ramos. Mr. Atias indicated that he had invested approximately $150,000 into the property. He told me that Mr. Ramos had replaced windows at the loss. When I asked him what specific windows had been replaced, Mr. Atias stumbled and ultimately indicated that two windows had been reglazed. He told me that just two days ago, Juan Ramos told him that he needed vanities and kitchen cabinets to complete the job. The completion date on the contract was 11/12/02. Mr. Atias indicated that he had other properties in Waterbury that he had to get renovated after this job was completed. When I questioned if any electrical or plumbing work had been done, he told me that outlets had been replaced. When pressed, he said "some" outlets had been replaced and "some outlet covers" had been replaced. Mr. Atias indicated, "pipes under the kitchen sink on the third floor had been connected", when questioned about plumbing work completed. He went on to say that new cabinets and countertops were put in the kitchens and new vanities and sinks in bathrooms. He also said that new tile and carpeting was put on floors and some doors had been replaced.

I again spoke with Fire Marshal Abbott and requested permission to survey the interior of the building. He told me that it appeared that the fire had started in the basement and investigators were working in that area. He allowed me to survey the other floors and urged caution, as there were holes in some of the floors. Detective Baxter had searched the building with his accelerant detection dog and no alerts were made.

Upon surveying the first, second, and third floors, it was evident that the fire had spread to the upper floors from the basement via the interior balloon construction and up pipe chases in the area of the bathrooms. It was also evident that the renovation of the building was primarily cosmetic and it was my opinion that Mr. Atias was attempting to embellish the amount of work that had been completed at the building.

At this time, a decision was made by you to contact the Law Offices of Stuart Blackburn. After conversation with Attorney Margaret H. Ralphs, she agreed to come to the loss to assist in the interview of the insured and obtain documentation for the alleged renovation work.

I next spoke with Hartford Detective Michael Lopez, who had just completed an interview of Juan Ramos. Detective Lopez told me that the Police Department Case Number is 02-56475. Mr. Ramos agreed to be interviewed by me in the presence of Detective Lopez. Mr. Ramos told me that he lives at 21 Curtiss Street, Hartford and his telephone number is 860-547-1685. He said that he does not have a contractor's license and obtained no permits for work done at the loss. He told me that the insured owes him approximately $4000 for labor and materials. He said that the majority of work that was done was painting. He also said that two windows on the second floor were trimmed and a new front door was installed at the main front entrance. When I questioned him as to what work was done on each floor specifically, he told me that the first floor apartment

000203

was painted, kitchen cabinets were installed over the sink, a new kitchen sink with countertop, some tile installed (asphalt-type floor tile), a bathroom vanity installed, and door knobs were put on interior doors (not new door knobs). He also said a piece of sheet rock was put up in the back hall (patched hole in wall). He told me that the second floor apartment had new kitchen cabinets installed over the sink, a bathroom vanity and tile on the living room floor (also asphalt tile). Juan Ramos told me that no work was done on the third floor because there was no oil for the third floor boiler. He said that the insured provided the paint, some tile and the wood trim for around the two windows. He also told me that Dave Pacheco did the plumbing and removed two junk cars that were in the garage behind the house. Mr. Ramos told me that Angel "Omar" Viera, who lives at 459 New Britain Avenue and was also working on the house, called him at 8:00 a.m. the day of the fire to tell him the house was on fire. Mr. Ramos also told me that the insured was suppose to come to the house on 11/12/02 to inspect the work. When the insured didn't arrive Mr. Ramos called him on Omar's phone and learned that the insured was ill and that he postponed the inspection until 11/13/02 between 10:00 and 11:00 a.m. Juan Ramos showed me Lowe's receipts for supplies that he had purchased that were to be submitted to the insured for payment. Copies of the receipts are attached to this report.

David Pacheco, who Juan Ramos told me did the plumbing at the loss, arrived at the loss and I interviewed him. He gave his address as 56 Dart Street, Hartford, Connecticut (Phone: 860-206-7631). Mr. Pacheco told me that he did limited plumbing work at the loss. He told me that he did no work in the basement other than turning the water valve on at approximately 7:00 p.m. on 11/12/02. None of the plumbing work involved sweating pipes or using a torch. He said that he connected the sinks in kitchens and bathrooms on the first and second floors and just the kitchen sink on the third floor. He also removed the junk cars from the garage. He told me that he was owed $230.00 for his work. Mr. Pacheco also told me that he was suppose to mount a wood railing on the first floor front porch. The railing was stored in the first floor apartment.

