UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOSEPH ATTIAS & HAIM ATTIAS | : | CIVIL ACTION NO. |
| | : | 3:03 CV 01009 (SRU) |
| VS. | : | |
| | : | |
| PATRONS MUTUAL INSURANCE | : | APRIL 21, 2005 |
| COMPANY OF CONNECTICUT | : | |

### DEFENDANT'S REPLY TO PLAINTIFF'S 56(a)2 STATEMENT AND OPPOSITION TO SUMMARY JUDGMENT

The defendant, Patrons Mutual Insurance Company, filed a motion for summary judgment, dated December 14, 2004. The plaintiffs filed their opposition dated February 14, 2005. The defendant now replies to plaintiffs' 56(a)2 Statement and to plaintiffs Opposition to Defendant's Summary Judgment.

I. **DEFENDANT'S REPONSE TO PLAINTIFF'S 56(a)2 STATEMENT**

**As to Statement #10, there is no issue as to a material fact because the plaintiffs admit they did not rebuild and the defendant has discovered that the property was demolished by the City of Hartford.**

In response to defendant's Local Rule 56(a)1 Statement number 10, the plaintiffs admit they have not rebuilt the property but they deny that the property was not demolished. The defendant, Patrons Mutual Insurance Company, was not informed that the property had been demolished but the defendant has recently confirmed that the property was demolished. The property was demolished between June 1, 2004 and June 14, 2004 by the City of Hartford. A copy of the City of Hartford lien on the property, for $22,900.00 is attached as **Exhibit A**.

## II. SUMMARY OF PLAINTIFFS OPPOSITION TO DEFENDANT'S SUMMARY JUDGMENT

The plaintiffs' objections to Patrons Mutual Insurance Company's summary judgment are essentially as follows:

1) The defendant failed to specify the paragraphs within Scott Terra's affidavit that supported the defendant's Local Rule 56(a)1 Statement. *See page 3-4 and 6.*[1]

2) The affidavit of Scott Terra is insufficient as a matter of law to refute the plaintiffs' CUTPA and CUIPA claim. *See page 4-5.*

3) Scott Terra's affidavit that the property had not been demolished or rebuilt was not based on personal knowledge. *See page 6.*

4) The plaintiffs have disclosed evidence that demonstrated violations of CUTPA and CUIPA. *See page 6.*

5) Plaintiffs have entered into a contract for replacement of the structure on the property. *See page 7.*

## III. DEFENDANT'S REBUTTAL

**Pursuant to Local Rule 56(3), the defendant was not required to cite to specific paragraphs in its Local Rule 56(a)1 Statement.**

The plaintiffs rely on the proposed revisions to Local Rule 56, regarding citations to specific paragraphs when citing affidavits in a Rule 56(a)1 Statement, as if this proposed revision is currently in effect. But the proposed revisions have not yet been adopted. There is no current requirement under Local Rule 56 that the specific paragraph must be referenced in a Local Rule56(a)1 Statement. Therefore, a party may simply provide a citation to "the affidavit of a witness competent to testify as to the facts at trial" as currently stated in Local Rule 56(3). In this case, the Patrons Mutual Insurance Company made specific citations as

---

[1] Italicized page numbers refer to plaintiff's objection to defendant's motion for summary judgment, dated February 14, 2005.

- 2 -

Law Offices of SKELLEY ROTTNER P.C. ☐ P.O. Box 340890, Hartford, CT 06134-0890 ☐ Phone: (860) 561-7077 Fax: (860) 561 7088
Juris No. 58693

required in its Local Rule 56(a)1 Statement, dated December 14, 2004, and its Motion to Amend its Local Rule 56(a)1 Statement, dated March 3, 2005. A copy of the Motion to Amend is in **Exhibit B**.

### Scott Terra's affidavit was based on personal knowledge, therefore the affidavit is legally sufficient under Rule 56 of the Federal Rules of Civil Procedure to support the defendant's Local Rule 56(a)1 Statement.

