# EXHIBIT E

APR-16-2004  09:31    C.G. MARCUS AGENCY                860 257 8404    P.03/04

# Patrons Mutual Insurance Company of Connecticut
PO Box 6517 Glastonbury, CT 06033-6517 *A member of the Patrons Group*



## Dwelling Fire Declarations      Policy Continuous Until Cancelled

Policy No. DCT0023909          NEW          Effective Date: 07/29/02

### NAME AND MAILING ADDRESS

**NAMED INSURED**
JOSEPH ATIAS
894 EDGEWOOD DRIVE
WESTBURY, NY 11590

**AGENT 7910**
CHARLES G MARCUS AGCY
842 SILAS DEANE HGWY
PO BOX 290756
WETHERSFIELD, CT 06129-0756
(860) 563-9353

### POLICY TERM
From: 07/29/02   To: 07/29/03   At 12:01 a.m. Standard Time at the Residence Premises

### PROPERTY LOCATION, DESCRIPTION AND RATING INFORMATION
475 NEW BRITAIN AVE   HARTFORD, CT 06106
3 FAMILY, FRAME, TENANT-OCCUPIED DWELLING, BUILT IN 1925, TERR 35
WITHIN 1000 FT OF HYDRANT, WITHIN 5 MILES OF FIRE STATION, PROTECTED

Insurance is provided only with respect to the following coverages for which a limit of liability is specified or a premium is shown.

### COVERAGES AND LIMITS OF LIABILITY

| | | | |
|---|---|---|---|
| A. Residence | $200,000 | L. Premises Liability | $300,000 |
| B. Related Private Structures | $20,000 | M. Medical Payments | $1,000 |
| C. Personal Property | NIL | O. Fire Legal Liability | NIL |
| D. Add'l Expense & Loss of Rent | $20,000 | Per Occurrence $300,000 Annual Aggregate $600,000 | |

**DEDUCTIBLE $2,500** Applies to all perils. In case of a loss, we cover only that part of the loss over the deductible stated.

### SUBJECT TO THE FOLLOWING FORMS AND ENDORSEMENTS

| | | | | | |
|---|---|---|---|---|---|
| FL-2 | (1.0) | $754 | DEDUCTIBLE CR | | INCL |
| - FIRE | | INCL | LOSS FREE CR | | $117CR |
| - EC | | INCL | GL-600 | (6-88) | $414 |
| - VMM | | INCL | | | |
| FL-10 | (1.0) | INCL | | | |
| FL-82 | (2.0) | INCL | | | |
| FL-216 | (1.0) | INCL | | | |

$89.

### RELATED PRIVATE STRUCTURES LIMIT, DESCRIPTION & PREMIUM

NO SCHEDULED COVERAGE B

### PREMIUM AND BILLING INFORMATION
Annual Premium: $1,051          Bill To: INSURED

### MORTGAGEES
NONE

### POLICY INFORMATION
THIS IS YOUR NEW POLICY.

DATE ISSUED: 08/07/02          AGENT COPY          THIS IS NOT A BILL


PLAINTIFF'S EXHIBIT

# Patrons Mutual Insurance Company of Connecticut
PO Box 6517 Glastonbury, CT 06033-6517  *A member of the Patrons Group*

## Dwelling Fire Declarations     Policy Continuous Until Cancelled

Policy No. DCT0023909     ENDORSEMENT     Effective Date: 10/08/02

### NAME AND MAILING ADDRESS

| NAMED INSURED | AGENT 2910 |
|---|---|
| JOSEPH & HAIM ATIAS<br>984 EDGEWOOD DRIVE<br>WESTBURY, NY 11590 | CHARLES G MARCUS AGCY<br>842 SILAS DEANE HGWY<br>PO BOX 290756<br>WETHERSFIELD, CT 06129-0756<br>(860)563-9353 |

### POLICY TERM

From: 07/29/02   To: 07/29/03     At 12:01 a.m. Standard Time at the Residence Premises

### PROPERTY LOCATION, DESCRIPTION AND RATING INFORMATION

475 NEW BRITAIN AVE   HARTFORD, CT 06106
3 FAMILY, FRAME, TENANT-OCCUPIED DWELLING, BUILT IN 1925, ZONE 2
WITHIN 1000 FT OF HYDRANT, WITHIN 5 MILES OF FIRE STATION, PROTECTED

Insurance is provided only with respect to the following coverages for which a limit of liability is specified or a premium is shown.

### COVERAGES AND LIMITS OF LIABILITY

| | | | |
|---|---:|---|---:|
| A. Residence | $200,000 | L. Premises Liability | $300,000 |
| B. Related Private Structures | $20,000 | M. Medical Payments | $1,000 |
| C. Personal Property | NIL | O. Fire Legal Liability | NIL |
| D. Add'l Expense & Loss of Rent | $20,000 | Per Occurrence $300,000 Annual Aggregate $600,000 | |

DEDUCTIBLE $2,500  Applies to all perils. In case of a loss, we cover only that part of the loss over the deductible stated.