I next had the opportunity to interview John Oliveri, Century 21 Access America, 449 Silas Deane Highway, Wethersfield, CT (Phone: 860-263-2121, X138), a realtor that arrived at the loss. Mr. Oliveri told me that the insured contacted him on 11/12/02 about putting the house on the market for sale on 11/13/02. Mr. Oliveri told me that Duro Tola', who was the first contractor that had been hired by the insured and disappeared with the deposit for renovation work, contacted him on 11/12/02 to let him know that he was back in town and would be available to do work for him or anyone else that needed a contractor.

After conducting the interviews, I began a site inspection and photographic documentation of the loss. The loss is a 2 ½ story, wood frame structure with wood clapboard and wood shingle siding that is located on the South side of New Britain Avenue and faces North. The asphalt roof was dormered to accommodate a third floor living space. The front of the residential structure had an open first floor porch that extended across the width of the building and the second and third floors had enclosed porches (Photograph 1). The rear of the structure had open porches on the West side and an enclosed stair tower on the East side (Photographs 2 & 3). Fire ventilation was

observed on the West side of the building from the first floor windows to the roof (Photographs 1 & 2). The East side of the building was not as severely fire damaged, but there was evidence of fire ventilation beginning at the basement level (Photographs 3-5). The roof was burned away along the peak line toward the West side of the structure. The rear exterior of the house had the least amount of damage (Photograph 6). Fire debris was observed along the perimeter of the house's stone foundation.

I conducted a limited examination of the first, second and third floor apartments on the advise of Fire Marshal Abbott, who indicated that the fire had spread from the basement through the balloon construction and pipe chases causing weakness to the structural integrity of the floors. I entered the building through the front entrance and proceeded to the third floor via the interior staircase that was intact.

Upon entering the third floor apartment from the front hallway, I observed the front room on the West side of the house accessible, but the area above the ceiling severely fire damaged. The center room on the East side of the third floor was also severely fire damaged above the ceiling level and there was evidence of the floor being burned away in the doorway to the third floor kitchen located in the rear East side of the building (Photograph 7). I later accessed the third floor kitchen from the rear stair tower and noted the ceiling and roof burned away and the hole in the floor in the area where a bathroom was located between the center room and kitchen off the hallway (Photograph 8). In the kitchen area, I observed what appeared to be a new double-door pressboard cabinet, stainless steel sink and countertop and boxes of asphalt floor tiles, which had been fire damaged. I also observed holes in the floor of the center bedroom on the East side of the house, which was not accessible. The holes in the floor were from fire communication within the center interior wall.

The second floor apartment was very severely fire damaged. I was able to enter the front room on the West side of the apartment from the front interior staircase and observed a large portion of the exterior wall burned away (Photograph 9). The East side of the apartment was not safely accessible.

I did a limited examination of the first floor apartment and found the damage to be consistent with fire spread from the basement area through the balloon construction. Once again, I was able to access the front West side room and observed very severe fire damage toward the center of the apartment with the most severe damage on the East side of the apartment, which could not be safely accessed because of holes in the floors (Photograph 10). I also entered the first floor apartment through the rear stair tower into the kitchen where I observed holes in the floor in the area of the bathroom, which is located forward (North) of the kitchen and the hallway outside the bathroom, which separates the center room on the West side of the house from the kitchen (Photograph 11). It should be noted that during my interior examination, I found the remains of the sinks, countertops and cabinets that Juan Ramos indicated had been installed.

I entered the basement area via the rear stair tower doorway, which showed no evidence of forced entry (Photograph 12). The interior door to the basement also showed no evidence of forced entry (Photograph 13).

The main basement area had some interior walls that were reminiscent of old coal storage areas when coal furnaces were used to heat these older homes (Photograph 14). Some of the basement had plaster lath ceiling, which was intact (Photograph 27). The forward (North) end of the basement and rear (South) end of the basement (Photographs 14 & 15) had no evidence of fire damage. The examination revealed that actual fire damage was in the central area of the basement and ran from East to West across the width of the house following the ceiling joist channel. The most severe charring was in the area above an oil-fired hot air furnace located on the East side of the basement, which had a sheet metal plenum fabricated above the furnace to distribute hot air to the second floor of the house (Photographs 28-31). The damage extended from above the plenum area East and West along the ceiling joist channel (Photograph 21) and vented to the exterior at the sill plate at the top of the foundation on the exterior of the house (Photographs 2 & 5). The fire also spread vertically following pipe chases and interior walls and other areas of the balloon construction (Photograph 20). This accounted for severe damage in the bathrooms on all floor levels and the holes in the floors of bedrooms on the East side of the house.