The plaintiffs argue that Scott Terra's affidavit, in particular paragraphs 12 and 13, are not based on personal knowledge and as a result are insufficient as a matter of law. A copy of Scott Terra's affidavit is in **Exhibit C**. The plaintiffs are misguided in their interpretation of Rule 56 of the Federal Rules of Civil Procedure.

The three requirements of an affidavit pursuant to Rule 56(e) of the Federal Rules of Civil Procedure is that the affidavit be sworn upon personal knowledge, it must state specific facts admissible in evidence at the time of trial, and it must be offered by a competent affiant. St. Pierre v. Dyer, 208 F.3d 394, 404 (2nd Cir. 2000). The plaintiffs' interpretation of Rule 56(e) is not supported by the United States Courts of Appeals that have examined affidavits pursuant to Rule 56(e). In In re Kaypro, 218 F.3d 1070, 1075 (9th Cir. 2000), the Court held that when a manager testified as to his position at a company and that he had personal knowledge of the facts, then "[p]ersonal knowledge may be inferred from a declarant's position." Scott Terra states in his affidavit that he is the Property Loss Claims Adjuster for Patrons Mutual Insurance Company and that he has personal knowledge of the facts within his affidavit. That is sufficient to meet the personal knowledge element of an affidavit under Rule 56(e). See also, Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 53 (1st Cir. 2000) (holding that a party's own affidavit with relevant information in which he has first-hand knowledge may be self-serving, but it is sufficient to support or defeat a summary

judgment). Scott Terra based his statements on his personal knowledge as the Property Loss Claims Adjuster for Patrons Mutual Insurance Company, which included his investigation of the loss, and his sitting through the Examinations Under Oaths (EUOs) of the plaintiffs.

The plaintiffs argue that Scott Terra did not have personal knowledge as to paragraph 13 because his statement did not state when the EUOs occurred or that he attended the EUOs. Scott Terra's affidavit, paragraph 13, states, "The Examinations Under Oath of Joseph Attias and Haim Attias did not disclose any evidence that Patrons Mutual Insurance Company violated any insurance practices in the investigation or adjustment of the Attias' claim." While Paragraph 13 does not state that Scott Terra attended the EUOs, it was sufficient for Scott Terra to state in paragraph 8 that he was present at the EUOs. The date was not necessary because the plaintiffs were present at their EUOs and they know the dates of their EUOs. See **Exhibit D** for copies of the first page of the EUO documents indicating that Scott Terra was present. In Perez v. Volvo Car Corp., 247 F.3d 303 (1st Cir. 2001), the Court held that:

> Affidavits purporting to describe meetings or conversations need not spell out every detail, but to receive weight at the summary judgment stage they must meet certain requirements. Statements predicated upon undefined discussions with unnamed persons at unspecified times are simply too amorphous to satisfy the requirements of Rule 56(e), even when proffered in affidavit form by one who claims to have been a participant.

Id. at 316.

Applying Perez to the present case, Scott Terra's statement was not "predicated upon undefined discussions with unnamed persons." Scott Terra's statement was based on his investigation and attendance at the EUOs of the plaintiffs. His statements are sufficient to establish that he had personal knowledge, and that there was no evidence of violations of any

insurance practices against his employer, Patrons Mutual Insurance Company. Therefore, Scott Terra's affidavit supports the defendant's Local Rule 56(a)1 Statement, paragraph 12, stating "There has been no testimony or evidence presented by the plaintiffs as to any facts to support the allegation that Patrons Mutual Insurance Company violated the Connecticut Unfair Insurance Practices Act or the Connecticut Unfair Trade Practices Act. (See affidavit of Scott Terra.)."