### SUBJECT TO THE FOLLOWING FORMS AND ENDORSEMENTS

| | | | | | | |
|---|---|---|---|---|---|---|
| FL-2 | (1.0) | $754 | DEDUCTIBLE CR | | INCL | |
| - FIRE | | INCL | LOSS FREE CR | | $117CR | |
| - EC | | INCL | GL-600 | (6-88) | $414 | |
| - VMM | | INCL | | | | |
| FL-10 | (1.0) | INCL | | | | |
| FL-82 | (2.0) | INCL | | | | |
| FL-216 | (1.0) | INCL | | | | |

### RELATED PRIVATE STRUCTURES LIMIT, DESCRIPTION & PREMIUM

NO SCHEDULED COVERAGE B

### PREMIUM AND BILLING INFORMATION

Annual Premium: $1,051     Bill To: INSURED     No Premium Change

### MORTGAGEES

AMERIQUEST MTG CORP
ISAOA ATIMA
PO BOX 57064
IRVINE, CA 92619-7064

### POLICY INFORMATION

YOUR POLICY IS CHANGED EFFECTIVE 10/08/02
NAME CHANGED     MORTGAGEE ADDED

DATE ISSUED: 10/13/02     AGENT COPY     THIS IS NOT A BILL


PLAINTIFF'S EXHIBIT 9

APR-16-2004 09:25      ..G. MARCUS AGENCY           860 257 8404      P.02

# Patrons Mutual Insurance Company of Connecticut
PO Box 6517 Glastonbury, CT 06033-6517  *A member of the Patrons Group*

**Dwelling Fire Declarations**     Policy Continuous Until Cancelled

ENDORSEMENT                            Effective Date: 10/08/02

Policy No. DCT0023909

## NAME AND MAILING ADDRESS

| NAMED INSURED | AGENT 2910 |
|---|---|
| JOSEPH & HAIM ATIAS<br>884 EDGEWOOD DRIVE<br>WESTBURY, NY 11590 | CHARLES G MARCUS AGCY<br>842 SILAS DEANE HGWY<br>PO BOX 290756<br>WETHERSFIELD, CT 06129-0756<br>(860) 563-9353 |

## POLICY TERM
At 12:01 a.m. Standard Time at the Residence Premises

From: 07/29/02   To: 07/29/03

## PROPERTY LOCATION, DESCRIPTION AND RATING INFORMATION

475 NEW BRITAIN AVE  HARTFORD, CT 06106
3 FAMILY, FRAME, TENANT-OCCUPIED DWELLING, BUILT IN 1925, ZONE 2
WITHIN 1000 FT OF HYDRANT, WITHIN 5 MILES OF FIRE STATION, PROTECTED

Insurance is provided only with respect to the following coverages for which a limit of liability is specified or a premium is shown.

## COVERAGES AND LIMITS OF LIABILITY

| | | | |
|---|---|---|---|
| A. Residence | $200,000 | L. Premises Liability | $300,000 |
| B. Related Private Structures | $20,000 | M. Medical Payments | $1,000 |
| C. Personal Property | NIL | O. Fire Legal Liability | NIL |
| D. Add'l Expense & Loss of Rent | $20,000 | Per Occurrence $300,000 Annual Aggregate $600,000 | |

DEDUCTIBLE $2,500  Applies to all perils. In case of a loss, we cover only that part of the loss over the deductible stated.

## SUBJECT TO THE FOLLOWING FORMS AND ENDORSEMENTS

| | | | | | | |
|---|---|---|---|---|---|---|
| FL-2 | (1.0) | $754 | DEDUCTIBLE CR | | INCL | |
| - FIRE | | INCL | LOSS FREE CR | | $117CR | |
| - EC | | INCL | GL-600 | (6-88) | $414 | |
| - VMM | | INCL | | | | |
| FL-10 | (1.0) | INCL | | | | |
| FL-82 | (2.0) | INCL | | | | |
| FL-215 | (1.0) | INCL | | | | |

## RELATED PRIVATE STRUCTURES LIMIT, DESCRIPTION & PREMIUM

PLAINTIFF'S EXHIBIT 7 4/19/04

AAIS   — READ THIS ENTIRE POLICY CAREFULLY —  FL-2
                              IT IS A LEGAL CONTRACT              Ed 1.0

PLAINTIFF'S EXHIBIT 12 /11b 4/19/04 JIA

## BROAD FORM

The following Table of Contents shows how the policy is organized. It will help **you** locate particular sections of the policy.

## TABLE OF CONTENTS

| | Page |
|---|---|
| Agreement | 1 |
| Definitions | 2 |
| Principal Coverages | 2 |
| Incidental Coverages | 4 |
| Perils Insured Against — Coverages A, B, C, and D | 5 |
| General Exclusions | 7 |
| What **You** Must Do in Case of Loss | 9 |
| How Much **We** Pay for Loss or Claim | 10 |
| Payment of Loss | 11 |
| Policy Conditions | 12 |
| Farm Coverages (when applicable) | Separate Forms |

Required state endorsements may also be part of this policy.

Refer to the Definitions for words that have special meaning. These words are shown in **"bold type"**.

## AGREEMENT

This policy, subject to all of its **terms**, provides property insurance and other described coverages during the policy period. In return **you** must pay the required premium. Each of the Principal Coverages described in this policy applies only if a **limit** is shown on the Declarations for that coverage.

Copyright MCMXCII, American Association of Insurance Services

## DEFINITIONS

1. The words **you** and **your** mean the person or persons named on the Declarations and **your** spouse if a resident of **your** household. The words **we**, **us**, and **our** mean the company providing this insurance.

2. **Business** means a trade, profession, or occupation including farming, all whether full or part time.

3. **Credit Card** means a card, plate, coupon book, or other credit device used to obtain money, property, labor, or services on credit. This includes debit cards or fund transfer cards used to deposit, withdraw or transfer funds.

4. **Insured Premises** means the location shown on the Declarations.

5. **Limit** means the limit of liability that applies.

6. **Motorized Vehicle** means a self-propelled land or amphibious vehicle regardless of method of surface contact.