I continued the basement examination by examining the electrical meters and electrical service panel, which were mounted along the West basement wall (Photographs 17 & 18). The electrical panel had no cover on it. Other violations of the Electrical Code were observed, but none were involved in the cause of the fire. I also observed two gas-fired water heaters located near the center of the basement vented into a brick chimney (Photographs 16 & 19). The heater on the Northwest side of the chimney had a scorch pattern on the exterior as a result of drop fire where the fire had traveled vertically above Photograph 20). The gas-fired heaters and associated piping and gas meters were eliminated as ignition sources and there was no evidence that natural gas played any role in the spread of this fire. I also observed a steamer trunk, which was stored on the floor in the area below the ceiling joist, that had ignited as a result of drop down fire from the joist channel burning above (Photograph 23).

I began a closer examination of the oil-fired hot air furnace that serviced the second floor and was in the area of fire origin (Photograph 24). Hartford Fire Investigator Ed Casares had removed the cover during his examination (Photograph 25). No evidence of fire damage or failure was found on the interior of the furnace and electrical and fuel connections were found to be intact (Photographs 24 & 26). I observed a fabricated sheet metal plenum located on the top of the furnace that had been mounted flush against the plaster and lath ceiling (Photograph 28). At the time of my observation the plaster and lath was missing in this area and I observed heavy charring to the joists and underside of the flooring above. The joist and flooring directly above the plenum had been totally consumed in the fire (Photographs 37 & 38). This was the most severe fire damage observed in the basement and the area of fire origin. The fire

progressed along the joist channels above the furnace and spread vertically through pipe chases and the balloon construction to the upper floors of the residence.

I noted that the plenum was not mounted squarely on the top of the furnace (Photographs 32-34). I examined another oil-fire hot air furnace located North of the area of fire origin and found the plenum to have a 4-inch clearance between the top of the plenum and the ceiling (Photographs 42-44). This plenum was mounted squarely on the top of the furnace.

The lack of clearance between the plenum and the ceiling provided for conductive heating of the plaster/lath. Over an extended period of time, pyrolysis of the lath occurs until the lath will ignite at a lower temperature.

The furnace in the area of fire origin had a service label attached to it from Lassen Heating & Air Conditioning, 25 Olds Place, Hartford, CT, telephone: 203-522-7960. Lt. Casares told me that Lassen Heating & Air Conditioning has not been in business for at least ten years.

After conducting the site inspection, I spoke with Lt. Casares and he was in agreement as to the area of fire origin and fire cause. This information was related to you and Attorney Ralphs, who had returned to the scene after interviewing the insured.

## PHOTOGRAPHS

Attached to this report are color copies of photographs taken by this investigator during the site inspection on 11/13/02. The original photographs and negatives will remain on file at Acacia Investigations and are available upon request.

Photograph 01:  Front and West side exterior view of the loss.

Photograph 02:  West side exterior view of the loss.

Photograph 03:  Rear and East side exterior view of the loss.

Photograph 04:  East side exterior view of the loss.

Photograph 05:  Closer view of the East side exterior showing burn through into the
                basement.

Photograph 06:  Rear exterior view of the loss.

Photograph 07:  Third floor apartment view. Camera is facing South from the front
                room.

000199

Photograph 08:  Third floor apartment; view of kitchen.  Camera is facing Southwest.

Photograph 09:  View of the second floor apartment.  Camera is facing Southwest from the front room.

Photograph 10:  View of the first floor apartment.  Camera is facing South from the front room.

Photograph 11:  First floor kitchen.  Camera is facing North toward the common wall with the bathroom.  Note:  Hole in floor of hallway outside bathroom at the right side of the photograph.

Photograph 12:  Exterior entry door to rear enclosed stair tower located at the Southeast corner of the house.  Note:  door was not locked at the time of the fire.

Photograph 13:  Interior door to basement from the rear enclosed stair tower.  Note:  this door was not locked at the time of the fire.

Photograph 14:  Southeast corner view of the basement.

Photograph 15:  Southwest corner view of the basement.

Photograph 16:  West side of basement showing electrical meters/panels and gas-fired water heaters.  Camera is facing Northwest.

Photograph 17:  Closer view of electrical meter and panel.  Note:  cover missing and improper wiring.

Photograph 18:  Additional view of electrical meters.

Photograph 19:  Gas-fired water heaters in center area of basement.

Photograph 20:  Heavy fire damage in center, West side of basement ceiling area, which is below the first floor bathroom.

Photograph 21:  Another view of the heavy fire damage near the center of the basement.  Camera is facing West from the area of the second floor, oil-fired, hot air furnace.

Photograph 22:  Lower view of same area in Photograph 21 showing drop down fire damage.

Photograph 23:  Steamer trunk damaged from drop down fire near center of basement.

Photograph 24:  Second floor, oil-fired, hot air furnace.

000198