The plaintiffs also argue that Scott Terra did not have personal knowledge as to paragraph 12 of his affidavit, but provide no reasons as to why they believe the statement lacks personal knowledge. Paragraph 12 of Scott Terra's affidavit states "As of the date of this affidavit, it is my understanding that the property is still owned by Joseph and Haim Attias and has not been demolished or rebuilt." Scott Terra's understanding of the property is based on his statements in paragraphs 2, 3, and 4: that he had personal knowledge of the facts in the affidavit, that he is a Property Loss Claims Adjuster for Patrons Mutual Insurance Company, and that he was assigned to adjust the loss that occurred at the property at 475 New Britain Avenue, Hartford, Connecticut. Statements that do not comply with Rule 56(e) include statements made upon information and belief, e.g., Sheinkopf v. Stone, 927 F.2d 1259, 1271 (1st Cir. 1991), statements where an affiant merely asserts that he is aware of a another person's instructions, e.g., Ward v. First Fed. Savings Bank, 173 F.3d 611,617-618 (7th Cir. 1999), and statements that are conclusions, assumptions, or surmise, e.g., Stagman v. Ryan, 176 F.3d 986, 995 (7th Cir. 1999). Scott Terra's statement does not meet any of these criteria for non-compliance with Rule 56(e). On the contrary, his statement regarding the status of the property clearly falls within his personal knowledge as a claims adjuster for Patrons Mutual Insurance Company. Therefore, Scott Terra's statement is sufficient to

Law Offices of SKELLEY ROTTNER P.C. □ P.O. Box 340890, Hartford, CT 06134-0890 □ Phone: (860) 561-7077 Fax: (860) 561-7088
Juris No. 58693

support the defendant's Local Rule 56(a)1 Statement, paragraph 10, which states, "To date, said property has been neither repaired nor replaced by the insureds. (See Affidavit of Scott Terra, attached hereto as Exhibit E)."

### The plaintiffs have produced no evidence that Patrons Mutual Insurance Company violated CUTPA and CUIPA.

Insurance practices are regulated under both CUPTA and CUIPA, and a CUTPA claim based on a CUIPA violation must be consistent with the regulatory principles established in the underlying [insurance] statutes." Mead v. Burns, 199 Conn. 651, 665, 509 A.2d 11 (1986). "Isolated instances of unfair insurance settlement practices" are exempt. Id. at 666. Since CUIPA prohibits insurers from "[c]ommitting or performing with such frequency as to indicate a general business practice" a variety of unfair or deceptive claims settlement practices, Connecticut General Statute (CGS) § 38a-816(6), the Connecticut Supreme Court has held that a CUTPA claim against an insurer which is based on a CUIPA violation "require a showing of more than a single act of insurance misconduct." Mead, 199 Conn. at 659. In the present case, the plaintiffs have not produced any evidence that Patrons Mutual Insurance Company committed unfair or deceptive claims settlement practices with such frequency as to indicate a general business practice pursuant to CGS § 38a-816.

The plaintiffs claim they have produced evidence as to Patrons Mutual Insurance Company's violations of CUTPA and CUIPA. They rely on their Exhibits D and E, which includes their responses to the defendant's interrogatories, and the plaintiffs' construction agreement, respectively. Neither of these exhibits support allegations of improper handling of their insurance claim. Isolated instances of insurer misconduct, which is all the plaintiffs have alleged in this case, are exempt under CUIPA. Mead, 199 Conn. at 659.

Law Offices of SKELLEY ROTTNER P.C. ☐ P.O. Box 340890, Hartford, CT 06134-0890 ☐ Phone: (860) 561-7077 Fax: (860) 561-7088
Juris No. 58693

The law in Connecticut is well-settled that, in order to establish a violation of CUTPA based on CUIPA, the complaint must allege facts sufficient to show the existence of a general business practice. Mead Id. at 509. The Connecticut Appellate Court held that "in order to allege properly a CUIPA violation, the plaintiff must allege, inter alia, that the defendant engaged in the allegedly wrongful conduct 'with such frequency as to indicate a general business practice.'" Quimby v. Kimberly Clark Corp., 28 Conn. App. 660, 669, 613 A.2d 838 (1992).

In Lees v. Middlesex Ins. Co., 229 Conn. 842, 849, 634 A.2d 1282 (1994), the Court held:

> We conclude that the defendant's alleged improper conduct in the handling of a single insurance claim, without any evidence of misconduct by the defendant in the processing of any other claim, does not rise to the level of a "general business practice" as required by § 38a-316(6).