7. **Pollutant** means any solid, liquid, gaseous, thermal, or radioactive irritant or contaminant, including acids, alkalis, chemicals, fumes, smoke, soot, vapor, or waste. Waste includes materials to be disposed of, recycled, reconditioned, or reclaimed.

8. **Terms** means all provisions, limitations, exclusions, conditions, and definitions used in this policy.

## PRINCIPAL COVERAGES

**Coverage A — Residence**

1. **We** cover the residence on the **insured premises**, including its additions, built-in components, and attached fixtures. On the **insured premises**, we also cover:

   a. building items that can be detached from the covered residence, such as screens and storm doors;

   b. appliances, carpets, and window coverings in that part of the residence you rent to others;

   c. building materials and supplies for use in construction on the **insured premises**; and

   d. if this policy does not provide Coverage C, tools and equipment used to service the **insured premises**. This includes **motorized vehicles** used only to service the **insured premises** that are not required to be licensed for road use.

2. Coverage A does not cover:

   a. land, including the land on which the property is located, underground water or surface water;

   b. trees, plants, shrubs, and lawns; and

   c. farm tools, farm equipment, and farm **motorized vehicles**.

**Coverage B — Related Private Structures**

1. **We** cover related private structures on the **insured premises** which are not attached to the residence, including their additions, built-in components, and attached fixtures. Structures that are connected to the residence by only a fence, a utility line, or a similar connection are not considered attached. On the **insured premises**, we also cover:

   a. fences, driveways, and sidewalks;

   b. other permanently installed outdoor fixtures; and

   c. building items that can be detached from covered related private structures, such as screens and storm doors.

2. Coverage B does not cover:

   a. land, including the land on which the property is located, underground water or surface water;

   b. trees, plants, shrubs, and lawns;

   c. structures used for **business**; and

   d. structures rented or held for rental. This does not apply to structures:

      1) rented or held for rental to a tenant of the covered residence and not used for **business** by the tenant; or

      2) used solely as a private garage.

FL-2 Ed 1.0 — 2 — AAIS

Coverage C — Personal Property

1. **While on the Insured Premises** — This policy covers personal property, while on the **insured premises**, which is usual to the occupancy of the dwelling as a residence. The personal property must be owned or used by **you** or **your** family members who reside with **you**.

2. **While Away from the Insured Premises** — **You** may apply up to 10 percent of the Coverage C limit to cover personal property, while away from the **insured premises**, which is usual to the occupancy of the dwelling as a residence. The personal property must be owned or used by **you**, or **your** family members who reside with **you**.

3. **While in a Newly Acquired Principal Residence** — **We** pay for loss to covered personal property in a newly acquired principal residence. The full Coverage C limit applies for 30 days from the date **you** begin to move. After that, coverage for personal property in a newly acquired principal residence is limited to 10 percent of the Coverage C limit. This coverage does not extend past the date on which the policy expires or the date on which the policy is terminated.

4. **Property of Others** — At **your** option, personal property owned by a guest or domestic employee is covered while it is in that part of the **insured premises** occupied by **you**.

5. **Limitations on Certain Property** — The special limits shown below do not increase the Coverage C limit. The limit for each class is the total limit per occurrence for all items in that class.

    a. $200 on money, bank notes, bullion, gold other than goldware and gold-plated ware, silver other than silverware and silver-plated ware, platinum, coins, and numismatic property.

    b. Regardless of their storage medium, $1,000 on securities, bills, letters of credit, notes other than bank notes, tickets, accounts, deeds, evidence of debt, passports, manuscripts, stamps, and philatelic property.

    c. $1,000 on watercraft including their trailers, furnishings, equipment, and motors.

    d. **Business** property, up to the amounts shown below:

        1) $2,500 while on the **insured premises**;
        2) $250 while away from the **insured premises**.

    e. $1,000 on trailers not otherwise provided for.

6. **Personal Property Not Covered** — Coverage C does not cover:

    a. land, including the land on which the property is located, underground water or surface water;

    b. trees, plants, shrubs, and lawns;

    c. animals, birds, fish, or insects;

    d. **motorized vehicles**. This includes their parts, equipment, and accessories while in or on a **motorized vehicle**. **We** do cover **motorized vehicles** that are not subject to motor vehicle registration if they are designed and used to assist the handicapped or used only to service the **insured premises**;

    e. aircraft, including their parts and equipment;

    f. electronic devices, accessories, or antennas that may be operated from the electrical system of a **motorized vehicle**, farm equipment, or watercraft while in or on the **motorized vehicle**, farm equipment, or watercraft. This includes films, tapes, wires, discs, records, or other media for use with such devices;

    g. loss that results from **credit cards**; or

    h. farm property.

**Coverage D — Additional Living Costs and Fair Rental Value**

We pay the necessary and reasonable increase in living costs you incur to maintain the normal standard of living of your household if the part of the **insured premises** containing your household is made unfit for use by an insured loss. We pay only for the period of time reasonably required to make that part of the **insured premises** containing your household fit for use or to settle your household in new quarters, whichever is less. This period of time is not limited by the policy period.

We pay for the fair rental value if the part of the **insured premises** rented or held for rental to others is made unfit for use by an insured loss. We only pay for the period of time reasonably required to make that part of the **insured premises** rented held for rental to others fit for use. Fair rental va is the amount you would have received less t charges and expenses that do not continue while t **insured premises** is unfit for use. This period of ti is not limited by the policy period.

We pay your additional living costs and fair rer value for up to two weeks if the premises next to t **insured premises** is damaged by a peril insur against and you may not, by order of civil author use the **insured premises**. This period of time is t limited by the policy period.

We do not pay for additional living costs or fair ren value due to the cancellation of a lease or agreement.