Id.

In this case, the plaintiffs have failed to produce evidence of a general business practice either through discovery, their Examinations Under Oath, or in their opposition to the defendant's summary judgment. Even assuming the plaintiffs can establish that the defendant dealt unfairly with respect to the handling of their particular claim, the Mead Court specifically held that "[i]solated instances of unfair insurance . . . practices are not so violative of the public policy of this state as to warrant statutory intervention." Mead, 199 Conn. at 666. Multiple acts of insurer misconduct, in the context of a single transaction, simply fail to rise to the level of a CUIPA or CUTPA violation. Quimby v. Kimberly Clark Corp., 28 Conn. App. at 671.

Law Offices of SKELLEY ROTTNER P.C.  P.O. Box 340890, Hartford, CT 06134-0890  Phone: (860) 561-7077 Fax: (860) 561-7088
Juris No. 58693

The plaintiffs have the burden of proof as to their CUTPA and CUIPA allegations and have failed to produce evidence that establishes any general business practice or other CUIPA violation on the part of Patrons Mutual Insurance Company. The plaintiffs have only offered allegations as to their particular claim. Having failed to produce any evidence, the plaintiffs CUIPA and CUTPA claims must fail. <u>Craig v. Colonial Penn Insurance Co.</u>, 225 F.Supp.2d 296, 309 (D. Conn. 2004). Accordingly, Patrons Mutual Insurance Company should be granted summary judgment as to the plaintiffs' allegations of violation of CUTPA and CUIPA.

### **The plaintiffs can not now by affidavit seek to recover the replacement cost provision in the replacement cost value of the loss having previously testified they would not rebuild the premises.**

In order to resist the defendants motion for summary judgment dated December 14, 2004, the plaintiffs submitted affidavits, which included a contract between the plaintiffs and Providian Builder of CT, executed by Joseph Citino, for the rebuilding of the insured premises. <u>See</u> **Exhibit H**. The plaintiffs cannot create an issue of fact by affidavits that conflict with their earlier deposition testimony. On February 26, 2004 and on June 17, 2004, Joseph Attias testified that they would not rebuild the structure on the property because it was not financially feasible. The cost to rebuild is significantly higher than the policy limit of $200,000. Specifically, Joseph Attias testified on February 26, 2004, when asked if he talked to the bank about rebuilding:

> A. At one time they were considering on rebuilding, yes, and converting it to a loan, into a construction loan. And then we realized it would be too expensive for us.
>
> Q. Why would it be too expensive?

    A. Because we got offer to build the house for 4000,000, 350,000, and I said, it's ridiculous, doesn't make any sense.

On June 17, 2004, Joseph Attias testified that he understood he would have to spend $200,000 of his own money to rebuilt and it did not make sense to rebuild, "Because I don't have that money." See **Exhibit G**, page 161 and 276-277. Despite the plaintiffs' testimony that they would not rebuild, the plaintiffs have now submitted affidavits saying they are going to rebuild. The plaintiffs may not create an issue of fact through their affidavits, in opposition to a summary judgment motion, that contradicts their previous deposition testimony. Hayes v. New York City Dept. of Corrections, 84 F.3d 614, 619 (2nd Cir. 1996). The Second Circuit held in Hayes:

> However, a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony. *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir.1969) (examining omission in four-day deposition); *Martin v. City of New York*, 627 F.Supp. 892, 896 (E.D.N.Y.1985) (examining direct contradiction between deposition and affidavit). "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Perma*, 410 F.2d at 578. Thus, factual issues created solely by an affidavit crafted to oppose a summary judgment motion are not "genuine" issues for trial. *Id*

Id.