## INCIDENTAL COVERAGES

This policy provides the following Incidental Coverages. They are subject to all of the **terms** of the applicable Coverages A, B, or C. They are not extended to farm property. These coverages provide additional insurance unless otherwise stated.

1. **Emergency Removal** — We pay for loss to covered property that is moved to prevent loss by a peril insured against. The property is covered for direct physical loss not excluded, for up to 30 days. This coverage does not extend past the date on which this policy terminates.

   We pay up to a $250 towing charge to move a covered mobile home that is in danger from a peril insured against.

   This coverage does not increase the **limits** shown for the property being removed.

2. **Debris Removal** — We pay for the cost to remove the debris of covered property after an insured loss. This includes the cost to remove volcanic ash, dust, or particulate matter that causes direct physical loss to covered property.

   You may apply up to 25% of the **limit** that applies to the damaged property to cover debris removal. We will not pay more for direct loss to property and debris removal combined than the **limit** that applies to the damaged property. However, when the covered loss plus the cost of debris removal is more than the applicable **limit**, we will pay up to an extra 5% of the applicable **limit** to cover t cost of debris removal.

   This coverage does not include costs to extra **pollutants** from land or water; or remove, resto or replace polluted land or water.

   We also pay the cost to remove fallen trees whi cause damage to property covered und Coverages A, B, or C if:

   a. the falling of the tree is caused by any of t perils insured against; and

   b. coverage is not provided elsewhere by tr policy.

   Regardless of the number of fallen trees, tr most we will pay is $500 per occurrence.

3. **Trees, Plants, Shrubs, or Lawns** — We pay f loss to trees, plants, shrubs, or lawns on tr **insured premises** caused by:

   a. fire or lightning, explosion, riot or civil cor motion, aircraft;

   b. vehicles, if not owned or operated by you ( an occupant of the **insured premises**; or

   c. vandalism; burglary damage; or, if covered t this policy, theft.

We do not cover trees, plants, shrubs, or lawns grown for **business**.

**You** may apply up to 5 percent of the Coverage A **limit** on the **Insured premises** to cover trees, plants, shrubs, or lawns. **We** do not pay more than $500 for each tree, plant, or shrub. This includes the cost to remove the debris of the covered item.

4. **Fire Department Service Charge** — **We** pay up to $500 for charges assumed by **you** under a contract or agreement when a fire department is called to protect covered property from a peril insured against.

5. **Grave Markers** — **We** pay up to $1,000 for loss to grave markers and mausoleums caused by any of the perils insured against.

6. **Collapse** — **We** pay for loss to covered property involving the collapse of a building or a part of a building caused by the following:

   a. any of the perils insured against described in this policy;

   b. hidden insect or vermin damage or hidden decay;

   c. weight of contents or people;

   d. weight of rain which collects on a roof; or

   e. the use of defective materials or methods in construction or repair if the collapse occurs during the course of construction or repair.

Under b. through e. above, unless the loss is the direct result of the collapse of a building, **we** do not pay for loss to awnings; swimming pools; fences; patios; paved areas; retaining walls; bulkheads; foundations; wharves; docks; piers; underground pipes, flues, and drains; cesspools; and septic tanks.

Collapse does not mean settling, cracking, shrinking, bulging, or expanding.

This coverage does not increase the **limits** shown for the property covered.

7. **Glass Breakage** — **We** cover breakage of glass that is part of an insured structure. **We** do not pay for loss if the residence is vacant for more than 30 days in a row just before the loss. A residence being built is not vacant. **We** also pay for loss to covered property which is damaged by the breakage of glass.

   This coverage does not increase the **limits** shown for the property covered.

8. **Tenant's Improvements** — If **you** are a tenant, **we** pay for loss by perils insured against to improvements on the **insured premises** made or acquired at **your** expense. These are permanent fixtures, alterations, decorations, and additions.

   **You** may apply up to 10 percent of the Coverage C **limit** to cover tenant's improvements.

## PERILS INSURED AGAINST — COVERAGES A, B, C, AND D

**PERILS INSURED AGAINST — COVERAGES A, B, C, AND D**

**We** insure against direct physical loss caused by the following perils, unless the loss is excluded under the General Exclusions:

1. **Fire or Lightning**

2. **Explosion**

3. **Windstorm or Hail** — However, **we** do not pay for loss:

   a. to the interior of a building or mobile home, or to property inside a structure caused by dust, rain, sand, sleet, snow or water, all whether driven by wind or not, which enter through an opening not made by the direct force of wind or hail;

   b. to watercraft and their trailers, furnishings, equipment and motors unless inside a fully enclosed building. (**We** do cover canoes and rowboats while on the **insured premises**.); or

   c. to outdoor antennas, including their lead-in wiring, masts and towers.

4. **Riot or Civil Commotion**

5. **Aircraft**

6. **Vehicles** — However, **we** do not pay for loss to fences, driveways and walks caused by a vehicle owned or operated by **you** or an occupant of the **Insured premises**.

7. **Sudden and Accidental Damage from Smoke** — However, **we** do not pay for loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism** — However, **we** do not pay for loss on the **Insured premises** if the residence is vacant for more than 30 days in a row just before the loss. A residence being built is not vacant.

9. **Burglary Damage** — This means damage to covered property caused by burglars. However, **we** do not pay for loss on the **Insured premises** if the residence is vacant for more than 30 days in a row just before the loss. A residence being built is not vacant.