At his depositions, Joseph Attias testified that they would not rebuild. In the plaintiffs objection to the defendant's summary judgment, the plaintiffs now provide affidavits swearing they have entered into a contract to rebuild. As previously discussed, the plaintiffs do not have a valid contract to rebuild. And to the extent that the affidavits contradict the

plaintiffs earlier deposition testimony, the deposition testimony that they are not going to rebuild must be accepted. CLT Telecommunications Corp. v. Colonial Technologies Corp.,1999 WL 200700, at *5 (D. Conn. 1999). Therefore, the plaintiffs' statement that they are going to rebuild their property cannot be an issue of fact in this case.

**The policy of insurance requires that the property must be replaced in order to recover under the replacement cost provision in the policy of insurance and the construction agreement allegedly entered into by the plaintiff is insufficient to avoid this policy requirement.**

Even if the plaintiff may now contradict their earlier testimony, the alleged contract does not satisfy the policy condition that the property must be replaced in order to recover under the replacement cost provision of the policy. The plaintiffs are incorrect in their interpretation of the applicable policy provisions.

The replacement cost provision and the actual cash value provisions of the policy of insurance provide as follows (See Exhibit F):

### HOW MUCH WE PAY FOR LOSS OR CLAIM

**Loss Settlement Terms -** Subject to the deductible or other limitation that applies, we pay the lesser of:

    a)     the **limit** that applies;

    b)     **your** interest in the property; or

    c)     the amount determined under the Actual Cash Value Terms.

    **1.**     **Replacement Cost Terms**

            \* \* \*

        c.     When the cost to repair or replace exceeds the lesser of $2,500 or five percent of the limit on the damaged building, **we** do not pay for more than the actual cash value of the loss until repair or replacement is completed.

            **You** may make a claim for the actual cash value of the loss before repairs are made. A

- 10 -

Law Offices of SKELLEY ROTTNER P.C. □ P.O. Box 340890, Hartford, CT 06134-0890 □ Phone: (860) 561-7077 Fax: (860) 561-7088
Juris No. 58693

>       claim for an additional amount payable under
>       the **terms** must be made within 180 days after
>       the loss.
>
>       * * *
>
>   c.  If the limit on the damaged building is at least
>       80 percent of its replacement cost at the time
>       of loss, the smaller of the following amounts
>       is used in applying the Loss Settlement Terms.
>
>       1)  the cost to repair or replace the damage
>           on the same premises using materials of
>           like kind and quality, to the extent
>           practical; or
>       2)  the amount spent to repair or replace the
>           damage.
>
>       * * *
>
> 2. **Actual Cash Value Terms** - Actual cash value
>    includes a deduction for depreciation, however
>    caused.
>
>    * * *
>
>    c.  The Actual Cash Value Terms apply to all
>        property not covered under the Replacement
>        Cost Terms.
>
>    d.  The smallest of the following terms is used in
>        applying the Loss Settlement Terms:
>        1)  the cost to repair or replace the
>            property with materials of like kind
>            and quality to the extent practical;
>        2)  the actual cash value of the property
>            at the time of the loss;

Although entering a contract that incurs a valid debt may trigger the replacement cost provision in a policy of insurance under the right circumstances, Northrup v. Allstate Ins. Co., 247 Conn. 242, 720 A.2d 879 (1998), those circumstances do not apply to the present case. The facts and applicable provisions of the policy of insurance in Northrup are distinguishable from the facts and policy provisions of this case. In Northrup, the plaintiffs engaged a contractor to repair their home and the contractor had completed the repairs. The Court held that because the contractor had performed his duties under the contract and the plaintiffs had

Law Offices of SKELLEY ROTTNER P.C. ⊔ P.O. Box 340890, Hartford, CT 06134-0890 ⊐ Phone: (860) 561 7077 Fax: (860) 561-7088
Juris No. 58693

agreed he was entitled to payment for his work, the plaintiffs had incurred a valid debt within the meaning of their policy of insurance under the insurance policy replacement cost provision. Id. at 247-253. Unlike the homeowners in Northrup who rebuilt their home, the plaintiff in this case has taken no action to initiate any repair or replacement of the property. Although in Northrup, construction was completed, in this case no construction has occurred. Rather the plaintiffs have entered into a conditional contract to restore the premises conditioned on a recovery in this lawsuit.