10. **Falling Objects** — However, **we** do not pay for loss:

    a. to the interior of a building, mobile home, structure, or to the property inside, unless the object has first damaged an outside wall or the roof by impact;

    b. to outdoor antennas, including their lead-in wiring, masts and towers;

    c. to outdoor awnings or canopies including their supports;

    d. to fences or to outdoor equipment not permanently installed; or

    e. to the object which falls.

11. **Weight of Ice, Snow or Sleet** which damages a structure or the property inside. However, **we** do not pay for loss to:

    a. outdoor antennas, including their lead-in wiring, masts and towers;

    b. outdoor awnings or canopies including their supports;

    c. outdoor structures (other than buildings, carports, or mobile homes) such as swimming pools; fences; patios; paved areas; retaining walls; bulkheads; foundations; wharves; docks; piers; underground pipes, flues, drains; and cesspools; or

    d. outdoor equipment not permanently installed.

12. **Sudden and Accidental Tearing Apart, Cracking, Burning or Bulging** of a heating, air-conditioning or automatic sprinkling system or water heater. However, **we** do not pay for loss caused by freezing.

13. **Accidental Discharge or Overflow of Liquids or Steam** from a plumbing, heating, air-conditioning or automatic sprinkling system, water heater or from a domestic appliance. However:

    a. **We** do not pay for loss caused by continuous or repeated seepage or leakage.

    b. **We** do not pay for loss caused by freezing.

    c. **We** do not pay for loss on the **Insured premises** caused by accidental discharge or overflow which comes from off the **Insured premises**.

    d. **We** do not pay for loss if the residence has been vacant for more than 30 days in a row just before the loss. A residence being built is not vacant.

    e. **We** do not pay for loss to the system, heater or appliance from which the liquid or steam escapes. (**We** do pay the reasonable cost of removing and replacing only those parts of the structure needed to repair the system, heater or appliance.)

    In this peril, a plumbing system does not include a sump, sump pump and related equipment.

14. **Freezing** of a plumbing, heating, air-conditioning or automatic sprinkling system, water heater or a domestic appliance. However, **we** do not pay for loss on the **Insured premises** while the residence is vacant or unoccupied or under construction and unoccupied, unless **you** have taken reasonable care to:

    a. maintain heat in the building or mobile home; or

    b. shut off the liquid supply and drain the system, domestic appliance or heater.

15. **Sudden and Accidental Damage from Artificially Generated Electrical Currents** — However, **we** do not pay for loss to tubes, transistors and similar electronic components.

16. **Sinkhole Collapse** — This means loss caused by sudden settlement or collapse of earth supporting covered property. The earth settlement or collapse must result from subterranean voids created by the action of water on a limestone or similar rock formation.

    However, **we** do not pay for the value of land or the cost of filling sinkholes.

17. **Volcanic Action** — This means:

    a. airborne volcanic blast or airborne shock waves;

    b. ash, dust or particulate matter; or

    c. lava flow.

    However, **we** do not cover the removal of ash, dust or particulate matter that does not cause direct physical loss to covered property.

## GENERAL EXCLUSIONS

**We** do not pay for loss if one or more of the following exclusions apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded causes or events.

1. **Business Interruption** — **We** do not pay for loss which results from interruption of **business**.

2. **Civil Authority** — **We** do not pay for a loss which results from order of civil authority.

    **We** pay for loss which results from acts of a civil authority to prevent the spread of fire. **We** do not pay if the fire was caused by an excluded peril.

3. **Earth Movement** — **We** do not pay for loss which results from earth movement whether the earth movement results from natural or artificial causes.

    Earth movement includes but is not limited to:

    a. earthquake;

    b. landslide, subsidence, erosion;

    c. mudflow;

    d. earth sinking, rising, shifting, expanding, or contracting. This does not include Sinkhole Collapse as described under Perils Insured Against; or

    e. volcanic explosion. Volcanic explosion does not include Volcanic Action as described under Perils Insured Against.

    **We** do pay for direct loss caused by fire, explosion (other than a volcanic explosion) and, if covered by this policy, theft resulting from earth movement.

    **We** do pay for the breakage of glass that is part of a covered structure resulting from earth movement.

4. **Intentional Acts** — **We** do not pay for loss which results from an act committed with intent to cause a loss:

    a. by **you** or at **your** direction; or

    b. by or at the direction of any other insured.

5. **Neglect** — **We** do not pay for loss which results from **your** neglect to use all reasonable means to save and preserve covered property at and after the time of a loss.

6. **Nuclear Hazard** — **We** do not pay for loss which results from nuclear reaction, nuclear radiation, or radioactive contamination (whether controlled or uncontrolled; whether caused by, contributed to or aggravated by a peril insured against and whether caused by natural, accidental, or artificial means). Loss caused by nuclear hazard is not considered loss caused by fire, explosion, or smoke. Direct loss by fire resulting from the nuclear hazard is covered.

7. **Ordinance or Law** — **We** do not pay for loss or increased cost which results from the enforcement of a code, ordinance, or law which regulates the use, construction, repair, demolition of property, or removal of its debris.

8. **Power Disruption** — **We** do not pay for loss which results from the disruption of power or other utility service, whether or not it is caused by a peril insured against, if the cause of the disruption is not on the **Insured premises**.

   **We** do pay for direct loss by a peril insured against which occurs on the **Insured premises** as a result of the disruption of power.

9. **War** — **We** do not pay for loss which results from declared or undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, or destruction, seizure, or use of property for a military purpose. It includes the consequences of these. Discharge of a nuclear weapon is deemed an act of war even if it is accidental.

10. **Water Damage** — **We** do not pay for loss which results from the following:

    a. flood, surface water, waves, tidal water, overflow of a body of water, or spray, all whether driven by wind or not;

    b. water which backs up through or overflows from sewers, drains, or sumps; or

    c. water below the surface of the ground. This includes water which exerts pressure on, or seeps or leaks through or into a building, sidewalk, driveway, foundation, swimming pool, or other structure.