Northrup, is also distinguishable from this case because the Patrons policy provisions with respect to payment of replacement cost value are substantially different from the provisions in the Allstate policy of insurance in Northrup. The replacement cost provision in the Allstate policy of insurance was triggered by "the amount actually and necessarily spent to repair or replace the damaged building structure." Id. at 246. The Northrup Court held that the incurring of a valid debt was within the meaning of the word "spent." Id. at 250. The replacement cost provision in the Patrons policy is substantially different and provides "**we** do not pay for more than the actual cash value of the loss until repair or replacement is completed." The policy language in this case does not contain the word "spent," and is not triggered by spending any sum of money. The provision is not ambiguous and the Patron's policy language clearly provides that replacement cost will not be paid until the repair or replacement is completed. Unlike Northrup, there is no room to interpret the Patrons' policy language to trigger the replacement cost provision simply by signing a valid construction contract. Rather, the plaintiffs must repair or replace their property before they are entitled to the replacement cost. The plaintiffs conditional construction agreement is not sufficient to satisfy the replacement cost policy provision because replacement cost only applies when the

Law Offices of SKELLEY ROTTNER P.C. ▫ P.O. Box 340890, Hartford, CT 06134-0890 ▫ Phone: (860) 561-7077 Fax: (860) 561-7088
Juris No. 58693

"replacement is completed." Other courts have interpreted replacement cost provisions identical to the policy language in this case and have found that actual repair or replacement is a precondition to recovery. See Rhodes v. Farmers Ins. Co., 86 S.W.3d 401, 403 (Ark. Ct. App. 2002) (affirming summary judgment for insurer because the insured did not meet the policy condition of repair or replacement, which was not ambiguous); Burchett v. Kansas Mut. Ins. Co., 48 P.3d 1290, 1291-1292 (Kan. Ct. App. 2002) (affirming denial of insureds' summary judgment when insureds argued to collect the replacement cost without rebuilding their home); Miller v. Farm Bureau Town & Country Ins. Co. of Missouri, 6 S.W.3d 432, 438 (Mo. Ct. App. 1999) (reversing jury verdict due to error in jury instruction that allowed insureds to claim replacement cost without first repairing, restoring, or replacing insured premises); Gilbert v. North Carolina Farm Bureau Mut. Inc. Co., 574 S.E.2d 115, 118 (N.C. Ct. App. 2002) (reversing trial court's partial summary judgment for insured and holding that before insured is entitled to the replacement cost, the insured must rebuild or repair otherwise the insured could reap a windfall profit from a loss); Rotell v. Erie Ins. Group, 2001 WL 1820335 (Pa. Com. Pl. March 16, 2001) (granting summary judgment to the insurer because the policy language was unambiguous and because the insured had not replaced the lost items). (See **Exhibit I**, the last exhibit, for Westlaw cases.)

The requirement that the premises be repaired prior to payment of replacement cost value (as was factually the case in Northrup and as required by the explicit Patrons policy language) is also required by the doctrine of "moral hazard" as adopted by the Connecticut Supreme Court in Steiner v. Middlesex Mut. Assurance Co., 44 Conn. App. 415, 430-431, 689 A.2d 1154 (1997). In Steiner, the Connecticut Supreme Court described moral hazard as a motive to create a loss or be less than vigilant to prevent one. Id. at 432. The Court

explained moral hazard by noting that the insurance contract is an indemnity contract and, "Its purpose is to make the insured whole but never to benefit him because a fire occurred." Id. (citations omitted). Relying on Steiner, the Connecticut Supreme Court in Northrup recognized that the replacement cost provision may guard against the "moral hazard," created by an insurer paying the replacement cost when an insured decides not to rebuild, which would cause the insured to realize a profit. Northrup, 247 Conn. at 252. The execution of a valid contract to rebuild does not guard against the "moral hazard" since there is a potential for profit which can not be known until the construction is completed. For example, many older homes have, expensive construction such as ornate woodwork, stained glass windows, copper pipes, or plaster walls. If an insured is paid replacement cost value based on an executed construction agreement, before repairs are completed, the insured could change the construction and substitute less expensive construction such as sheetrock for plaster walls. The insured would then profit by switching from plaster walls to sheet rock. Similarly, the insured could change the contract from ornate woodwork to plain woodwork, stained glass to plain glass, etc. as the case may be; or, the insured may simply decide not to rebuild. By requiring the insured to complete construction before the replacement cost value is paid, the insurance contract prevents the moral hazard of the insured obtaining a profit from the destruction of their property. Therefore, the Supreme Court of Connecticut in Northrup Id. at p. 252 observed:

> "The defendant argues that this interpretation is necessary in order to guard against a 'moral hazard'. If the insurance pays the insureds for replacement cost and the insured chooses not to rebuild the property, the insured will realize a profit on his fire loss.' Although that is certainly a rational explanation for the insurance policy provision requiring the insured to complete the repair or replacement before the insurance

Law Offices of SKELLEY ROTTNER P.C. ☐ P.O. Box 340890, Hartford, CT 06134-0890 ☐ Phone: (860) 561-7077 Fax: (860) 561-7088
Juris No. 58693

> becomes obligated to pay the withheld depreciation; e.g.
> <u>Steiner v Middlesex Mutual Insurance Co</u>. . . . it does not
> require the further extraordinary requirement that the insured
> actually pay out the money for the replacement before
> seeking replacement cost coverage."

In the present case, the plaintiffs are attempting to obtain the replacement cost value of the policy prior to rebuilding. Should the plaintiffs obtain the replacement cost value without rebuilding, they will make a profit. This is exactly what the Connecticut Supreme Court in <u>Northrup</u> and <u>Steiner</u> were careful to avoid. Preventing insureds from making a profit is the very reason the Court in <u>Steiner</u> ruled that there could be no payment to the insured prior to the construction, and the rational for the Court in <u>Northrup</u> to allow payment because the repairs were completed.

The moral hazard is more than theoretical, it is a real issue in this case. Although the plaintiffs argue that the construction agreement is a construction contract to rebuild, the agreement is not a contract at all but an agreement to contract in the future. See **Exhibit H,** the construction agreement. The agreement states at page 2, "This contract is contingent on the homeowners receiving replacement value insurance coverage." This is a condition precedent to the formation of the contract. There is no Connecticut case law exactly on point, but the Court of Appeals of New York in <u>Oppenheimer & Co., Inc. v. Openheim, Appel, Dixon & Co.</u>, 86 N.Y.2d 685, 660 N.E.2d 415 (1995) explained a condition precedent concisely:

> A condition precedent is "an act or event, other than a lapse of time,
> which, unless the condition is excused, must occur before a duty to
> perform a promise in the agreement arises" (Calamari and Perillo,
> Contracts § 11-2, at 438 [3d ed.]; *see,* Restatement [Second] of
> Contracts § 224; *see also, Merritt Hill Vineyards v. Windy Hgts.
> Vineyard,* 61 N.Y.2d 106, 112- 113, 472 N.Y.S.2d 592, 460 N.E.2d

- 15 -

> 1077). Most conditions precedent describe acts or events which must occur before a party is obliged to perform a promise made pursuant to an existing contract, a situation to be distinguished conceptually from a condition precedent to the formation or existence of the contract itself (*see, M.K. Metals v. Container Recovery Corp.*, 645 F.2d 583). In the latter situation, no contract arises "unless and until the condition occurs" (Calamari and Perillo, Contracts § 11-5, at 440 [3d ed] ).

Id. at 418.