    **We** pay for direct loss caused by fire; explosion (other than a volcanic explosion); and, if covered by this policy, theft resulting from water damage.

11. **Wear and Tear** — **We** do not pay for loss which results from wear and tear, marring, deterioration, inherent vice, latent defect, mechanical breakdown, rust, wet or dry rot, corrosion, mold contamination, or smog. **We** do pay for an ensuing loss unless the ensuing loss itself is excluded.

12. **Weather Conditions** — **We** do not pay for loss which results from weather conditions that initiate, set in motion, or in any way contribute to losses excluded under the preceding General Exclusions (Numbers 1 through 11).

    **We** do pay for an ensuing loss unless the ensuing loss itself is excluded.

13. **Errors, Omissions, and Defects** — **We** do not pay for loss which results from one or more of the following:
    a. an act, error, or omission (negligent or not) relating to:

       1) land use;
       2) the design, specification, construction, workmanship, or installation of property;
       3) planning, zoning, development, surveying, siting, grading, compaction; or
       4) maintenance of property (including land, structures, or improvements);

       whether on or off the **insured premises**;

    b. a defect, a weakness, the inadequacy, a fault, or unsoundness in materials used in construction or repair whether on or off the **Insured premises**.

    **We** do pay for an ensuing loss unless the ensuing loss itself is excluded.

## WHAT YOU MUST DO IN CASE OF LOSS

1. **Notice** — In case of a loss, **you** must:

   a. give **us** or **our** agent prompt notice (**We** may request written notice); and

   b. give notice to the police when the act that causes the loss is a crime.

   The notice to **us** must state:

   a. **your** name, the policy number and the time, place, and the details of the loss; and

   b. the names and addresses of all known potential claimants and witnesses.

2. **Cooperation** — **You** must cooperate with **us** in investigating and settling the claim.

3. **Volunteer Payments** — **You** must not make payments, pay or offer rewards or assume obligations or other costs, except at **your** own cost. This does not apply to costs that are allowed by this policy.

4. **Other Duties** — **You** must take all reasonable steps to protect covered property at and after an insured loss to avoid further loss. **We** will pay the reasonable costs incurred by **you** for necessary repairs or emergency measures performed solely to protect covered property from further damage by a peril insured against if a peril insured against has already caused a loss to covered property. **You** must keep an accurate record of such costs. However, **we** will not pay for such repairs or emergency measures performed on property which has not been damaged by a peril insured against. This does not increase **our limit**.

   At **our** request **you** must:

   a. give **us** a signed, sworn proof of loss, within 60 days after **our** request, that shows:

      1) the time, place, and the details of the loss;
      2) **your** interest and the interest of all others in the property. This includes all mortgages and liens;
      3) other policies that may cover the loss;
      4) changes in title or use;
      5) available plans and specifications of buildings;
      6) detailed estimates for repair; and
      7) in detail, the quantity, description, cost, amount of loss, and actual cash value of the personal property involved in the loss. **You** must give **us** copies of all bills, receipts, and related documents to confirm these;

   b. submit to examination under oath in matters that relate to the loss or claim as often as **we** reasonably request. If more than one person is examined, **we** have the right to examine and receive statements separately from each person and not in the presence of the others;

   c. show the damaged property and allow **us** to take samples of damaged property for inspection, testing, and analysis as often as **we** reasonably request;

   d. show records, including tax returns and bank records of all canceled checks that relate to the value, loss, and costs, and permit copies to be made of them as often as **we** reasonably request;

   e. assist **us** to enforce any right of recovery which **you** may have against a party causing the loss; and

   f. show records that prove loss of rents and show receipts for additional living costs, and permit copies to be made of them as often as **we** reasonably request.

FL-2 Ed 1.0           —9—           AAIS

## HOW MUCH WE PAY FOR LOSS OR CLAIM

**Loss Settlement Terms** — Subject to the deductible or other limitation that applies, **we** pay the lesser of:

a) the **limit** that applies;

b) **your** interest in the property; or

c) the amount determined under the Replacement Cost Terms or the Actual Cash Value Terms, whichever apply.

1. **Replacement Cost Terms**

   a. The Replacement Cost Terms apply only to buildings covered under Coverages A and B that have a permanent foundation and roof. They do not apply to:

      1) mobile homes whether or not on a permanent foundation;
      2) window air-conditioners;
      3) awnings and canopies;
      4) antennas;
      5) appliances;
      6) carpets;
      7) window coverings; and
      8) tenant's improvements

   b. In determining the replacement cost, do not include the cost of:

      1) excavations;
      2) brick, stone, or concrete foundations;
      3) piers and other supports which are below the surface of the ground inside the foundation walls; and
      4) underground flues, pipes, wiring, and drains.

   c. When the cost to repair or replace exceeds the lesser of $2,500 or five percent of the **limit** on the damaged building, **we** do not pay for more than the actual cash value of the loss until repair or replacement is completed.

      **You** may make a claim for the actual cash value of the loss before repairs are made. A claim for an additional amount payable under these **terms** must be made within 180 days after the loss.

   d. If the **limit** on the damaged building is less than 80 percent of its replacement cost at the time of loss, the larger of the following amounts is used in applying the Loss Settlement Terms:

      1) the actual cash value at the time of the loss; or
      2) that part of the replacement cost of the damaged part which **our limit** on the building bears to 80 percent of the full current replacement cost of the building.

   e. If the **limit** on the damaged building is at least 80 percent of its replacement cost at the time of loss, the smaller of the following amounts is used in applying the Loss Settlement Terms:

      1) the cost to repair or replace the damage on the same premises using materials of like kind and quality, to the extent practical; or
      2) the amount spent to repair or replace the damage.