In the plaintiffs' construction agreement, unless the plaintiffs receive replacement value insurance, they have no contract. This is a condition that must precede the existence of the contract itself. In addition, the plaintiffs have no duty if they do not receive "full compensation" or a "favorable resolution." Neither "value insurance" ,"full compensation" or "favorable resolution" are defined and both terms are dependent on the plaintiffs' subjective interpretations. There are also no start or end dates, or dates by which the terms must be complied with. The lack of definitiveness results in no method to determine a breach of the agreement, which is essential to the formation of a contract. L.G. Defelice, Inc. v. Fireman's Ins. Co., 41 F.Supp.2d 152, 161 (D. Conn. 1998) (recognizing that "terms are reasonably certain when they provide a basis for determining the existence of a breach and giving the appropriate remedy") (citation omitted). Where the essential terms of an agreement are either unclear or omitted, the contract must fail because judicial interpretation of the contract is not possible. Brookhaven Housing Coalition v. Solomon, 583 F.2d 584, 593 (2d Cir.1978).

    The plaintiffs' construction agreement is not a contract to rebuild but simply an agreement to contract in the future. The alleged contract is simply a device created by the plaintiffs on which they claim to be entitled to replacement cost coverage. Moreover, pursuant to the terms of the Patrons' policy the plaintiffs will never recover the full replacement cost necessary to restore the premises. The policy of insurance limits the

- 16 -

Law Offices of SKELLEY ROTTNER P.C. ☐ P.O. Box 340890, Hartford, CT 06134-0890 ☐ Phone: (860) 561-7077 Fax: (860) 561-7088
Juris No. 58693

replacement cost value coverage to $200,000, as shown in **Exhibit E**. The actual cash value of this claim was $134,000, as represented by the payment to the mortgagee. See **Exhibit F**. The plaintiff Joseph Attias stated, in his deposition that it would cost approximately $350,000 to $400,000 to rebuild the investment property (**see Exhibit G,** page 161 and 276). Therefore the plaintiffs can never receive enough cash from this policy to rebuild their investment property. Joseph Attias testified on two separate occasions, that it does not make economic sense to rebuild the investment property. (**See Exhibit G**, page 161 and 276-277). If the obligation to pay the replacement cost value of $200,000 is triggerd by the execution of the construction contract, then the plaintiff will profit from their loss. This explains why the contract to rebuild submitted by the plaintiffs is likely not enforceable and is not likely to be enforced.

Because the plaintiff at this stage of the proceedings are estopped from creating an issue of material fact; because the plaintiff's alleged construction agreement is not enforceable; because the plaintiffs have not rebuilt as required by the terms of the Patron's policy of insurance and, Northrup id; and, because payment of the RCV before the premises are rebuilt violates the principal of moral hazard, the Patrons Mutual Insurance Company is entitled to summary judgment on the plaintiffs' claims for recovery of replacement cost value.

Law Offices of SKELLEY ROTTNER P.C. ☐ P.O. Box 340890, Hartford, CT 06134-0890 ☐ Phone: (860) 561-7077 Fax: (860) 561-7088
Juris No. 58693

## IV.   CONCLUSION

For all of the foregoing reasons, Patrons Mutual Insurance Company respectfully submits that it is entitled to the entry of summary judgment in its favor as to the plaintiffs' complaint on the CUTPA and CUIPA allegations, and that the plaintiffs are precluded from seeking recovery of the replacement cost value of the loss.

          DEFENDANT, PATRONS MUTUAL
          INSURANCE COMPANY

By _____
      Heather J. Adams-Beman
      Skelley Rottner P.C.
      P.O. Box 340890
      Hartford, CT  06134-0890
      Tel. (860) 561-7077
      Fax (860) 561-7088
      Federal Bar No. ct24091

SR/229544/tao
7373-03002

## CERTIFICATION

I hereby certify that a copy of the above was mailed via U.S. Mail, postage prepaid, on April 21, 2005, to the following counsel of record:

Attorney Cheryl E. Heffernan
Farver & Heffernan
2842 Old Dixwell Avenue
Hamden, CT 06518
*Tel. (203) 288-8266*

                                              Heather J. Adams-Beman

SR/229544/tao
7373-03002

Law Offices of SKELLEY ROTTNER P.C. ☐ P.O. Box 340890, Hartford, CT 06134-0890 ☐ Phone: (860) 561-7077 Fax: (860) 561-7088
Juris No. 58693