2. **Actual Cash Value Terms** — Actual cash value includes a deduction for depreciation, however caused.

   a. The Actual Cash Value Terms apply to all property not covered under the Replacement Cost Terms.

   b. The smallest of the following amounts is used in applying the Loss Settlement Terms:

      1) the cost to repair or replace the property with materials of like kind and quality to the extent practical;
      2) the actual cash value of the property at the time of loss; or
      3) (applies only to mobile homes) the difference in the actual cash value just before the loss and the actual cash value just after the loss.

3. **Deductible** — This applies to Coverages A, B, and C; Debris Removal; Trees, Plants, Shrubs and Lawns; Collapse; Glass Breakage; and Tenant's Improvements. It applies to all perils insured against unless otherwise shown.

   **We** pay that part of the loss over the deductible. Not more than one deductible applies per occurrence. If this policy covers more than one residence, the deductible applies separately to each residence.

4. **Loss to a Pair or Set** — If there is loss to an item which is part of a pair or set, **we** pay only to replace or repair the item, or **we** pay the difference in the actual cash value of the pair or set just before the loss and the actual cash value just after the loss.

5. **Insurance Under More Than One Coverage** — If more than one coverage of this policy applies to a loss, **we** pay no more than the actual loss.

6. **Insurance Under More Than One Policy** — If there is other insurance that applies to the loss, **we** pay **our** share of the loss. **Our** share is that part of the loss that the **limit** of this policy bears to the total amount of insurance that applies to the loss. When a loss is also covered by the master policy of an association or corporation of property owners, this insurance is excess.

7. **Restoration of Limits** — Each loss **we** pay under this policy does not reduce the **limits** available over the policy term.

## PAYMENT OF LOSS

1. **Your Property** — **We** adjust each loss with **you**. **We** pay an insured loss within 30 days after an acceptable proof of loss is received and the amount of the loss is agreed to in writing. If **you** and **we** do not agree, **we** pay within 30 days after the filing of an appraisal award with **us**. Payment is made to **you** unless a loss payee is named.

2. **Additional Living Costs** — If the **insured premises** is unfit for use for more than one month, covered costs are paid on a monthly basis. **You** must give **us** proof of such costs.

3. **Damage to Personal Property of Others** — At **our** option, an insured loss may be adjusted with and paid:

    a. to **you** on behalf of the owner; or

    b. to the owner. If **we** pay the owner, **we** do not have to pay **you**.

4. **Our Options** — **We** may:

    a. pay the loss in money; or

    b. rebuild, repair or replace the property. **We** must give **you** notice of **our** intent to do so within 30 days after **we** receive an acceptable proof of loss.

    **We** may take all or part of the damaged property at the agreed or appraised value. Property paid for or replaced by **us** becomes **ours**.

## POLICY CONDITIONS

1. **Abandonment of Property** — **You** may not abandon the property to **us** unless **we** agree.

2. **Appraisal** — If **you** and **we** do not agree on the amount of the loss, the actual cash value of the property or the cost to repair or replace the property, either party may demand that these amounts be determined by appraisal.

   If either party makes a written demand for appraisal, each will select a competent independent appraiser and notify the other of the appraiser's identity within 20 days after the receipt of the written demand. The two appraisers will select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, **you** or **we** can ask a judge of a court of record in the state where the property is located to select an umpire.

   For each building item and each item of personal property, the appraisers will determine:

   a. the amount of the loss;

   b. the actual cash value of the property; and

   c. the cost to repair or replace the property.

   Each amount will be stated separately.

   If the appraisers submit a written report of an agreement to **us**, the agreement will establish these amounts. If the appraisers fail to agree within a reasonable time, they will submit only their differences to the umpire. A written agreement by two of these three will establish the amounts stated above.

   Each appraiser will be paid by the party selecting that appraiser. The compensation of the umpire and other costs of the appraisal will be shared equally by **you** and **us**.

   If **we** make the written demand for an appraisal, **we** will pay:

   a. the reasonable and necessary cost for **your** appraiser; and

   b. **your** share of the cost for the umpire.

3. **Assignment** — This policy may not be assigned without **our** written consent.

4. **Cancellation and Nonrenewal** — **You** may canc this policy by returning the policy to **us** or b giving **us** written notice and stating at what futur date coverage is to stop.

   **We** may cancel or not renew this policy by writte notice to **you** at the address shown on th Declarations. Proof of delivery or mailing i sufficient proof of notice.

   During the first 60 days this policy is in effect, w may cancel for any reason.

   After this policy has been in effect 60 days o more, or if it is a renewal of a policy issued by us **we** may cancel or not renew only at the anniversary date unless:

   a. the premium has not been paid when due;

   b. the policy was obtained through fraud material misrepresentation or omission of fact which if known by **us**, would have caused us not to issue the policy; or

   c. there has been a material change or increase in hazard of the risk.

   If **we** cancel this policy for nonpayment of premium, **we** will give **you** notice at least 10 days before cancellation is effective. Otherwise, **we** will give **you** notice at least 30 days in advance of cancellation or nonrenewal.

   **Your** return premium, if any, will be refunded at the time of cancellation or as soon as practical. Payment or tender of the unearned premium is not a condition of cancellation.

5. **Change, Modification, or Waiver of Policy Terms** — A waiver or change of the **terms** of this policy must be issued by **us** in writing to be valid. If, in the policy period, **we** adopt a revision which broadens coverage without an additional premium, the broadened coverage will apply.

   **Our** request for an appraisal or examination under oath does not waive policy **terms**.

   If this policy has no expiration date, **we** may substitute or **we** may add, at each anniversary date, forms that are then authorized for use.

6. **Conformity With Statute** — **Terms** in conflict with the laws of the state where the **insured premises** is located are changed to conform to such laws.

FL-2 Ed 1.0     — 12 —     AAIS

7. **Death** — On **your** death, protection on **your** covered property passes to:

    a. **your** legal representative; or

    b. any other persons having proper, temporary custody of covered property.

8. **Inspection** — **We** may, but are not required to, inspect **your** property and operations. **Our** inspection or resulting advice or report does not warrant that **your** property or operations are safe or healthful or comply with laws, rules, or regulations.

9. **Misrepresentation, Concealment, or Fraud** — **We** do not provide coverage if, before or after a loss:

    a. **you** or any other insured have willfully concealed or misrepresented:

        1) a material fact or circumstance with respect to this insurance; or
        2) their interests herein; or

    b. there has been fraud or false swearing by **you** or any other insured with respect to this insurance or the subject thereof.

10. **Mortgage Clause** — This applies only to coverage on buildings. The word "mortgagee" includes trustee.

    a. If a mortgagee is named on the Declarations, a loss payable under Coverages A or B will be paid to the mortgagee and **you**, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

    If **we** deny **your** claim, that denial does not apply to a valid claim of the mortgagee, if the mortgagee has:

        1) notified **us** of change in ownership, occupancy, or substantial change in risk of which the mortgagee became aware;
        2) paid the premium due under this policy on demand if **you** neglected to pay the premium; and
        3) submitted a signed, sworn proof of loss within 60 days after receiving notice from **us** if **you** failed to do so.

    All **terms** of this policy apply to the mortgagee unless changed by this clause.

    b. If **we** cancel or do not renew this policy, **we** will notify the mortgagee at least 10 days before the date cancellation or nonrenewal takes effect.

    c. If **we** pay the mortgagee for a loss and deny payment to **you**:

        1) **we** are subrogated, up to the amount **we** paid for the loss, to all the rights of the mortgagee granted under the mortgage on the property; or
        2) at **our** option, **we** may pay to the mortgagee the whole principal on the mortgage plus the accrued interest. In this event, **we** shall receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

    Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

11. **No Benefit To Bailee** — Coverage under this policy will not directly or indirectly benefit those who are paid to assume custody of the covered property.

12. **Policy Period** — This policy only covers losses that occur during the policy period.

13. **Recoveries** — This applies if **we** pay for a loss and lost or damaged property is recovered, or payment is made by those responsible for the loss.

    a. **You** must inform **us** or **we** must inform **you** if either recovers property or receives payment.

    b. Proper costs incurred by either party are paid first.

    c. **You** may keep the property. The amount of the claim paid or a lesser amount to which **we** agree, must be returned to **us**.

    d. If the claim paid is less than the agreed loss due to a deductible, or other limiting **terms**, the recovery is prorated between **you** and **us** based on the interest of each in the loss.

14. **Safety Glass** — When breakage of glass is covered, **we** pay to replace the damaged glass with safety glazing materials if required by code, ordinance or law.

FL-2 Ed 1.0 — 13 — AAIS

15. **Secured Party Coverage** — This applies only to coverage on mobile homes and personal property. This entire clause is void unless the name of a secured party is shown on the Declarations. This clause applies only to the interest of a secured party and does not affect **your** rights or duties under the policy.

    a. If a secured party is named on the Declarations, a loss payable on property subject to the security interest will be paid to the secured party and **you** as interests may appear. If there is more than one security interest in the same property, the order of payment will be the same as their order of priority.

    If **we** deny **your** claim, that denial does not apply to a valid claim of a secured party if the secured party has:

    1) notified **us** of a change in ownership, occupancy, or substantial change in risk of which the secured party became aware;
    2) paid the premium due under this policy on demand if **you** neglected to pay the premium; and
    3) submitted a signed, sworn proof of loss within 60 days after receiving notice from **us** if **you** failed to do so.

    All **terms** of this policy apply to the secured party unless changed by this clause.

    b. If **we** cancel or do not renew this policy, **we** will notify the secured party at least 10 days before the date cancellation or nonrenewal takes effect.

    c. If **we** pay the secured party for a loss and deny payment to **you**:

    1) **we** are subrogated, up to the amount **we** paid for the loss, to all the rights of the secured party granted under the security agreement; or
    2) at **our** option, **we** may pay the secured party the remaining amount due on the security agreement plus the accrued interest. In this event, **we** shall receive full assignment of the security agreement and securities held as collateral for the agreement.

    However, the secured party's interest is not covered for **your** conversion, embezzlement, or secretion of encumbered property in **your** possession, unless specifically insured against and premium paid for such.

16. **Subrogation** — If **we** pay for a loss, **we** may require that **you** assign to **us** the right of recovery up to the amount **we** pay. **We** are not liable for a loss if, after the loss, **you** impair **our** right to recover against others. **You** may waive **your** right to recover, in writing, before a loss occurs, without affecting coverage. If **we** pay a loss to or for **you** and **you** recover from another party for the same loss, **you** must pay **us** as stated in Recoveries.

17. **Suit Against Us** — No suit may be brought against **us** unless all the **terms** of this policy have been complied with and the suit is brought within two years after the loss.

18. **Volcanic Action** — All volcanic action that occurs within a 72-hour period constitutes a single occurrence.